MHN

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICHARD BLEIER** ) | 08CV6254 |
| ) | JUDGE ST. EVE |
| **Plaintiff** ) | MAGISTRATE JUDGE COX |
| -vs- ) | |
| ) | |
| **BUNDESREPUBLIK DEUTSCHELAND a/k/a** ) | |
| **"FEDERAL REPUBLIC OF GERMANY";** ) | |
| **BUNDESMINISTERIUM DER FINANZEN a/k/a** ) | **COMPLAINT** |
| **"GERMAN MINISTRY OF FINANCE";** ) | **(with jury demand)** |
| **DEUTSCHE BUNDESBANK a/k/a** ) | |
| **"GERMAN NATIONAL BANK";** ) | |
| **COMMERZBANK AG;** ) | |
| **COMMERZBANK "Chicago Branch";** ) | |
| **COMMERZBANK "New York Branch")** ) | |
| **COMMERZBANK "Los Angeles Branch** ) | |
| **COMMERZBANK "Atlanta Branch"** ) | |
| **COMMERZBANK CAPITAL MARKETS CORP.;** ) | |
| **a/k/a "CCMC" a division of COMMERZBANK AG;** ) | **FILED** |
| **COMMERZBANK SECURITIES, a division/** ) | |
| **subsidiary of COMMERZBANK AG;** ) | OCT 31 2008 TC |
| **COMMERZBANK CORPORATES & MARKETS,** ) | Oct 31, 2008 |
| **a division/subsidiary of COMMERZBANK AG;** ) | MICHAEL W. DOBBINS |
| **EUROHYPO AG, a division/subsidiary** ) | CLERK, U.S. DISTRICT COURT |
| **Of COMMERZBANK AG** ) | |
| **DEUTSCHE BANK AG;** ) | |
| **DEUTSCHE BANK/BANKERS TRUST CO.;** ) | |
| **CITIBANK N.A.;** ) | |
| **J.P. MORGAN CHASE;** ) | |
| **DILLON WARBURG;** ) | |
| **SCHRODERS** ) | |
| **BANK FOR INTERNATIONAL SETTLEMENTS,** ) | |
| **a/k/a "BIS";** ) | |
| **UBS AG** ) | |
| ) | |
| **Defendants** ) | |

## **INTRODUCTION**

One of the last great issues related to payment of outstanding financial obligations is that of the FEDERAL REPUBLIC OF GERMANY ("hereinafter "GERMANY") to the holders of certain GERMAN GOLD BONDS, (hereinafter collectively referred to as "THE BONDS") that were sold in and through the United States from 1924 to 1930. The complaint relates to the extraordinary, negligent, careless, reckless and/or otherwise wrongful lengths to which the GERMANY government and its agents will go to stop legitimate bondholders from ever collecting upon a 70 year old debt, or otherwise using Gold bearer bonds in any way they see fit for whatever commercial purposes they choose.

After World War I, GERMANY was forced to make reparation payments to satisfy the debts incurred by waging World War I, with its resulting human and financial losses. To help GERMANY deal with these obligations to pay debts, the United States and other allies agreed to sell certain GERMANY government backed and secured bearer bonds called the "Dawes Bonds" (named after the US Senator who devised the bond issue plan) sold starting in 1924 and "Young Bonds" (named after another US Senator) in 1930 (a year after the great stock market crash). The Dawes and Young bonds were sold to American citizens and denominated in United States Gold Dollars. More than Eighty Five (85) issues, representing hundreds of millions of US Gold Dollars, were marketed, sold and/or promoted to US citizens and others, including to Plaintiff, members of the Plaintiff class, and/or Plaintiff's predecessors. When Hitler came to power in 1933, GERMANY ceased payments on the BONDS, and the BONDS went into default and remain so until today. In fact, GERMANY had no intention of paying for the BONDS, and the conspiracy described here is perhaps the greatest financial conspiracy against Americans and others in history. The conspiracy involves intentional misrepresentations, entrapment, deceit,

fraud, misrepresentations, and encouraging wrongful and/or malicious prosecution, wrongful expropriation and/or taking of property.

The Conspiracy started in 1933, when GERMANY under the Hitler Regime, determined NOT to make any further payments on the BONDS. It is important to understand that GERMANY would never have had the monies to fund World War II had it paid its obligations under the BONDS. The monies that should have gone to pay bondholders were ultimately used against Americans and the world when Hitler diverted monies from debt service to the building of his war machine. Simply put, GERMANY, never intended to pay for the BONDS which bondholders, Americans, and others similarly situated, such as Plaintiff, members of the Plaintiff class and/or Plaintiffs predecessors purchased.

After World War II ended, Germany was called upon to pay its debt to the world. In particular, GERMANY was called upon to pay for the BONDS. During the 1952/1953 London Debt Conference, GERMANY's officials sought to defraud Bondholders, such as Plaintiff's predecessors. On the one hand GERMANY stated officially that it/they would take full responsibility for all the pre war debt owed, including the debt to Bond Holders. On the other hand GERMANY never intended to pay.

During the London Debt Conference and for years thereafter, GERMANY and/or its officials devised a plan and scheme to defraud Bondholders such as Plaintiff, members of the Plaintiff class, and Plaintiff's predecessors. These illegitimate actions and invalid or unconstitutional acts or laws by GERMANY were an impermissible and unilateral change in the terms of the BONDS. The scheme also included the knowing, negligent, careless, reckless, and/or wrongful fabrication of witness testimony, documents and/or evidence through which

GERMANY could attempt to evade paying its obligations to persons such as Plaintiff, Plaintiff class, Plaintiff predecessors.

One of the cornerstones to GERMANY's scheme was the fabrication of witness testimony, documents and/or evidence used at the London Debt Conference. These were used in an attempt to evade liability by claiming that it had NO records from which it could determine which of the BONDS remained unpaid and to whom GERMANY owed what obligations on the BONDS. As part of the scheme to defraud Bondholders, this involved GERMANY's claim that whatever bonds as may be presented during the post World War II era could not be properly authenticated and validated. As further part of the scheme to defraud Bondholders and to prevent them from making legitimate claims, GERMANY determined it would fight bondholders who declined to accept the "offer" to take "pennies on the dollar" by giving up his/her Bonds, as was provided under the London Debt Accord. GERMANY would implement systematic fraud and/or otherwise systematic fraud and/or otherwise wrongful actions through which persons such as Plaintiff, members of plaintiff class, and/or Plaintiff's predecessors would be located, isolated, persecuted, intimidated, subjected to arrest, prosecution, seizures of property, and/or other wrongful acts. GERMANY would cause persons such as Plaintiff, and/or members of Plaintiff's class, and/or Plaintiff's predecessors, (i) to forfeit or lose property rights, (ii) to be subject to criminal investigations and/or prosecution, (iii) to intimidation, (iv) to negligent infliction of emotional distress and/or ultimately, (v) to place them into a position where they would be forced to cease or abandon any and all efforts to enforce his rights or to prosecute legitimate claims on the BONDS.

It is against that backdrop of facts, and those recently discovered that Plaintiff brings this action.

## DESCRIPTION OF PARTIES

1. PLAINTIFF, RICHARD BLEIER (hereinafter "Plaintiff" or "BLEIER") is a citizen and resident of the United States, living in Chicago, Illinois, in this judicial district and is the legal and equitable owner of the German gold bond/s.

2. DEFENDANT, BUNDESREPUBLIK DEUTSCHELAND, a/k/a, "FEDERAL REPUBLIC OF GERMANY" (hereinafter " GERMANY") has its main offices in Berlin, Germany, and which is one of the redemption or paying agents on Plaintiff's Gold Bonds, and has dealt with and/or was involved with the German gold bonds and has documents related to Plaintiff's German gold bonds, and/or potential claims as they may relate to one or more Defendants.

3. DEFENDANT, BUNDESMINISTERIUM DER FINANZEN, a/k/a, GERMAN FINANCE MINISTRY, hereinafter ("GERMAN FINANCE MINISTRY") is an agency of the German government, with its main offices in Berlin, Germany, and which is one of the redemption or paying agents on Plaintiff's Gold Bonds, and which dealt with and or was involved with with one or more of the Defendants and has documents related to German gold bonds and Plaintiff's German gold bonds and or potential claims as they may relate to one or more of the Defendants.

4. DEFENDANT, DEUTSCHE BUNDESBANK, a/k/a, "GERMAN NATIONAL BANK", hereinafter ("GERMAN NATIONAL BANK") is an agency of the German government, with its main offices in Berlin and Frankfurt, Germany, and which is one of the redemption or paying agents on Plaintiff's Gold Bonds, which dealt with and or was involved with Plaintiff's German gold bonds and with one or more of the Defendants and or has documents which relate to Plaintiff's German gold bonds

and/or potential claims as they may relate to one or more of the Defendants, and has
offices in the United States, at 499 Park Avenue, New York, New York.

5.  DEFENDANT, COMMERZBANK AG (hereinafter "COMMERZBANK") is a
German bank which has its principal offices in Frankfurt Germany, and which also
maintains offices in the United States, and which is one of the redemption or paying
agents on Plaintiff's Gold Bonds, which has dealt with and or was involved with
Plaintiff's German gold bonds, and has documents in its possession related to
Plaintiff's German gold bonds and/or potential claims as they may relate to one or
more of the Defendants.

6.  DEFENDANT, COMMERZBANK AG (hereinafter "COMMERZBANK") is a
German bank which has its principal offices in Frankfurt Germany, and which is one
of the redemption or paying agents on Plaintiff's Gold Bonds, and which also
maintains offices and conducts business in the United States, in various jurisdictions,
including this jurisdiction, DEFENDANTS, COMMERZBANK Chicago Branch,
COMMERZBANK Atlanta Branch, COMMERZBANK New York Branch,
COMMERZBANK Los Angeles Branch, as well as through its wholly owned
subdivisions or subsidiaries, or alter egos, such as, DEFENDANT,
COMMERZBANK CAPITAL MARKETS CORPORATION, a subsidiary/division of
COMMERZBANK AG (hereinafter "CCMC") DEFENDANT, COMMERZBANK
SECURITIES, a subsidiary/division of COMMERZBANK AG (hereinafter
"SECURITIES, DEFENDANT, COMMERZBANK CORPORATES AND
MARKETS, hereinafter ("CBMC") a subsidiary/division of COMMERZBANK AG,
and EUROHYPO AG, division/subsidiary of and which have dealt with and or were
involved with Plaintiff's German gold bonds, and have documents in their possession

related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants.

7.  DEFENDANTS COMMERZBANK AG, COMMERZBANK, CCMC, COMMERZBANK SECURITIES, CBMC and EUROHYPO AG are foreign corporations, doing business in the United States through a myriad of divisions, wholly owned, subsidiary or alter ego companies, which are integrated companies, subsidiaries or divisions, whose activities and or assets are controlled, dominated and/or directed by COMMERZBANK AG.

8.  DEFENDANT, DEUTSCHE BANK AG, (hereinafter "DEUTSCHE") is a German bank which has its principal offices in Frankfurt Germany and which is one of the redemption or paying agents on Plaintiff's Gold Bonds and which also maintains offices in the United States, and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

9.  DEFENDANTS, DEUTSCHE BANK USA/BANKERS TRUST CO. (hereinafter "BANKERS TRUST") is a United States and or Trustee bank, which has offices in Chicago, New York and many other cities in the United States, and which is one of the redemption or paying agents on Plaintiff's Gold Bonds and which has maintains offices in the United States, and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

10. DEFENDANT CITIBANK NA (hereinafter "CITIBANK") as successor in interest to the First National City Bank of New York, is a United States Bank, and which was one of the paying and/or redemption agents on PLAINTIFF'S German Gold Bonds and which has and maintains offices in the United States, and all over the world, and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

11. DEFENDANT J.P. MORGAN-CHASE (hereinafter "CHASE") as successor in interest to one of the paying and/or redemption agents on PLAINTIFF'S German Gold Bonds and which has and maintains offices in the United State and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

12. DEFENDANT DILLON WARBURG, hereinafter "DILLON") as successor in interest to one of the paying and/or redemption agents on PLAINTIFF'S German Gold Bonds and which has and maintains offices in the United State and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

13. DEFENDANT SCHRODERS PLC, hereinafter "SCHRODERS") as successor in interest to one of the paying and/or redemption agents on PLAINTIFF'S German

Gold Bonds and which has and maintains offices in London, United Kingdom and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

14. DEFENDANT BANK FOR INTERNATIONAL SETTLEMENTS, (hereinafter "BIS") is a private international bank with its main offices in Basel, Switzerland and one of the paying and/or redemption agents on PLAINTIFF'S German Gold Bonds and which has and maintains offices and agents in the United State and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants, held, opened, and/or operated certain accounts related to Plaintiff's German gold bonds, and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

15. DEFENDANT UBS AG (hereinafter "UBS") is a private international bank with its main offices in Zurich and Basel, Switzerland and one of the paying and/or redemption agents on PLAINTIFF'S German Gold Bonds and which has and maintains offices and agents in the United State and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants, held, opened, and/or operated certain accounts related to Plaintiff's German gold bonds, and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

# US COURTS' JURISDICTION

## Over GERMANY Government and GERMAN Agency Defendants

17. Defendants GERMAN FINANCE MINISTRY, BUNDESMINISTERIUM

DER FINANZEN, and GERMAN NATIONAL BANK , DEUTSCHE

BUNDESBANK, are agencies of Defendant BUNDESREPUBLIK

DEUTSCHELAND, GERMANY, and as such this Court would have

jurisdiction over such defendants pursuant to 28 USC Sec. 1330 and 1605 et seq.

(providing for commercial exceptions to the Foreign Sovereign Immunities Act), in

so far as the action relates to German Gold Bonds, i.e. commercial instruments

which were marketed in the US and for which communications and other acts

were performed and/or directed to persons, such as PLAINTIFF, including by one

or more Defendants herein, in the US, pursuant to the following precedent.

## Over Defendants COMMERZBANK AG, DEUTSCHE BANK AG and BIS

18. The Court has jurisdiction over Defendants COMMERZBANK AG and its

related   branches in the US and otherwise,, affiliated companies, and subsidiaries and

divisions CCMC, CBMC, COMMERZBANK SECURITIES, named Defendants,

COMMERZBANK AG, and EUROHYPO AG, its various branches, and over

DEUTSCHE BANK AG and BANK FOR INTERNATIONAL SETTLEMENTS, BIS

through diversity of citizenship, pursuant to 28 USC § 1332, and/or because said

Defendants (i)  maintain or maintained representatives, personnel, offices and/or assets

within and/or (ii) conduct or conducted regular continuous and systematic business

within this judicial district.

## Jurisdiction Over Defendants SCHRODERS, DILLON WARBURG CITIBANK, BANKERS TRUST CO., J.P. MORGAN-CHASE, UBS AG

19. The Court has jurisdiction over Defendants CITIBANK, BANKERS TRUST

CO., J.P. MORGAN CHASE, UBS AG, SCHRODERS, DILLON WARBURG

through diversity of citizenship, pursuant to 28 USC Sec.1332, and/or because said

Defendants are either US Corporations (i) or Corporations that maintained agents,

representatives, personnel, offices and/or assets within and/or (ii) conducts or conducted

regular, continuous and systematic business within this judicial district.    The Court

has jurisdiction over all non-governmental defendants by virtue of supplemental

jurisdiction pursuant to 28 USC 1367.

## VENUE

20. Venue is proper in this district insofar as (i) PLAINTIFF RICHARD BLEIER

resides in Chicago, Illinois, in this judicial district and/or,

21.  Defendants maintain offices, personnel, and assets and/or conduct business within

this district, or United States, or internationally, (iii) and/or Defendants have engaged in acts

related to and/or affecting PLAINTIFF within this district, and/or (iv) or are subject to

jurisdiction of this Court.

22. Venue is proper in this Court since Plaintiff resides in this district and/or Defendants do
business and may be found in the District within the meaning of 28 USC Sec. 1391
and 28 U.S.C. sec. 1350.

23.  In the event, the Court should determine that venue may be lacking in this Court,
then pursuant to 28 USC Sec. 1400 and 1401, the Court may transfer action to any
other district which the case could have been brought originally.

## STATEMENT OF RELEVANT FACTS

24.    PLAINTIFF RICHARD BLEIE R is a US citizen, residing in Chicago, Illinois, and
holder of German gold bond/s who has never been paid for his German gold bond/s
and seeks payment for his German gold bearer bonds and redemption of his bonds.

25. Many bondholders, predecessors, and their heirs, successors, assign and/or representatives of owners, holders and/or bearers of certain German Gold Bonds known as Dawes, Young and Rheinelbe Union whose German gold bearer bonds also have never been redeemed and/or for which payment has not been made.

    a. There exists German gold bondholders, predecessors, and their heirs, successors, assign and/or representatives of owners, holders and/or bearers o f certain German Gold Bonds known as Dawes, Young and RheinElbe Union or predecessors in interest, who did not accept the offer as contained in the London Debt Agreement of 1953; and PLAINTIFF did not accept, and was never part of any payment agreement with GERMANY or with other GERMANY agency defendants, and was not part of any contract for payment

    with any representatives of defendants, or COMMERZBANK or DEUTSCHE BANK or any of the other Defendants, and was never part of any actions or contracts and/or agreements which are the basis of other legal actions by Ronnie D. Fulwood, Eugene Thomason, James Grizzard, German Gold Bondholders Redemtion Group, LLC, Edward Fagan and others who were part of the transactions upon which those persons or entities based their claims against one or more of these defendants.

26. Plaintiff has discovered certain information or evidence which indicates that from the period from 1945 to the present, certain officials of the defendant GERMANY, German Government and former representatives of certain German financial and banking institutions and/or agencies, including but not limited to Defendants COMMERZBANK, DEUTSCHE BANK and as well as the other Defendants including but not limited to DILLON WARBURG, SCHRODERS, CITIBANK and BANKERS TRUST and UBS and JP MORGAN CHASE, and BANK FOR INTERNATIONAL SETTLEMENTS who were

trustees and/or agents for the trustees, named herein as Defendants were engaged in scheme

to defraud bondholders and bad faith refusal to pay the bonds and the following:

Defendants have, including but not limited to, among other things

a) Been unjustly enriched by their acts

b) Refused meaningful redemption of the bonds

c) Refused to provide a full and complete disclosure

d) Refused access to information critical to a resolution of plaintiffs' claims and failed to implement fair and proper procedures for the redemption process for Plaintiff and similarly situated bondholders.

e) failed to institute necessary and reasonable protocols and/or instructions to the various bondholders and redemption institutions in Germany, the US and worldwide;

f) failed to take steps to prevent and/or protect Plaintiffs from conspiracies, fraudulent and/or wrongful acts related to the German Gold Bonds, which conspiracies, fraudulent and/or other wrongful acts were known to one of more defendants

g) knowing, careless, reckless and/or negligently participate in a conspiracy designed to frustrate and/or interfere with Plaintiffs ability to redeem the German Gold Bonds; and knowingly, careless, reckless and/or negligent participation in a conspiracy to cause damage to Plaintiffs and those who sought to redeem the German Gold Bonds;

h) Defendants engaged in commission of fraud and/or conspiracy to commit fraud to deprive Plaintiff of his constitutional right to redeem the German gold bearer bonds

i) Engage in racketeering activities and/or wire and mail fraud

j) Transport and sell securities and/or commercial instruments, in the US or which caused direct affect in the US, violation of 28 USC 1605 (a) (2);

participate and/or profit from the wrongful expropriation/taking in violation of

International Law of property belonging to bondholders which property was

located in the US and elsewhere, in violation of 28 *U.S.C.A.* 1605 (a) (3);

k) cause loss/damage Plaintiff which property was located in the US &

elsewhere, in violation of28 U,S.C.A. 1605 (a)

l) Defendants violated the Holocaust Victims Redress Act of 1998 and

Defendants violated the National Stolen Property Act of 1994; and

Violated the 1899 and 1907 Hague Other Treaties & Jus Cogens;

m) Defendants violate the European Convention on Human Article

1, Protocol 1.

n) Engage in deception and/or spoliation of evidence - related to

the BONDS including but not limited to THE BLACK LIST.

27.    Subsequent to World War I, Germany was forced to make certain reparation payments.
In an effort to assist Germany to deal with the burdens at a bond issue with coupons was
created called the "Dawes Bonds" (named after Senator Dawes who devised the bond issue
plan). Bonds were sold to American citizens and denominated Gold US dollars.

28. More than eighty five (85) issues, representing hundreds of millions of gold US dollars,
were marketed, sold and/or targeted to US Citizens and others, during the years o f 1924 and 1930.
One final issue bonds was called the "Young Bonds"(named after a US Senator) (in 1930 a year
after the great stock market crash), was designed to assist GERMANY repaying the Dawes
bonds. In addition to the Dawes & Young Bonds, the Republic of Germany also issued,
guaranteed, insured and/or were responsible for payment of the Rhein Elbe Union Bonds. The
Dawes, and Rhein Elbe Union (hereinafter collectively German Gold Bonds") bonds
were all sold in, marketed in, tied to the US Gold Dollar and were to The US banks and/or
financial institutions that were to be the trustees, authenticating, collection and/or paying
agents for or on German Gold Bonds as Defendants CITIBANK and BANKERS TRUST.

29. When Hitler came to power 1933, payments on The German Gold Bonds

hereinafter went into default and remain in that status until today.

30. In 1952 after the close of World War II, a series of meetings were held in London

to determine how Germany's prewar and post war debt, including the German Gold

Bonds held by Plaintiffs would be paid. German officials, including its public and

private financial institutions, confirmed that it/they would take full responsibility

for all of the prewar debt including the debt to the holders of The German Gold

Bonds and other bonds.   Agreement was formally known as "The Agreement on

German External Debt or is more commonly known and/or referred to as the

"London Debt Accord ".

Through the London Debt Agreement, the German debtors sought to reduce or limit the

size of its debt and/or the obligations to pay for The German Gold Bonds.

31. The London Debt Accord afforded Germany's public and private financial and or

institutions issued a MORATORIUM on the repayments to bondholders of gold

Bonds and the effect was POSTPONING payment for at least 40 years. To do

so, new bonds exchange for the old bonds were issued and the new bonds could

NOT be presented for redemption at German or other designated financial and/or

banking institutions until April1994.

32.   The effect was to cause prejudice and damages to RICHARD BLEIER because

they changed the payment, redemption and/or other material terms of the German Gold Bonds

without consent of bondholders who chose not to exchange their German Gold Bonds, and

they had to wait until the expiration of the London Debt Agreement, 40 years before they could

engage the process to redeem their bonds.

33. The result for Plaintiff bondholders of German Gold Bonds was disastrous. Many of

the bondholders, as well as predecessors in interest to Plaintiff, Died before they

could redeem the Gold Bonds, or collect, and to others the German Gold Bonds certificates were lost and/or damaged.

34. The German Gold Bonds were bearer bonds and were passed from generation to generation.

35. Based on the agreements contained in the London Debt Accord., the non-assenting US Bondholders - such as Plaintiff had the right and power to demand redemption on original terms and conditions stated the bonds.

36. The actions and/or failures outlined above were designed to benefit Defendants, and German private and public, banks and/or financial institutions and redemption agents, as well as the US paying and redemption agents, including Defendants BANKERS TRUST and JP MORGAN CHASE, and UBS and CITIBANK, other defendants, by simply NOT PAYING full value of their obligation to Plaintiff and bondholders for their Gold Bonds.

37. On April 15th 1994, the US Securities and Exchange cleared the way for Plaintiffs and the members of the Plaintiff Class to start the process of redemption of The German Gold Bonds.

38. The estimated present value Gold Bonds is staggering. Example:

a. The present value of a single Rhein Elbe Union Bond with an original face value of One Thousand ($1,000.00) US Gold Dollars, is in the MILLIONS OF DOLLARS, being actual present value is calculated at 25.8 grains of gold for each donar, $1,000 bond the quantity of gold is 25,800 grains divided by 480 (equivalent in troy ounces) and brought to present value of gold as of October 30, 2008 was $758.80 [25,800 divided by 480 multiplied Price of Gold $758.80 = $40,785.50 face value of the bond], and then the applicable interest rates in gold including, and default interest, dating back over 60 years must be applied; and the price of Gold has increased tremendously as has the value of the German gold bonds.

Plaintiff estimate to have equitable, legal or beneficial rights, control and interests 1-40
of the German Gold Bonds.

40.  PLAINTIFF was NEVER paid for his German Gold Bonds, has sought redemption and

payment, and the obligation is still unpaid, and remains owed.

41.  PLAINTIFF, and Bondholders in general have been given a "Run Around" for the last

60 years, and particularly since 1994, as they sought to redeem German Gold

Bonds.

## STATUTE OF LIMITATIONS and/or EQUITABLE TOLLING

42. The applicable statutes of limitations for the instant claims on securities has not

expired.

43.  Assuming *arguendo* that defendants attempt to assert a defense based on statute of

limitations - as was asserted by other German governmental obligors and upheld the

German Supreme Court on October 25, 2005 in the case of an American

Bondholder against the City of Dresden - the Plaintiff's causes of action herein are

tolled because the acts complained of have no statute of limitations, or which could or

were only recently discovered and/or ongoing acts and/or continuing wrongs.

44.  Plaintiff has only recently discovered The Scheme to Defraud Plaintiffs and as

well as the wrongful seizure, expropriation, concealment, withholding and/or

retention of THE BONDS of bondholders, Facts related to The Scheme to Defraud

Plaintiffs and bondholders and the members of the Plaintiff Class have only recently

come to Plaintiff, possession and knowledge, that show some of the ways how

GERMANY executed The Scheme to Defraud Plaintiff and the members of the

Plaintiff Class out of THE BONDS.

45.  GERMANY actively concealed and/or sought to and/or continue to conceal its

acts in furtherance of The Scheme to Defraud Plaintiff and bondholders.

46.  As part of and in furtherance of The Scheme to Defraud Plaintiff and members of

Plaintiff Class, GERMANY actively continue to conceal its wrongful acts from, among others, Plaintiff and the members of the plaintiff class and bondholders, and other victims' representatives, lawyers, politicians, courts, historians and interested parties to whom Defendants are and have been under an obligation:

(i) to pay for BONDS and property of bondholders, and

(ii) to truthfully and fully disclose the existence of records and information about THE BONDS.

## 1- WRONGFUL EXPROPRIATION/TAKING OF PROPERTY

47.     Plaintiff repeats, realleges, and incorporates each and every one o f the allegations as contained the above referenced paragraphs as if the same were set forth fully and at length herein.

48.     The aforesaid described conspiracy and acts or omissions of defendants GERMANY constituted a wrongful expropriation and/or taking of Plaintiff RICHARD BLEIER, specifically THE BONDS, which are the subject of this claim

49.   The afore described conspiracy, acts and wrongful expropriation and/or takings involved GERMANY's/DEFENDANTS':

> *a.* transportation, shipment, confiscation, taking and/or other acts related to THE BONDS in the US or other actions which had an effect on Plaintiff rights and property i n the US or the securities market in the or took other actions which had a direct affect on similar rights and/or commercial markets i n the US as those are defined by 28 *USCA.* § *1605 (a) (2 ).*

> *b.* deprivation and/or adversely affecting Plaintiff BLEIER and the members of the Plaintiff  Class' property and rights in the BONDS and/or property that had been exchanged for property in the US all of which were taken related to the commercial securities market and activities related, those are defined by 28 *USCA* § *1605 (a) (3).*

c. wrongfully expropriation and/or taking o f Plaintiffs or the members of the Plaintiff Class' property in the US and elsewhere the world, THE BONDS which is/are the custody, possession, control and/or are/were being stored in defendants' possession, and all of which is and was in violation of international law as those acts are defined by *28 USCA § 1605 (a) (3);* and

d. damage to and/or loss of Plaintiff property in US and these damages and/or losses were caused by tortious and/or wrongful act(s) or omission(s) of ministry officials, employees, agents and or representatives of GERMANY and/or one of its ministries, departments, organs and/or agencies and while they were acting in the scope of his office or employment as those are defined by 28 *U.S. CA. § 1605 (a) (5).*

50. As a direct result of GERMANY's/DEFENDANTS aforesaid conspiracy, wrongful acts, omissions and/or wrongful expropriations and/or takings, Plaintiff suffered monetary and other damages.

**WHEREFORE** Plaintiff RICHARD BLEIER, demands a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet jurisdictional requirements of this court, of which the Plaintiff shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff MILLIONS of dollars and (ii) interest and attorney fees and costs of this action.

## COUNT II: CONSPIRACY

51. Plaintiff RICHARD BLEIER repeats, realleges and incorporates each and every one of the allegations of the foregoing paragraphs as if the same were set forth fully and at length herein.

52. The aforesaid acts or omissions DEFENDANTS were part of fraud designed to deprive the rightful owners or bearers of bonds including Plaintiffs their property rights and interests therein.

53. The aforesaid fraud and other acts directed at Plaintiffs, were motivated by DEFENDANTS and GERMANY's desire to avoid its multi-billion obligation to bondholders and

54. The aforesaid conspiracy, fraud and other acts by DEFENDANTS and GERMANY were wrongful. The aforesaid conspiracy, fraud and other acts were violation of applicable laws and regulations governing DEFENDANTS' and GERMANY's conduct, actions and obligations related to Plaintiffs property, THE BONDS and marketable securities.

55. As a direct and proximate result o f DEFENDANTS and GERMANY's aforesaid conspiracy, fraud and other wrongful acts, Plaintiffs suffered monetary and other damages.

WHEREFORE, Plaintiff BLEIER demands a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damages, which meet the jurisdictional requirements of this Court and which the plaintiffs shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff MILLIONS OF DOLLARS, attorney fees, exemplary or punitive damages, costs of this action and interest.

## COUNT III - NEGLIGENCE and/or NEGLIGENT SUPERVISION

56. Plaintiffs RICHARD BLEIER repeat, reallege and incorporate each and every one of the allegations of the foregoing paragraphs 164 as ifthe same were set forth fully and at length herein.

57. GERMANY and DEFENDANTS had an obligation to exercise diligence with regard to identification, validation, redemption and payment for Plaintiffs BLEIER and the members of the PlaintiffClass' property, including THE BONDS.

58. GERMANY and DEFENDANTS had an obligation to supervise his agents, employees, representatives and/or all persons acting with his actual and/or apparent authority to as to insure that such persons, acted properly and with due diligence so as not to allow them to commit the acts as alleged herein with regard to validation, redemption and payment for Plaintiffs and the members ofthe Plaintiff Class' property, including BONDS.

59. GERMANY and DEFENDANTS was negligent i n its obligation to honor the aforesaid duties.

60. As a direct and proximate result of GERMANY's and DEFENDANTS negligence and/or failure to properly control and/or supervise the individuals, persons and/or entities, Plaintiff BLEIER and the members of the PlaintiffClass has suffered monetary and damages.

**WHEREFORE**, Plaintiff BLEIER demands a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damages which meet jurisdictional requirements of this court, and the plaintiff shall leave to the determination of the ultimate trier of fact which should be permitted to award plaintiff collectively MILLIONS OF DOLLARS and (ii) interest, attorneys'f ees, exemplary damages, and costs of this action.

## COUNT IV - UNJUST ENRICHMENT

61. Plaintiff RICHARD BLEIER,repeats, realleges and incorporates each and every one of

of the allegations of the foregoing paragraphs as if the same were set forth fully and at length herein.

62.     By the aforesaid acts, inactions, negligent, wrongful and/or other improper acts GERMANY and DEFENDANTS, have been and/or are being unjustly enriched by seizure, expropriation, taking, retention, withholding and/or failing to pay Plaintiffs and for his property, THE BONDS.

63.     GERMANY and DEFENDANTS have been unjustly enriched from revenues, profits and/or other benefits, including but not limited to preferred interest rates and/or ratings for his securities which are sold in the US and which revenues, profits and/or benefits are directing related to or the result of GERMANY's increased market capitalization and assets, predicated upon GERMANY's failure to pay Plaintiff and the members of the Plaintiff Class for property, THE BONDS.

64.     As a direct and proximate result of GERMANY's aforesaid unjust enrichment.

65. Plaintiff BLEIER property rights and interests have been adversely affected and Plaintiff has suffered monetary and other damages.

**WHEREFORE** Plaintiffs BLEIER demands a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damages which meet jurisdictional requirements of this court, and the plaintiff shall leave to the determination of the ultimate trier of fact which should be permitted to award plaintiffs collectively MILLIONS OF DOLLARS and (ii) attorneys' fees, exemplary damages, and costs of this action.

## COUNT V - EQUITABLE DISGORGEMENT

66. Plaintiff BLEIER repeats, realleges and incorporates each and every one of the allegations of the foregoing paragraphs as if same were set forth fully and at length herein.

67. The aforesaid actions and/or inactions of GERMANY and DEFENDANTS was

unjust , improper, wrongful, negligent and/or in violation of applicable laws,

treaties, conventions, customs, regulations and standards.

68.     GERMANY's and DEFENDANTS unjust enrichment from the aforesaid actions,

inactions, is unjust, improper, inequitable, wrongful, negligent and/or unlawful.

69.     As a direct and proximate result of GERMANY's aforesaid unjust enrichment,

Plaintiffs BLEIER property rights and interests have been adversely affected and Plaintiff

has suffered monetary and othe r damages.

**WHEREFORE**, Plaintiffs BLEIER demand a jury trial and        damages and

judgment against defendants jointly severally and/or individually for (i)

compensatory damages which meet the jurisdictional requirements of this Court

and which the plaintiffs shall leave to the determination of the ultimate trier of fact

which should be permitted to award plaintiff collectively MILLIONS OF

DOLLARS equal to their unjust enrichment, and (ii) interest, exemplary or

punitive damages, attorneys' fees, and costs of this action.


## COUNT VI – IMPOSITION OF CONSTRUCTIVE TRUST

70. Plaintiff BLEIER repeats, reallege every one of the allegations of the foregoing

paragraphs as if the same were set forth fully and at length herein.

71. GERMANY and DEFENDANTS knew and/or had reasonable basis to

conclude that they were NOT permitted to engage in the above transactions.

72. GERMANY seized, took, expropriated, received, stored and/or otherwise took actions

against Plaintiffs and bondholders Property, including THE BONDS.

As a result of The Scheme to Defraud GERMANY and DEFENDANTS

acquired actual and/or constructive possession and/or title to Plaintiffs property, THE

BONDS.

73. The estimated and/or approximate real value of Plaintiff property and bondholders THE BONDS, that GERMANY seized, took, expropriated, received, froze and/or adversely is in MILLIONS OF DOLLARS.

74. GERMANY and DEFENDANTS knew, should have known and/or could have through the exercise of reasonable diligence determined that the Plaintiffs and bondholders had superior rights, title and interest in THE BONDS and that GERMANY could not take or acquire them or deny them without paying for same.

WHEREFORE, Plaintiff BLEIER demand a jury trial, judgment and damages against the defendants jointly severally and/or in the alternative for (i) the imposition of a constructive trust upon and/or concerning an amount of defendants assets in the US equal to the value of the Plaintiffs BLEIER property, i.e. THE BONDS, which plaintiff leave to the determination of the ultimate trier of fact which should be permitted to award plaintiffs collectively MILLIONS OF DOLLARS and (ii) interest, attorneys' fees, and costs of this action.

## COUNT VII – CONVERSION

75. Plaintiff BLEIER repeats, realleges and incorporate each and every one of the allegations of the foregoing paragraphs as if same were set forth fully and at length herein. Through The Scheme to Defraud Plaintiffs BLEIER and the bondholders of the out of monies and property, specifically the BONDS, and money payment of BONDS.

76. Defendants conversion of Plaintiffs property, THE BONDS, was wrongful, violation of international and all applicable laws.

77. As a direct and result of GERMANY's and DEFENDANTS conversion of their property, Plaintiff BLEIER suffered substantial and ongoing monetary damages.

WHEREFORE, Plaintiff BLEIER demands jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damages, which meet jurisdictional requirements of this Court and which the plaintiffs shall leave to the determination of the ultimate trier of fact which should be permitted to award plaintiff collectively MILLION OF DOLLARS and (ii) interest, exemplary damages, attorneys' fees, and costs of action.

## COUNT VIII- ACCOUNTING

78. Plaintiff BLEIER repeats, realleges and incorporates each of the allegations of the foregoing paragraphs if the same were set forth fully and at length herein.

79. Through The Scheme, Defendants converted and/or participated in the conversion of the Plaintiffs property, specifically THE BONDS.

80. Defendants conversion PLAINTIFF property, THE BONDS, was wrongful, in violation of international and all applicable laws.

81. As a direct and proximate result of Defendants conversion of property, Plaintiffs BLEIER suffered substantial and ongoing monetary damages.

WHEREFORE, Plaintiff BLEIER demands a jury trial and damages and judgment against defendants jointly severally and/or individually for (i) an accounting by defendants of all the profits they made and/or assets they retained of Plaintiff or bondholders and (ii) interest, attorneys' fees, and costs of this action.

## Count IX - Spoliation of Evidence

82. Plaintiff BLEIER repeats, realleges and incorporates each and every one of the allegations of the foregoing paragraphs as if the same were set forth fully and at length herein.

83. Defendants sought to destroy, conceal and/or withhold documents.that could

their obligations to BLEIER and the bondholders as to THE

BONDS. Defendants' desire to destroy, conceal and/or withhold such documents was primarily designed to protect its/their interests and fees. Defendants also wished to keep secret their involvement in and profiteering from THE BONDS. Defendants also wished to frustrate Plaintiff BLEIER and bondholders ability to ever pursue them in a US Court..Defendants received unfair advantage because of the destruction, concealment and/or withholding of documents.

84.As a direct and proximate result of defendants' aforesaid actions to destroy, conceal and/or withhold documents, Plaintiff BLEIER suffered monetary and other damages.

**WHEREFORE,** Plaintiff BLEIER demands a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damage which the plaintiff leave to determination of the trier of fact which should be permitted to award plaintiff MILLIONS DOLLARS and (ii) interest, attorneys' fees, and costs of this action.

### COUNT X- FOR DOCUMENTS - AGAINST DEFENDANTS GERMANY COMMERZBANK, CITIBANK. JP MORGAN, BANKERS TRUST. DEUTSCHE BANK, UBS AG, CHASE &BIS

85.Plaintiff BLEIER repeats, reallege and incorporate each and every one of the allegations of the foregoing paragraphs as if the same were set forth fully and at length herein.

86. Through The Scheme to Defraud Plaintiff and bondholders Defendants and GERMANY converted their property, specifically THE BONDS.

87. Defendants conversion of Plaintiff property THE BONDS, was wrongful, in violation of US, international and all applicable laws.

88. As a direct or proximate result of defendants failure to pay the bonds and/or conversion of property, THE BONDS, Plaintiff suffered substantial and ongoing

monetary damages.

WHEREFORE, Plaintiff BLEIER demands a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) the production of documents and (ii) interest, attorneys' fees, and costs of action.

## COUNT XI - PRESERVATION / PRODUCTION OF DOCUMENTS

89.     Plaintiff BLEIER repeats, reallege and incorporate each and every one of the allegations of the foregoing paragraphs as if the same were set forth fully and at length herein.

90. Plaintiffs BLEIER has causes of action against GERMANY and Defendants, and/or others for (i) failure to pay the agreed upon amount for THE BONDS; (ii) conspiracy to defraud him and bondholders, related to THE BONDS and (iii) other possible actions, damages and/or injuries to them involving THE BONDS.

91.     Plaintiff BLEIER believes that each of the Defendants is in possession of documents related to aforesaid claims.

92.     In the normal course of business each of the defendants should maintain documents related to the aforesaid claims.

93.     Plaintiff BLEIER believes that in the normal course of business defendants should maintain document during the relevant period to THE BONDS, including but not limited to:

a.   *"THE BLACKLIST" and all documents related to its creation, modifications,*

   *amendments, updates and/or decisions NOT to allow THE BLACKLIST to be produced in the US* - which is/are the basis upon which defendants committed all or part of the Scheme to Defraud;

b. *THE CORE LOANDOCUMENTS* which formed the entire

obligations, tenns and conditions of THE BONDS', including but not

limited to: 1. THE INDENTURE

ii. THE MORTGAGE

111. THE TRUSTEE AGREEMENT

C. ACCOUNTING OF ALL PAYMENTS FOR BONDS PUCHASED UP TO

AND INCLUDING 1945;

d. PAYMENTS FOR BONDS ALLEGEDLY EXCHANGED after the

London Debt Agreement;

e. NOTIFICATIONS TO INTERNATIONAL POLICE, LAW

ENFORCEMENT, SECURITIES AUTHORITIES that they should NOT

permit the redemption of ANY BONDS that were NOT exchanged in

accordance the London Debt Agreement and should consider all persons

and attempting to redeem, trade, collateralize, use to enhance balance sheets

and/or otherwise to use such Bonds DOCUMENTS related to DEFENDANTS

involvement with any investigation, prosecutions, incarceration and/or seizure of

any   Gold Bonds related to:

i. Giulio Bissiri - in Germany, Luxembourg and or Italy the 1990's and

2000s;

11. Richard Carson - in London and in California in the 1990's

iii.   Ronnie Fulwood - in the Florida & South Carolina in the 1990s;

iv.   Hans-Georg Glassman - in Germany in the 2000s;

v.   The Integrated Equities Case - in New Jersey in the

VI. Stephan Kaiser - in Germany in the 2000s

vii.   James W. Korth - in the Miami in the 1990's

viii. Ron Stockdale - in Canada in the 1980s;

IX. The TEPLIN Case - in the Miami, New York and Maryland

in the 1980s/1990s;

x.     Jeffrey Weston - in the New Jersey in the 1990s; or

xi.    James Grizzard, Edward Fagan, German Gold Bondholders
Redemption Group LLC, in the Florida and New York cases 2006,

xii.   Any other cases, dates, person in the US and worldwide;

94.    The Plaintiff BLEIER enumerates the documents above because they are

necessary  to establish among other things, A) who which additional parties

should be named as defendants, B) what other causes of action are applicable, C)

what are the relevant Federal statutes, if any, upon which additional claims may

be based, D) what is applicable statute of limitations for causes of actions, E)

what damages including potential exemplary damages, treble or punitive

damages,  and F) what including potential exemplary, treble and/or punitive damages,

and (vi) what injunctive relief if any, may be requested.

95.    Defendants are, should be, were and/or should have been in possession of the

documents enumerated above, and Plaintiff will certainly involve one or more of the

instant defendants and other parties whose identities are not presently known to

Plaintiff and the and which/who can only be discovered through access to the

requested documents.

96  Plaintiff BLEIER has reason to believe that Defendants have the requested and

necessary documents in their possession, custody and/or control.

97.Defendants are obligated by law to maintain the documents that will support Plaintiff

BLEIER's claims related to THE BONDS.

98. By virtue of possession of THE BONDS, Plaintiff BLEIER believes that certain of

the potential claimants and/or bondholders may also have been the victim of fraud,

conspiracy or other wrongful acts, involving and affecting interstate and/or foreign commerce and may not know it.

99. Plaintiff BLEIER believe that Defendants are wrongfully, improperly and/or negligently destroying, concealing and/or withholding the documents enumerated above, so as to minimize their individual and collective exposure for actions, including but not limited to Fraud and/or conspiracy to commit fraud;

a. Wrongful Conversion and/or Misappropriation;

b. Racketeering;

c. Mail and wire fraud

d. Transportation and sales ofsectuities and/or commercial instruments, which commercial activity occurred in the US and caused. direct affect in the US, in violation of28 *US. C. § 1605 (a) (2);*

f Wrongful expropriation/taking in violation of International Law of property belonging to PLAINTIFF's and/or Plaintiffs' Predecessors in interest, which property was located in the US and elsewhere, in violation of28 *U.S.CA. §*

*1605 (a) (3);*

g. Causing loss/damage to property belonging to and/or Plaintiffs' Predecessor's in interest, which property was located in the US & elsewhere, in violation of28 *US. CA. § 1605 (a) (5);*

h. Violation of National Stolen Property Act of and

i. Violations of1899 & 1907 Hague Conventions, the European Convention on Human Rights, Other Treaties & *Jus Cogens.*

100. Plaintiff BLEIER believe that the damage claims - based on reliable third party estimates of the number of outstanding bonds and their face value into the MILLIONS OF DOLLARS.

for Plaintiff BLEIER and/or their representatives, predecessors and/or others with

similar Bond claims, have made demands for the documents from Defendants.

102. Prior demands by others for the documents were rejected.

103.     Without production of the documents, Plaintiff believes that the claims will

be adversely prejudiced required specificity and especially those required when

pleading fraud, conspiracy, racketeering, securities violations, violations of the

National Stolen Property Act and other similar claims.

WHEREFORE, Plaintiff BLEIER demands jury trial and damages and

judgment against defendants jointly severally and/or individually for (i) the production

and preservation of documents and interest, attorneys' fees, and costs of this action.

## COUNT XII- DAMAGES FROM REFUSAL, DELAY and/or INTERFERENCE WITH PRODUCTION OF DOCUMENTS

104.     Plaintiff BLEIER repeats, realleges and incorporates each and every one of

the allegations of the foregoing paragraphs as if the same were set forth fully

and at length herein.

105. Plaintiff BLEIER and/or others have requested and/or made demands that

Defendants produce the necessary documents.

106. Plaintiff BLEIER or others were unable to secure the production of documents

from Defendants.

107. Plaintiff BLEIER reasonably believes that one or more Defendants will continue to

delay, refuse and/or object to the production of documents, which are needed to properly

make, plead, and prove the claims related to the bonds. Each and every delay, refusal

and/or objection to the production of the enumerated documents is designed to

cause Plaintiff and other bondholders to suffer, incur and/or sustain further

damages.

WHEREFORE, Plaintiff BLESIER demands and prays for judgment be entered against such of the defendants who delay, refuse and/or object to produce the necessary documents for damages, actual and punitive, as well as the imposition of attorney's fees and costs.

## CLAIM

108.   Plaintiff repeats and realleges and incorporates the prior paragraphs 1 to 107, as if fully set forth herein. The German gold bonds are bearer instruments bonds that entitle the holder to payment upon demand.

109.   Defendants GERMANY and others defendants are liable for the outstanding and unpaid principal and interest under the Plaintiff's Bonds.

110.   GERMANY and other defendants have guaranteed and succeeded and/or assumed the outstanding unpaid obligations under the bonds.

111.   The bonds had a 20 year term and interest coupons providing for interest at the rate of 7% per annum on June and December from January 1926 to 1946. Both principal and interest payable in the United States.

112.   The bonds have not been cancelled, perforated, voided, or otherwise modified and are genuine.   Each bond has a $1,000 face value amount, under the gold clause in each bond, represents the equivalent value in gold coin of the United States existing at the time.   Interest amounts are payable in the equivalent value in gold coin of the United States existing at the time.

113.   The total outstanding and unpaid principal is currently estimated for each bond at 2,000,000 (Two Million USD per Rheinelbe Union bond) and continues to increase with the price of gold.

114.   Through its actions and agreements, GERMANY and defendants, have repeatedly tolled and revived the applicable statute of limitations for enforcing

the bonds. These actions and agreements include but not limited to statements as recently as 1994, acknowledging and confirming Defendants payment obligations renewing Twenty year statute of limitations at least till 2014.

115. The bonds are due and unpaid and thus are in breach and default and Defendants refuse to pay upon demand.

## PRAYER FOR RELIEF AND JUDGMENT

**WHEREFORE** Plaintiff BLEIER, prays for relief and demands judgment against DEFENDANTS as follows:

a) For the full amount of all outstanding and unpaid principal and interest due on the bonds in equivalent value of gold coin of the United States in the MILLIONS of DOLLARS, estimated at $2,000,000 (Two Million US Dollars) per bond,

b) attorneys fees and costs,

c) exemplary and/or punitive and/or treble damages

d) such as further relief as the Court deems just and proper.

Dated:     October 30, 2008

Respectfully submitted,

ATTORNEY FOR PLAINTIFF RICHARD BLEIER

Hassan A. Abbas
Attorney and Counsellor at Law
Illinois A.R.D.C. No. 6206474
Hoveniersstraat 2,Suite 232-Box 344
Antwerp 2018 Belgium
Tel. 323 233 3910
Fax 323 233 9767
Email hassanabbas@telenet.be