# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RICHARD BLEIER ) | |
| ) | Civil Action |
| Plaintiff, ) | No.  08 CV 6254 |
| ) | |
| -vs- ) | |
| ) | |
| ) | The Honorable |
| BUNDESREPUBLIK DEUTSCHLAND a/k/a ) | JAMES B. ZAGEL |
| "FEDERAL REPUBLIC OF GERMANY"; ) | |
| BUNDESMINISTERIUM DER FINANZEN a/k/a ) | Magistrate Judge Cox |
| "GERMAN MINISTRY OF FINANCE"; ) | |
| DEUTSCHE BUNDESBANK a/k/a ) | FIRST AMENDED |
| "GERMAN NATIONAL BANK"; ) | COMPLAINT |
| COMMERZBANK AG; ) | |
| COMMERZBANK "Chicago Branch"; ) | CLASS ACTION |
| COMMERZBANK "New York Branch") ) | |
| COMMERZBANK "Los Angeles Branch ) | (With Jury Demand) |
| COMMERZBANK "Atlanta Branch" ) | |
| COMMERZBANK CAPITAL MARKETS CORP.; ) | |
| a/k/a "CCMC" a division of COMMERZBANK AG; ) | |
| COMMERZBANK SECURITIES, a division/ ) | |
| subsidiary of COMMERZBANK AG; ) | |
| COMMERZBANK CORPORATES & MARKETS, ) | |
| a division/subsidiary of COMMERZBANK AG; ) | |
| EUROHYPO AG, a division/subsidiary ) | |
| Of COMMERZBANK AG ) | |
| DEUTSCHE BANK AG; ) | |
| DEUTSCHE BANK/BANKERS TRUST CO.; ) | |
| CITIBANK N.A.; ) | |
| JP MORGAN CHASE BANK N.A.; ) | |
| WARBURG DILLON READ; ) | |
| SCHRODERS PLC; ) | |
| BANK FOR INTERNATIONAL SETTLEMENTS, ) | |
| a/k/a "BIS"; ) | |
| UBS AG; ) | |
| MIZUHO CORPORATE BANK; ) | |
| BANK OF NEW YORK MELLON; ) | |
| CREDIT SUISSE GROUP AG, and or its affiliates; ) | |
| SKANDINAVISKA ENSKILDA BANKEN AB ) | |
| ) | |
| Defendants. ) | |
| ) | |

1

## **INTRODUCTION**

One of the last great issues related to payment of outstanding financial obligations is that of the FEDERAL REPUBLIC OF GERMANY (hereinafter "GERMANY"), and DEFENDANTS, to the holders of certain GERMAN GOLD BONDS, (hereinafter collectively referred to as "THE BONDS") that were sold in and through the United States from 1924 to 1930. The complaint relates to the extraordinary, negligent, careless, reckless and/or otherwise fraudulent, wrongful or unlawful lengths to which the GERMAN government and its agents, and the other DEFENDANTS, will go to stop legitimate bondholders from ever collecting upon a 70 year old debt, or otherwise using German gold bearer bonds in any way they see fit, and for whatever commercial purposes they choose.

## **Historical Overview**

After World War I, GERMANY was forced to make reparation payments, in order to satisfy the debts incurred by waging World War I, with its resulting human and financial losses. To help GERMANY deal with these obligations to pay debts, the UNITED STATES and other allies agreed to sell certain GERMAN government backed and secured gold bearer bonds including but not limited to, the "Dawes Bonds" (named after the US Senator who devised the bond issue plan) sold starting in 1924, and "Young Bonds" (named after another US Senator) in 1930 (a year after the great stock market crash).

The Dawes, Young, and Rhein Elbe Union bonds, and/or other German bonds, were sold to American citizens, and denominated in United States Gold Dollars. More than Eighty Five (85) issues, representing hundreds of millions of US Gold Dollars, were marketed, sold and/or promoted to US citizens and others through DEFENDANTS, and/or through US or European, financial institutions, and/or banks and/or others, including to PLAINTIFF, and/or members of the PLAINTIFF CLASS, and/or PLAINTIFF's/CLASS MEMBERS', predecessors, or successors, or representatives.

When Hitler came to power in 1933, GERMANY ceased payments on the BONDS, and the BONDS went into default and remain so until today.   In fact, GERMANY, and DEFENDANTS, had no intention of paying for the BONDS, according to the terms of the bonds, and the conspiracy described herein is perhaps the greatest financial conspiracy against Americans and others in history.

The conspiracy started in 1933, when GERMANY under the Hitler Regime, determined NOT to make any further payments on the BONDS, which DEFENDANTS had sold and flooded in the American financial market.   It is important to understand that GERMANY would never have had the monies to fund World War II had it paid its obligations under the BONDS.   The monies that should have gone to pay bondholders were ultimately used against Americans and the world when Hitler diverted monies from debt service to the building of his war machine.   Simply put, GERMANY, and DEFENDANTS, schemed to defraud bondholders, and never intended to pay for the BONDS of American bondholders, and others, such as PLAINTIFF, and/or members of the PLAINTIFF CLASS, and/or PLAINTIFF'S/CLASS MEMBERS', predecessors, or successors, or representatives.

After World War II ended, GERMANY was called upon to pay its debt to the world.   In particular, GERMANY was called upon to pay for the BONDS.   During the 1952/1953 London Debt Conference, GERMANY's officials or agents or representatives, again conspired and schemed to defraud bondholders, such as, PLAINTIFF, and/or members of the PLAINTIFF CLASS, and/or PLAINTIFF'S/CLASS MEMBERS', predecessors, or successors, or representatives.

On the one hand, GERMANY stated officially that it/they would take full responsibility for all the pre-war debt owed, and would pay bondholders of German gold bonds, including the debt to PLAINTIFF/CLASS MEMBERS relative to the German gold

bonds.  On the other hand, GERMANY and DEFENDANTS designed and implemented a scheme to defraud bondholders, and a scheme to breach their contractual obligations, and a scheme to breach their fiduciary duties, in order to preclude, diminish or disqualify claims and evade their liabilities.

### The Agreement on German External Debt 1953

The Agreement on German External Debt 1953 (commonly referred to as the "London Debt Accord 1953") and "Validation" schemes, were entered into between GERMANY and the UNITED STATES (and other countries) to reduce Germany's debt.

The London Debt Accord 1953, was a government-sponsored settlement proposal relative to German external debt and was done without the consent of PLAINTIFF and/or CLASS MEMBERS, and was done without the assent of the Plaintiff/Class Members' predecessors, or heirs, or assigns, or successors in interest.

The London Debt Accord 1953, Treaties, Agreements, or "Validation" scheme/s, were contrary to the original payment terms of the bonds, and were in violation of the German constitution, and were in violation of the United States constitutional rights held by PLAINTIFF and/or CLASS MEMBERS.

GERMANY claimed that a "theft" or "looting" had occurred by Russians of its vaults in Berlin at the end of the war.  Even though such claims were false and/or unsubstantiated, the mere "possibility" of "theft", (as it is also possible that bonds were "removed", or "hidden", by GERMANY, prior to the arrival of the Russians), was one of the reasons for the London Debt Accord 1953 and ensuing "Validation" schemes, so GERMANY could supposedly engage a process to "validate" bonds.

One of the cornerstones to GERMANY'S scheme was the fabrication of witness testimony, documents and/or evidence used at the London Debt Conference 1952.  These were used in an attempt to evade liability by claiming, that bonds had been "stolen", and

that GERMANY had NO records from which it could determine which of the BONDS remained unpaid, and to whom GERMANY owed what obligations on the BONDS, and thus GERMANY created a "need" for GERMANY'S "validation" scheme, to ascertain which bonds "were or were not" in the "German vaults" in 1945, at the time of the Russian invasion.  As further part of the scheme to defraud Bondholders, this involved GERMANY's claim that, whatever bonds as may be presented post World War II era, could not be properly authenticated and validated.  Therefore GERMANY and DEFENDANTS offered to "validate" the bonds that were exchanged pursuant to the London Debt Accord 1953, through their own "validation" scheme.

As further part of the scheme to defraud Bondholders and to prevent PLAINTIFF or CLASS MEMBERS from making legitimate claims, GERMANY and DEFENDANTS determined they would fight bondholders who declined to accept the "offer" to take "pennies on the dollar" by giving up or exchanging his/her Bonds, as was provided under the settlement terms offered in London Debt Accord 1953.

### The "Validation" Scheme

The "Validation" scheme is unconstitutional, and the process of redemption or "validation" of the bonds in Germany has been turned into a mock process, and is being exploited or abused by DEFENDANTS to defraud PLAINTIFF/CLASS MEMBERS.

The "Validation" laws, schemes or procedures, are arbitrary and capricious, highly discriminatory, lack substantive or procedural due process, and deny the Plaintiffs' right to JURY to fix damages.  Further, the "Validation" schemes contain unfair and unreasonable criteria, and are a biased and/or include systematic abuse of power, or abuse of discretion, by GERMANY and DEFENDANTS.

The "Validation" scheme to defraud PLAINTIFF and CLASS MEMBERS, subjects them to unduly burdensome "validation" requirements, with impossible "proofs",

and/or imposes unacceptable conditions, contrary to the plain language of the bonds.

The DEFENDANTS' scheme to defraud also includes the knowing, negligent, careless, reckless, and/or wrongful fabrication of witness testimony, false documents and/or false statements, or false evidence through which GERMANY or DEFENDANTS could attempt to evade paying their obligations to persons such as PLAINTIFF, and CLASS MEMBERS, or their predecessors, or successors.

The DEFENDANTS were/are involved in malicious prosecution, wrongful expropriation or taking of property, and confiscation or mutilation of bonds, and deprivation of Plaintiffs/Class Members' rights or interests, and wrongful forfeiture of claims, denial of meaningful redemption of bonds, and refusal of obligations or payment.

Notably, evidence indicates that repurchased bonds were in fact marked by GERMANY, completely eliminating the "need" for "Validation" scheme.  For example, in 1956, Richard D. Kearney, assistant legal advisor to German Affairs in the Department of State testified to that effect.  Jacques J. Reinstein, Director Office of German Affairs, testified that bonds were perforated.  Testimony was given at the Hearings before the Subcommittee to Investigate the Administration of the Internal Security Act and other Internal Security laws of the Committee on the Judiciary, United States Senate 84th Congress, on September 6th, 1956.  Eugene Deter – Director of the Reichsbank, during the 1955 Validation Board Hearings, testified that a secret tax stamp was affixed to the repurchased external bonds (a swastika placed under the gummed binding holding the coupons together).

The PLAINTIFF and CLASS MEMBERS, as bona fide purchasers of bonds, or as heirs, or successors, or representatives thereof, are entitled to pursue their claims because the bonds are BEARER BONDS, financial instruments which require no proof of ownership going back to1945.  And as PLAINTIFF/CLASS MEMBERS, own, and/or

have possession of the bonds, which are valid and self-authenticating, and/or can be readily authenticated by independent experts' examination of the bonds and coupons, and there is no necessity or obligation pursuant to law or the terms of the BEARER bonds, to meet arbitrary and capricious requirements imposed by DEFENDANTS' expedient or so-called "validation" schemes.

### The London Debt Accord 1953 – "Settlement Offer"

Under the London Debt Accord 1953, the PLAINTIFF/CLASS MEMBERS, or their predecessors, or successors, were proposed a "settlement offer", and as bondholders had the right to choose, either: (a) to accept the "offer" and subscribe to the settlement procedures of the London Debt Accord 1953 and "Validation" scheme/s, or alternatively, (b) to reject the settlement "offer", and press their own claims for payment and redemption of the bonds at the appropriate future time for full value, and/or in a court of their choosing, preferably the US Federal Court, as the bonds were sold in the United States, and were redeemable, payable, or collectible, at the option of the Bearer, in time of peace or war, among other places, in the United States, with various responsible parties, such as GERMANY, and its agencies, and with DEFENDANTS as Trustees, Redemption or Paying agents, Guarantors, Co-Obligors, and the bonds were subject to American law.

Despite the option given to bondholders for redemption and/or payment of the bonds pursuant to original terms, in the United States, or elsewhere, nevertheless, GERMANY and DEFENDANTS fraudulently conspired to compel the PLAINTIFF or CLASS MEMBERS, to "accept" what they did "not accept", and against their will, to yield to the DEFENDANTS' settlement "offer" and its "Validation" scheme.

GERMANY and DEFENDANTS would cause bondholders who did not accept the "settlement offer" or "validation" schemes under the London Debt Accord 1953, persons such as Plaintiff, and/or Members of Plaintiff's Class, and/or Plaintiff/Class Members

predecessors, or successors: (i) to forfeit their claims or lose property rights, (ii) to be subject to criminal investigations and/or prosecution, (iii) to intimidation, (iv) to negligent infliction of emotional distress and/or ultimately, (v) to place them into a position where they would be forced against their wish, or the contractual terms of the bonds, to yield, concede, or subscribe to fraudulent schemes, and/or mock administrative process, or, (vi) to abandon efforts to enforce their rights, or to stop their legitimate claims on the BONDS.

Furthermore, an examination of correspondence, statements, or declarations of PLAINTIFF or CLASS MEMBERS or bondholders who experienced the "validation" process over the years with GERMANY or DEFENDANTS, and who submitted their bonds for "validation" and redemption and payment, to the employees, agents or representatives of GERMANY or DEFENDANTS, provides compelling evidence, THAT:

(a) GERMANY and DEFENDANTS endorse, promote and/or maintain a deceptive and spurious "Validation" scheme; and/or,

(b) GERMANY and DEFENDANTS are unwilling and/or incapable to "authenticate" or "validate" bonds for the benefit of bondholders; and/or,

(c) GERMANY and DEFENDANTS will refuse to pay; Even if bonds are authenticated by foremost experts in the field, and/or

(d) GERMANY and DEFENDANTS, in addition to refusal to pay any bonds, whether "validated" or not, often will mark bonds for "nonpayment" or "void", or will perforate, or perform other such acts, rendering the bonds worthless, prior to returning to their rightful owners; and/or

(e) GERMANY and DEFENDANTS misappropriate or confiscate the tendered bonds, and do not return them to their rightful owners.

It is against this backdrop of facts, and those recently discovered, that PLAINTIFF brings this CLASS ACTION, on behalf of himself, and similarly situated bondholders.

8

## DESCRIPTION OF PARTIES

1. **PLAINTIFF, RICHARD BLEIER** (hereinafter "PLAINTIFF" or
   "BLEIER") is a citizen and resident of the United States, living in Chicago,
   Illinois, in this judicial district and is the legal and equitable owner of German
   gold bond/s, and brings this lawsuit, Individually, and on behalf of the Class
   Members and bondholders, similarly situated, and brings this lawsuit as a
   CLASS ACTION.

2. **DEFENDANT, BUNDESREPUBLIK DEUTSCHLAND**, a/k/a, "FEDERAL
   REPUBLIC OF GERMANY" (hereinafter "GERMANY") has its main offices
   in Berlin, Germany, and which is one of the trustees, guarantors, obligors,
   and/or redemption or paying agents on PLAINTIFF/CLASS MEMBERS'
   BONDS, and has dealt with and/or was involved with the German gold bearer
   bonds, and has documents related to Plaintiff's/Class Members' German gold
   bonds, and/or potential claims as they may relate to one or more Defendants.
   BUNDESREPUBLIK DEUTSCHLAND, a/k/a Federal Republic of Germany,
   as guarantor, and/or successor, and/or co-obligor, and/or trustee, and/or paying
   and redemption agent, is liable for payment of the bonds.

3. **DEFENDANT, BUNDESMINISTERIUM DER FINANZEN**, a/k/a,
   GERMAN FINANCE MINISTRY, hereinafter ("GERMAN FINANCE
   MINISTRY") is an agency of the German government, with its main offices in
   Berlin, Germany, and which is one of the guarantors, trustees, obligors, and/or
   redemption or paying agents, on Plaintiff's/Class Members' Gold Bonds, and
   which dealt with and or was involved with one or more of the Defendants and
   has documents related to German gold bonds and Plaintiff's/Class Members'
   German gold bonds and or potential claims as they may relate to one or more of

the Defendants.   BUNDESMINISTERIUM DER FINANZEN a/k/a German

Finance Ministry, as guarantor, and/or successor, and/or trustee, and/or co-

obligor and/or as redemption and paying agent, is liable for payment of the

bonds.

4. **DEFENDANT, DEUTSCHE BUNDESBANK**, a/k/a, "GERMAN

NATIONAL BANK", hereinafter ("GERMAN NATIONAL BANK") is an

agency of the German government, with its main offices in Berlin and

Frankfurt, Germany, and which is one of the trustees, guarantors, obligors,

and/or successors, and/or redemption or paying agents on Plaintiff's/Class

Members' Gold Bonds, which dealt with and or was involved with

Plaintiff's/Class Members' German gold bonds and with one or more of the

Defendants and or has documents which relate to Plaintiff/Class Members

German gold bonds and/or potential claims as they may relate to one or more of

the Defendants, and has offices in the United States, at 499 Park Avenue, New

York, New York.   DEUTSCHE BUNDESBANK, a/k/a German National

Bank, as guarantor, and/or successor, and/or trustee, and/or co-obligor, and/or

paying and redemption agent, is liable for payment of the bonds.

5. **DEFENDANT, COMMERZBANK AG** (hereinafter "COMMERZBANK") is

a German bank which has its principal offices in Frankfurt, Germany, and

which also maintains offices in the United States, and which is one of the

trustees, guarantors, obligors, and/or redemption or paying agents on

Plaintiff's/Class Members' Gold Bonds, which has dealt with and or was

involved with Plaintiff's/Class Members' German gold bonds, and has

documents in its possession related to Plaintiff's/Class Members' German gold

bonds and/or potential claims as they may relate to one or more of the

Defendants.  COMMERZBANK AG, as guarantor, and/or co-obligor, and/or successor, and/or trustee, and/or as redemption and paying agent, is liable for payment of the bonds.

6.  **DEFENDANT, COMMERZBANK AG** (hereinafter "COMMERZBANK") is a German bank which has its principal offices in Frankfurt Germany, and which is one of the trustees, guarantors, obligors, successors, and/or redemption or paying agents on Plaintiff's Gold Bonds, and which also maintains offices and conducts business in the United States, in various jurisdictions, including this jurisdiction, through DEFENDANTS, COMMERZBANK Chicago Branch, COMMERZBANK Atlanta Branch, COMMERZBANK New York Branch, COMMERZBANK Los Angeles Branch, as well as through its wholly owned subdivisions or subsidiaries, or alter egos, such as, **DEFENDANT, COMMERZBANK CAPITAL MARKETS CORPORATION**, a subsidiary/division of COMMERZBANK AG (hereinafter "CCMC") **DEFENDANT, COMMERZBANK SECURITIES**, a subsidiary/division of COMMERZBANK AG (hereinafter "SECURITIES), **DEFENDANT, COMMERZBANK CORPORATES AND MARKETS**, hereinafter ("CBMC") a subsidiary/division of COMMERZBANK AG, and **DEFENDANT EUROHYPO AG**, division/subsidiary of COMMERZBANK AG, and which have dealt with and or were involved with Plaintiff's/Class Members German gold bonds, and have documents in their possession related to Plaintiff's/Class Members' German gold bonds and/or potential claims as they may relate to one or more of the Defendants.   COMMERZBANK, and its related entities, as guarantors, and/or successors, and/or trustees, and/or co-

obligors, and/or as redemption and paying agents, are liable for payment of the bonds.

7. **DEFENDANTS COMMERZBANK AG, COMMERZBANK, CCMC, COMMERZBANK SECURITIES, CBMC and EUROHYPO AG** are foreign corporations, doing business in the United States through a myriad of divisions, wholly owned, subsidiary, or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets are controlled, dominated and/or directed by Defendant COMMERZBANK AG, and/or its majority shareholders.  COMMERZBANK, and related entities, as guarantors, and/or as successors, to redemption or paying agents, and/or as trustees, and/or as co-obligors, and/or as alter egos, and/or as redemption and paying agents, are jointly and/or severally liable for payment of the bonds.

8. **DEFENDANT, DEUTSCHE BANK AG**, (hereinafter "DEUTSCHE") is a German bank which has its principal offices in Frankfurt, Germany and which is one of the trustees, and/or guarantors, and/or obligors, and/or successors, and/or redemption or paying agents, on PLAINTIFF/CLASS MEMBERS Gold Bonds; and which also maintains offices in the United States, and has dealt with Plaintiff's/Class Members' German gold bonds, and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's/Class Members' German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.  DEUTSCHE BANK AG conducts or conducted business in the United States and the world through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities

and/or assets and/or finances, are controlled, dominated and/or directed by
DEUTSCHE BANK AG and/or its majority shareholders.  DEUTSCHE BANK
AG, and its related entities, as guarantors, and/or trustees, and/or co-obligors,
and/or selling brokers, and/or alter egos, and/or as redemption and paying
agents, or successors thereof, are jointly and/or severally liable for payment of
the bonds.

9.  **DEFENDANTS, DEUTSCHE BANK USA/BANKERS TRUST CO.,**

(hereinafter "BANKERS TRUST") is a United States and or Trustee bank,
which has offices in Chicago, New York and many other cities in the United
States, and which is one of the trustees, guarantors, successors, co-obligors,
and/or redemption or paying agents, on PLAINTIFF'S/CLASS MEMBERS'
Gold Bonds and which has dealt with Plaintiff's/Class Members' German gold
bonds and/or was involved with one or more of the Defendants and has
documents in its possession related to Plaintiff's/Class Members German gold
bonds and/or potential claims as they may relate to one or more of the
Defendants herein.  DEUTSCHE BANK USA/BANKERS TRUST CO.
conducts or conducted business through a myriad of divisions, wholly-owned,
subsidiary or alter ego companies, which are integrated companies, and/or
subsidiaries, and/or divisions, whose activities and/or assets and/or finances,
are controlled, dominated and/or directed by DEUTSCHE BANK
USA/BANKERS TRUST CO., and/or its majority shareholders.  DEUTSCHE
BANK USA/BANKERS TRUST CO., and its related entities, as guarantors,
and/or as redemption and paying agents, and/or as trustees, and/or as co-
obligors, and/or as selling brokers, and/or as alter egos, and/or as successors
thereof, are jointly and/or severally liable for payment of the bonds.

13

10. **DEFENDANT CITIBANK N.A.** (hereinafter "CITIBANK") is a United States bank, and which is one of the trustees, and/or guarantors, and/or obligors, and/or selling brokers,  and/or redemption or paying agents, or successors thereof, and is responsible for payment on PLAINTIFF/CLASS MEMBERS' German Gold Bonds, and which has and maintains offices in the United States, and all over the world, and has dealt with Plaintiff's/Class Members' German gold bonds; and/or was involved with one or more of the Defendants, and has documents in its possession related to Plaintiff's/Class Members' German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.  CITIBANK conducts or conducted business in the United States and the world through a myriad of divisions, wholly-owned, subsidiary, or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by CITIBANK, and/or its majority shareholders.  CITIBANK, and its related entities, as guarantors, and/or as trustees, and/or as selling brokers, and/or as co-obligors, and/or as alter egos, and/or as redemption and paying agent, and/or as successors thereof, are jointly and/or severally liable for payment of the bonds.

11. **DEFENDANT JP MORGAN CHASE BANK N.A.,** (hereinafter "JP MORGAN CHASE") is a United States bank, and one of the trustees, and/or guarantors, and/or co-obligors, and/or selling brokers,  and/or redemption and paying agents, or successors thereof, on PLAINTIFF'S/CLASS MEMBERS' German Gold Bonds; and which has and maintains offices in New York and other cities, and has dealt with Plaintiff's/Class Members German gold bonds; and/or was involved with one or more of the Defendants and has documents in

its possession related to Plaintiff's/Class Members' German gold bonds or potential claims as they may relate to one or more of the Defendants herein. Defendant JP MORGAN CHASE conducts or conducted business, in the US and/or the world, through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by JP MORGAN CHASE and/or its majority shareholders.  JP MORGAN CHASE, and its related entities, as guarantors, and/or as selling brokers, and/or as co-obligors, and/or as alter egos, and/or as trustees, and/or as paying and redemption agents, or successors thereof, are jointly and/or severally liable for payment of the bonds.

12. **DEFENDANT WARBURG DILLON READ**, (hereinafter "WARBURG DILLON") is one of the redemption or paying agents, or successors thereof, and/or guarantors, and/or selling brokers, and/or trustees, or co-obligors, responsible for payment on PLAINTIFF'S/CLASS MEMBERS German Gold Bonds, and which has and maintains offices in the United States, and has dealt with Plaintiff's/Class Members' German gold bonds and/or was involved with one or more of the Defendants and has documents in its possession related to Plaintiff's/Class Members German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.  WARBURG DILLON conducts or conducted business through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by WARBURG DILLON and/or its majority shareholders.  WARBURG DILLON, and its related entities, as

guarantors, and/or trustees, and/or co-obligors, and/or alter egos, and/or as

paying and redemption agents, and/or successors thereof, are jointly and/or

severally liable for payment of the bonds.

13.  **DEFENDANT SCHRODERS PLC**, (hereinafter "SCHRODERS") has its

head offices in London, United Kingdom, and maintains offices in New York,

New York, and which is one of the redemption and paying agents on

PLAINTIFF/CLASS MEMBERS German gold bonds, and/or is one of the

guarantors, and/or trustees, and/or co-obligors, and/or selling brokers, and/or

successors to the redemption and paying agents, and is responsible for payment

on Plaintiff/Class Members' German Gold Bonds.  SCHRODERS PLC has

dealt with PLAINTIFF/CLASS MEMBERS German gold bonds and/or was

involved with one or more of the Defendants and has documents in its

possession related to Plaintiff's/Class Members German gold bonds, and/or

potential claims as they may relate to one or more of the Defendants herein.

SCHRODERS PLC, a foreign corporation, with asset and investment

management, trading, brokerage and/or other banking or financial activities,

conducts or conducted business in the United States, United Kingdom, and the

world, through a myriad of divisions, wholly-owned, subsidiary, or alter ego

companies, which are integrated companies, and/or subsidiaries, and/or

divisions, whose activities and/or assets and/or finances, are controlled,

dominated and/or directed by SCHRODERS PLC and/or its majority

shareholders.  SCHRODERS PLC, and/or its related entities, as guarantors,

and/or trustees, and/or co-obligors, and/or alter egos, and/or selling brokers,

and/or principal/agents, and/or as paying and redemption agents, and/or

successors thereof, are jointly and/or severally liable for redemption and payment of the Plaintiff/Class Members' gold bonds.

14. **DEFENDANT BANK FOR INTERNATIONAL SETTLEMENTS**, (hereinafter "BIS") is a international financial institution with its main offices in Basel, Switzerland and was established and acted as Trustee and/or Guarantor on the Young and Dawes loans, and is one of the guarantors, trustees, obligors, paying and/or redemption agents on PLAINTIFF'S/CLASS MEMBERS' German Gold Bonds, and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants, held, opened, and/or operated certain accounts related to PLAINTIFF'S/CLASS MEMBERS German gold bonds, and has documents in its possession related to Plaintiff's/Class Members' German gold bonds, and/or potential claims as they may relate to one or more of the Defendants herein. BIS, as guarantor, and/or as trustee, and/or as co-obligor, is unconditionally liable for payment of the bonds.

15. **DEFENDANT UBS AG**, hereinafter "UBS" is a Swiss bank with its main offices in Basel and Zurich, Switzerland, and is one of the paying and/or redemption agents, and/or guarantors, and/or trustees, and/or co-obligors, and/or successors thereof, responsible for payment on PLAINTIFF'S/CLASS MEMBERS' German Gold Bonds and which has and maintains offices and agents in the United States and has dealt with Plaintiff's German gold bonds and/or was involved with one or more of the Defendants, held, opened, and/or operated certain accounts related to Plaintiff's German gold bonds, and has documents in its possession related to Plaintiff's German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.

UBS AG conducts or conducted business in the United States and the world, through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by UBS AG and/or its majority shareholders.   UBS AG, and its related entities, as guarantors, and/or as trustees, and/or as co-obligors, and/or as alter ego, and/or as redemption and paying agents, or successors thereof, are jointly and/or severally liable for payment of the bonds.

16.   **DEFENDANT MIZUHO CORPORATE BANK**, hereinafter "MIZUHO" is a Japanese bank with its head offices in Tokyo, Japan, and which is one of the paying and/or redemption agents, and/or guarantors, and/or trustees, and/or co-obligors, and/or successors thereof, responsible for payment on PLAINTIFF'S or CLASS MEMBERS' German Gold Bonds; and which has and maintains offices and branches and agents in the United States, including New York and Chicago, and which has dealt with Plaintiff's/Class Members German gold bonds, and/or was involved with one or more of the Defendants, and/or held, opened, and/or operated certain accounts related to Plaintiff's/Class Members German gold bonds, and has documents in its possession related to Plaintiff's or Class Members' German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein.  MIZUHO conducts or conducted business in the United States and the world, through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by MIZUHO and/or its majority shareholders.   MIZUHO, and its related entities,

as guarantors, and/or as trustees, and/or as co-obligors, and/or as alter egos, and/or as redemption and paying agents, and/or successors thereof, are jointly and/or severally liable for payment of the bonds.

17. **DEFENDANT SKANDINAVISKA ENSKILDA BANKEN AB**, hereinafter "SEB" is a Swedish bank, with its head offices in Stockhom, Sweden, and which is one of the paying and/or redemption agents, and/or guarantors, and/or trustees, and/or co-obligors, and/or successors thereof, and is responsible for payment on PLAINTIFF'S/CLASS MEMBERS' German Gold Bonds; and which has and maintains offices and branches and agents in the United States, including New York, and which has dealt with Plaintiff's/Class Members German gold bonds, and/or was involved with one or more of the Defendants, and/or held, opened, and/or operated certain accounts related to Plaintiff's/Class Members German gold bonds, and has documents in its possession related to Plaintiff's/Class Members German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein. SEB conducts or conducted business in the United States and the world, through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by SEB and/or its majority shareholders. SEB, and its related entities, as guarantors, and/or as trustees, and/or as co-obligors, and/or as alter egos, and/or as redemption and paying agents, and/or successors thereof, are jointly and/or severally liable for payment of the bonds.

18. **DEFENDANT CREDIT SUISSE GROUP AG**, hereinafter "CREDIT SUISSE" is a Swiss bank with its head offices in Zurich, Switzerland, and

which is one of the paying and/or redemption agents, and/or guarantors, and/or

trustees, and/or co-obligors, and/or successors thereof, responsible for payment

on PLAINTIFF'S/CLASS MEMBERS' German Gold Bonds; and which has

and maintains offices and branches and agents in the United States, including

New York, and which has dealt with Plaintiff's/Class Members German gold

bonds, and/or was involved with one or more of the Defendants, and/or held,

opened, and/or operated certain accounts related to Plaintiff's/Class Members

German gold bonds, and has documents in its possession related to

Plaintiff's/Class Members German gold bonds and/or potential claims as they

may relate to one or more of the Defendants herein.  CREDIT SUISSE

conducts or conducted business in the United States and the world, through a

myriad of divisions, wholly-owned, subsidiary or alter ego companies, which

are integrated companies, and/or subsidiaries, and/or divisions, whose activities

and/or assets and/or finances, are controlled, dominated and/or directed by

CREDIT SUISSE and/or its majority shareholders.  CREDIT SUISSE, and its

related entities, as guarantors, and/or as trustees, and/or as co-obligors, and/or

as alter egos, and/or as redemption and paying agents, and/or successors

thereof, are jointly and/or severally liable for payment of the bonds.

19. **DEFENDANT BANK OF NEW YORK MELLON**, hereinafter ("MELLON)

is a United States global financial services company, with its head offices in

New York, New York, and which is one of the redemption and/or paying

agents, and/or guarantors, and/or trustees, and/or co-obligors, and/or successors

thereof, responsible for payment on PLAINTIFF'S/CLASS MEMBERS'

German Gold Bonds; and which has and maintains offices and branches and

agents in the United States, and other countries, and which has dealt with

Plaintiff's/Class Members German gold bonds, and/or was involved with one or more of the Defendants, and/or held, opened, and/or operated certain accounts related to Plaintiff's/Class Members German gold bonds, and has documents in its possession related to Plaintiff's/Class Members German gold bonds and/or potential claims as they may relate to one or more of the Defendants herein. MELLON conducts or conducted business in the United States and the world, through a myriad of divisions, wholly-owned, subsidiary or alter ego companies, which are integrated companies, and/or subsidiaries, and/or divisions, whose activities and/or assets and/or finances, are controlled, dominated and/or directed by MELLON and/or its majority shareholders. MELLON, and its related entities, as guarantors, and/or as trustees, and/or as co-obligors, and/or as alter egos, and/or as redemption and paying agents, or successors thereof, are jointly and/or severally liable for payment of the PLAINTIFF/CLASS MEMBERS gold bonds.

20. The **DEFENDANTS** above mentioned, will be collectively referred to as "DEFENDANTS" or as "Defendants"; and the use of the term in the Complaint is intended to include, any and/or all of the Defendants herein, which are named in this complaint, and/or named in the bonds. The PLAINTIFF or CLASS MEMBERS' claims and allegations are in connection with and relate to all the Defendants. When appropriate, Defendant/s will be named separately, in accordance with the claims or allegations that relate to the specific Defendant/s.

## UNITED STATES COURT JURISDICTION

### Over FEDERAL REPUBLIC OF GERMANY, and GERMAN NATIONAL BANK and GERMAN FINANCE  MINISTRY

21.  Defendants, GERMAN FINANCE MINISTRY, BUNDESMINISTERIUM

DER FINANZEN, and GERMAN NATIONAL BANK , DEUTSCHE

BUNDESBANK, are agencies of Defendant, BUNDESREPUBLIK

DEUTSCHELAND, a/k/a FEDERAL REPUBLIC OF GERMANY, and as

such this Court would have jurisdiction over such defendants pursuant to 28 U.S.C.

Sec. 1330 and 1605 et seq. (providing for commercial exceptions to the Foreign

Sovereign Immunities Act), in so far as the action relates to German Gold Bonds, i.e.

commercial instruments which were marketed in the United States and for which

communications and other acts were performed and/or directed to persons, such as

PLAINTIFF, and CLASS MEMBERS, including by one or more DEFENDANTS

herein, in the United States, pursuant to the following precedent.

### Over COMMERZBANK AG, and related entities, DEUTSCHE BANK AG, DEUTSCHE BANK USA/BANKERS TRUST CO., BANK FOR INTERNATIONAL SETTLEMENTS ("BIS")

22.  The Court has jurisdiction over Defendants COMMERZBANK AG and its related

branches in the United States and otherwise affiliated companies, and subsidiaries and

divisions CCMC, CBMC, COMMERZBANK SECURITIES, named Defendants,

COMMERZBANK AG, and EUROHYPO AG, its various branches, and over

DEUTSCHE BANK AG, and  DEUTSCHE BANK USA/BANKERS TRUST CO.,

and BANK FOR INTERNATIONAL SETTLEMENTS, ("BIS") through diversity of

citizenship, pursuant to 28 USC § 1332, and/or because said Defendants (i)  maintain or

maintained representatives, personnel, offices and/or assets within and/or (ii) conduct

or conducted regular continuous and systematic business within this judicial district.

### Over SCHRODERS PLC, WARBURG DILLON, CITIBANK N.A., MIZUHO, JP MORGAN CHASE BANK N.A., UBS AG, BANK NEW YORK MELLON, SKANDINAVISKA ENSKILDA BANKEN, CREDIT SUISSE

23.The Court has jurisdiction over Defendants, CITIBANK N.A., JP MORGAN

CHASE BANK N.A., UBS AG, SCHRODERS PLC, WARBURG DILLON,

BANK NEW YORK MELLON, SKANDINAVISKA ENSKILDA BANKEN,

CREDIT SUISSE, and MIZUHO, through diversity of citizenship, pursuant to 28

USC Sec.1332, and/or because said Defendants are either United States

corporations (i) or corporations that maintained agents, representatives, personnel,

offices and/or assets within and/or (ii) conducts or conducted regular, continuous and

systematic business within this judicial district.   The Court has jurisdiction over all

non-governmental defendants by supplemental jurisdiction , 28 U.S.C.Sec. 1367.

## VENUE

24. VENUE is proper in this district insofar as PLAINTIFF RICHARD BLEIER

resides in Chicago, Illinois, in this judicial district and/or;

25.  DEFENDANTS maintain offices, personnel, and assets and/or conduct or

conducted business within this district, or United States, or internationally, and/or

26.  DEFENDANTS have engaged in acts, and/or omissions, related to and/or

affecting PLAINTIFF or CLASS  MEMBERS, within this district, and/or related

to or affecting Plaintiff/Class Members' property within this district, and/or

27.  DEFENDANTS are subject to jurisdiction of this Court.

28.   VENUE is proper in this Court since Plaintiff resides in this district and/or that

DEFENDANTS do business and/or may be found in this district within the

meaning of 28 U.S.C. Sec. 1391 and 28 U.S.C. Sec. 1350.

29.   In the event, the Court should determine that venue may be lacking in this

Court, then pursuant to 28 U.S.C. Sec. 1404, the Court may transfer the action to

any other district which the case could have been brought originally.

## CLASS ACTION ALLEGATIONS

30.  This action is brought and may be properly maintained as a Class Action pursuant to

the provisions of the Federal Rules of Civil Procedure 23, F.R.C.P.  23 (b) (1), (2) & (3).

This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and

superiority requirements of the provisions.

31.   Plaintiff, RICHARD BLEIER, brings this cause individually, and on behalf of all

members of the proposed CLASS, of similarly situated bondholders.

32.   The Class is defined as:

> ***"All individuals and entities who currently own or possess German gold bonds,
> (e.g. Dawes, Young, and/or Rheinelbe Union bonds, or other legitimate German gold
> bonds) or their predecessors, heirs, successors, assigns, or representatives of
> owners or bondholders, and whose bonds have never been redeemed and/or for which
> no payment has ever been made by Germany or Defendants."***

> Included in the Class are those bondholders who did not accept the settlement "offer"
> contained in the London Debt Agreement 1953 and did not subscribe to the "validation"
> schemes of Defendants; and/or whose bonds were never exchanged, enfaced, redeemed,
> or accepted for payment, and/or were never included in any contracts or agreements for
> redemption or payment with any Defendants.

> Also included in the Class are those bondholders who actually Submitted their bonds for
> "validation", and redemption and payment to Germany, or Defendants; but whose bonds
> were not validated or paid after submission, or whose bonds were not returned by
> Germany or Defendants, or whose bonds were misappropriated after submission, or
> whose bonds were returned after submission but have been tampered with by Germany or
> Defendants and marked inappropriately rendering the bonds null and void.

33.   Members of the Proposed Class are so numerous and geographically dispersed as to make

joinder of all Class Members in this action impracticable.

34.   The estimated number of bondholders is between 67,000 to 500,000.

35.   The claims of the named Plaintiff RICHARD BLEIER, are typical of the claims of the

proposed Class, in so far as Plaintiff and Class Members, were damaged by the same wrongful

conduct of the DEFENDANTS alleged herein.   Furthermore the factual bases of Defendants'

misconduct is common to all Class Members, and represents a common thread of fraudulent,

deliberate, and/or negligent misconduct, resulting in economic harm, and injury to all members of

the proposed Class.

36.   Defendants have acted and/or refused to act on grounds generally applicable to the Proposed

Class, making injunctive relief, and/or correspondent declaratory relief, and /or other just relief,

appropriate with respect to the Class as a whole, in that DEFENDANTS have been:

a.  unjustly enriched;

b.  refused meaningful redemption or payment of the bonds to the proposed Class Members;

c.  refused to provide full and complete accounting and disclosure of the aforesaid actions;

d.  refused access to information critical to Plaintiff's and Class Members claims;

37.   A Class Action pursuant to the Federal Rules of Civil Procedure 23 is superior to the other available methods of fair, just and efficient adjudication of the controversy.   Individual litigation would be unduly burdensome to the courts where the manifold individual litigations would proceed.   This Class Action will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Plaintiffs/Class Members' claims in a single forum.   The conduct of this action as a Class Action conserves judicial resources of the parties and of the judicial system, and preserves the rights of each class member.    Furthermore, a Class Action is for most class members the only feasible method that allows them an opportunity for legal redress and justice.

38.   The named PLAINTIFF will fairly and adequately protect the interests of the proposed Class. Plaintiff has no conflict of interest with members of the proposed Class.  Named Plaintiff and consenting members of the Class will be represented by a team of local and international lawyers who are experienced and competent.

39.   Common questions of fact and law predominate in the claims of all Class Members including the named Plaintiff.   These claims depend on showing that Defendants are liable for payment of the German gold bearer bonds, pursuant to the terms of the bonds, and the Defendants' acts and omissions based on common facts.  Named Plaintiff's and Class Members' evidentiary showing will be based on common documents and testimony relative to the German gold bearer bonds and Defendants actions or omissions.

40.   There are questions of fact and law common to the PLAINTIFF and CLASS

MEMBERS including, but not limited to, WHETHER, the Defendants have:

a) Been unjustly enriched by their acts;

b) Refused meaningful redemption or payment of the bonds;

c) Refused to provide full and complete disclosure;

d) Provided false or misleading statements relative to the worth (or lack thereof) of the bonds and/or false or misleading statements regarding the validity (or lack thereof) of the bondholders' claims and/or provided false or misleading statements regarding the "validation" schemes for redemption or payment of the bonds, all to the detrimental reliance and damage of bondholders;

e) Failed to institute necessary or reasonable protocols or instructions to the various bondholders' or redemption institutions in Germany, US and world, & failed to make payment to the bondholders according to the terms of the bonds;

f) Failed to take steps to prevent and/or protect Plaintiff/Class Members, bondholders, from conspiracies, fraudulent and/or wrongful acts related to the German Gold Bonds, which conspiracies, fraudulent and/or other wrongful acts were known to one of more Defendants;

g) Knowingly, carelessly, recklessly and/or negligently participated in a conspiracy designed to frustrate and/or interfere with Plaintiffs/Class Members, bondholders, ability to redeem the German Gold Bonds; and knowingly, carelessly, recklessly and/or negligently participated in a conspiracy to cause economic or emotional damage to Plaintiff/Class Members, and bondholders, and/or those who sought to redeem and obtain payment for the German Gold Bonds;

h) Engaged in commission of fraud and/or conspiracy to commit fraud and/or deprived Plaintiff/Class Members of their constitutional rights, and/or

engaged in wrongful or unlawful actions to circumscribe the Plaintiff and Class

Members rights to pursue claims and receive payment for the German gold

bearer bonds in the United States or elsewhere;

i)     Engaged in racketeering activities and/or wire and mail fraud;

j)     Transported and sold securities and/or commercial instruments in the US

and/or which caused direct affect in the US, in violation of 28 U.S.C. section

1605 (a) (2); participated and/or profited from the wrongful

expropriation/taking in violation of International Law of property belonging to

bondholders which property was located in the US and elsewhere, in

violation of 28 *U.S.C.A.* 1605 (a) (3);

k)     Caused economic loss/damage to Plaintiff /Class Members which

property was located in the US and elsewhere, in violation of 28

U.S.C.A. 1605 (a);

l)     Violated the Holocaust Victims Redress Act of 1998, and  Defendants

violated the National Stolen Property Act of 1994; and Violated the 1899

and 1907 Hague Convention and Other Treaties & Jus Cogens;

m)     Violated the European Convention on Human   Rights Article

1, Protocol 1;

n)     Engaged in deception, fraudulent statements, scheme to

defraud the plaintiff/class members, bondholders and/or the market

place, and engaged in spoliation of evidence - related to the

BONDS, including, but not limited, THE BLACK LIST.

### **STATEMENT OF RELEVANT FACTS**

41.     PLAINTIF, RICHARD BLEIER, is a United States citizen, residing in Chicago,

Illinois, and PLAINTIFF and CLASS MEMBERS, are owners or holders of German gold

bond/s, who have never been paid for their German gold bond/s, by Defendants, and seek redemption and payment for their German gold bearer bonds, and full payment according to the payment terms of the bonds.

42.     There are many bondholders; such as Plaintiff, and Class Members, (and/or their predecessors, heirs, successors, assigns and/or their representatives); who own or possess bonds, certain German Gold Bearer Bonds, known as Dawes, Young and/or Rheinelbe Union bonds, or such other legitimate German gold bonds; whose bonds have never been redeemed and/or for which no payment has been made by Defendants, and for which Plaintiff and Class Members, in general, seek redemption and payment of their bonds according to the express payment terms of the bonds.

a.     There exists many bondholders; such as Plaintiff or Class Members, (and/or their predecessors, heirs, successors, assigns, or representatives of owners), who own or possess bearer bonds, certain German Gold Bonds, known as Dawes, Young and/or Rheinelbe Union bonds, or other legitimate bonds, who DID NOT ACCEPT the settlement "offer" as contained in the London Debt Accord 1953, and/or who did not exchange or convert their bonds, and/or who did not subscribe to the Defendants' "validation" schemes. And PLAINTIFF did not accept, and CLASS MEMBERS did not accept, the settlement "offer" contained in the London Debt Accord 1953, and did not exchange their bonds or did not subscribe to the Defendants' "validation" schemes. And PLAINTIFF or CLASS MEMBERS or their predecessors, decided to wait to redeem their bonds when they could obtain full payment according to the terms of the bonds.  Plaintiff/Class Members were not represented properly by Bondholders Councils or other Creditors Representatives, and were not represented by their own counsel, during the London Debt Accord 1953.

b.       PLAINTIFF or CLASS MEMBERS were never part of any payment or

settlement agreement with GERMANY or DEFENDANTS, and/or they never

agreed to reduction of the debt owed to them, pursuant to the bonds, which is their

private right; and Plaintiff or Class Members never agreed to altered, or modified,

or changed, payment terms for the bonds; and they were never part of any

settlement with  GERMANY or any German agencies, or the Defendants; and

Plaintiff or Class Members were never part of any other agreement or other contract

for payment with  any DEFENDANTS, and/or representatives of the Defendants.

c.       PLAINTIFF/CLASS MEMBERS were never part of any actions or

other contracts and/or other agreements which formed the basis of other legal

actions by Ronnie D. Fulwood, Eugene Thomason, James Grizzard, German

Gold Bondholders Redemption Group, LLC, Edward Fagan, and/or others,

who were part of the transactions upon which those persons or entities based

their claims against one or more of these defendants.

43.    PLAINTIFF or CLASS MEMBERS  have discovered certain information or evidence

which indicates that from the period from 1945 to the present, certain officials or

representatives of the DEFENDANTS, and/or defendant GERMANY, or its agencies,

and/or former representatives of certain German government, financial, or banking

institutions and/or agencies, including but not limited to, DEFENDANTS GERMANY,

DEUTSCHE BUNDESBANK, GERMAN FINANCE MINISTRY, COMMERZBANK

AG, and DEUTSCHE BANK AG; and as well as the other DEFENDANTS, including but

not limited to, WARBURG DILLON, SCHRODERS, DEUTSCHE BANK

USA/BANKERS TRUST, UBS AG, JP MORGAN CHASE, MIZUHO, MELLON, SEB,

CITIBANK, CREDIT SUISSE, and BANK FOR INTERNATIONAL SETTLEMENTS,

who were trustees, and/or agents for the trustees, and or guarantors, and/or co-obligors, and/or

alter egos, and/or redemption and paying agents, and/or successors thereof, named herein as Defendants, were engaged in a conspiracy and Scheme to Defraud, Plaintiff, Class Members, and/or bondholders in general, and acted negligently and/or fraudulently, in connection with the bonds, and acted with bad faith and/or breached their fiduciary duties, and/or failed, or without justification, refused to redeem or pay the bonds, to the detriment and economic harm of bondholders herein.

44.   DEFENDANTS, HAVE, including but not limited to, among other things:

a)   Been unjustly enriched by their acts;

b)   Refused meaningful redemption or payment of the bonds;

c)   Refused to provide full and complete disclosure;

d)   Provided false or misleading statements relative to the worth (or lack thereof) of the bonds and/or false or misleading statements regarding the validity (or lack thereof) of the bondholders' claims and/or provided false or misleading statements regarding the "validation" process or redemption or payment of the bonds, all to the detrimental reliance and emotional and economic damage of bondholders;

e)   Failed to institute necessary and reasonable protocols and/or instructions to the various bondholders and redemption institutions in Germany, the US and worldwide;

f)   Failed to take steps to prevent and/or protect Plaintiffs/Class Members, bondholders, from conspiracies, fraudulent and/or wrongful acts related to the German Gold Bonds, which conspiracies, fraudulent and/or other wrongful acts were known to one of more defendants;

g)   Knowingly, carelessly, recklessly and/or negligently participated in a conspiracy designed to frustrate and/or interfere with Plaintiff/Class Members,

bondholders' ability to redeem the German Gold Bonds; and knowingly, carelessly, recklessly and/or negligently participated in a conspiracy to cause economic or emotional damage to Plaintiff/Class Members and those who sought to redeem and obtain payment for the German Gold Bonds;

h)        Engaged in commission of fraud and/or conspiracy to commit fraud and/or deprived Plaintiff/Class members of their constitutional rights, and/or engaged in actions to circumscribe, cause forfeiture, denial of the Plaintiff and Class Members rights to pursue claims and receive payment for the German gold bearer bonds in the United States or elsewhere;

i)        Engaged in racketeering activities and/or wire and mail fraud; Transported and sold securities and/or commercial instruments in the US  and/or which caused direct affect in the US, in violation of 28 U.S.C. section 1605 (a) (2);

j)        Participated and/or profited from the wrongful expropriation/taking in violation of US laws and International Law of property belonging to bondholders which property was located in the US and elsewhere, in violation of 28 *U.S.C.A.* 1605 (a) (3);

(k)        Caused economic loss/damage to Plaintiff /Class Members which property was located in the US and elsewhere, in violation of 28 U.S.C.A. 1605 (a);

(l)        Defendants violated the Holocaust Victims Redress Act of 1998 and Defendants violated the National Stolen Property Act of 1994; and Violated the 1899 and 1907 Hague Convention and Other Treaties & Jus Cogens;

m)        Defendants violated the European Convention on Human

Rights Article 1, Protocol 1;

(n)     Engaged in deception, fraudulent statements, scheme to
defraud the Plaintiff/Class Members, bondholders and/or
the market place, and engaged in spoliation of evidence -
related to the BONDS, including, but not limited, THE
BLACK LIST.

45.     Subsequent to World War I, Germany was forced to make certain reparation payments.
In an effort to assist Germany to deal with the burdens, bond issues with coupons were created
called the "Dawes Bonds" (named after Senator Dawes who devised the bond issue plan).
Bonds were sold to American citizens and denominated in Gold US dollars.

46.     More than eighty five (85) issues, representing hundreds of millions of gold US dollars,
were marketed, sold and/or targeted to US Citizens and others, during the years of 1924 and 1930.
One final issue of bonds was called the "Young Bonds" (named after a US Senator Young, in
1930 a year after the great stock market crash), was designed to assist GERMANY repayment
of the Dawes bonds.  When Hitler came to power in 1933, the payments on the German Gold
Bonds hereinafter went into default and remain in that status until today.

47.     In addition to the Dawes & Young Bonds, the Republic of GERMANY, and/or its
related agencies, also issued, or Guaranteed, or Insured, and/or were Responsible for payment of
the Rheinelbe Union Bonds, and other legitimate German gold bearer bonds.

48.     GERMANY, the UNITED STATES and DEFENDANTS, Guaranteed, Insured, or
Succeeded to redemption and paying agents, or were/are Trustees, responsible for payment of
the bonds in the event of default, and/or were/are Paying and Redemption agents, responsible for
payment, and DEFENDANTS are jointly and/or severally responsible for redemption and
payment of the Young, Dawes and Rheinelbe Union Bonds, and other legitimate German gold
bearer bonds of the PLAINTIFF or CLASS MEMBERS..

49.    The Dawes, Young, and Rhein Elbe Union bonds and the other legitimate bonds, (hereinafter collectively "German Gold Bonds" or "BONDS") were/are tied to the United States Gold Dollar, and Defendants are responsible for payment accordingly.

50.    The bonds were sold via the Defendants' banks or financial institutions, in the United States, or otherwise, and via the DEFENDANTS, that acted as/were/are Trustees, or Selling Brokers, or Authenticating, Collection, or Redemption and/or Paying Agents, and/or Guarantors, and/or alter egos of each other, and/or successors thereof, and Defendants are co-obligors, and DEFENDANTS are jointly and/or severally responsible for redemption and payment of Plaintiff and Class Members' German Gold Bonds.

51.    In 1952, seven years after the close of World War II, a series of meetings were held in London to determine how GERMANY's pre war and post war debt, including the German Gold Bonds held by Plaintiffs and Class Members would be paid.  GERMANY, and its German officials, including but not limited to, the German CHANCELLOR KONRAD ADENAUER; and GERMANY'S public and private financial institutions, STATED, CONFIRMED, ACCEPTED that GERMANY would take full responsibility for all of the prewar debt, including the debt to the holders of the German Gold Bonds such as Plaintiff or Class Members, and other bondholders.

52.    The Agreement was formally known as The Agreement on German External Debt 1953, or is more commonly known as, the London Debt Accord 1953.  Through the London Debt Accord 1953, the DEFENDANTS, and/or GERMANY, and/or the debtors and obligors, sought to reduce, or limit the size of their debt and reduce the obligations to pay bondholders for the German Gold Bonds.  The London Debt Accord 1953 resulted in a significant reduction of GERMAN external debt (approximately a 70% reduction of German debt).  HOWEVER it did not result in a complete elimination of German debt, as the PLAINTIFF and/or CLASS MEMBERS had not been paid, and DEFENDANTS

remain jointly and/or severally liable, for full payment of the outstanding bonds, to the Plaintiff or Class Members.

53.     The London Debt Accord 1953, also afforded GERMANY or DEFENDANTS the opportunity to postpone debt repayment, and Germany's, public and private financial institutions, issued a MORATORIUM on the repayments to bond holders of German gold Bonds such as Plaintiff or Class Members, and the effect was POSTPONING payment for at least (40) forty years to bondholders such as PLAINTIFF/CLASS MEMBERS.

54.     Pursuant to the settlement procedures for those who accepted the "validation" scheme, new bonds in exchange for the old bonds were issued, and these conversion bonds had to be paid first; and therefore PLAINTIFF'S/CLASS MEMBERS' bonds, could NOT be presented for redemption or payment in GERMANY or the UNITED STATES, or at the DEFENDANTS' designated financial and/or banking institutions until APRIL 1994, and thereafter, when the SECURITIES EXCHANGE COMMISSION in the United States declared that bondholders such as Plaintiff/Class Members could press their claims for payment on their outstanding German gold bonds.

55.     During the London Debt Conference, and years thereafter, GERMANY, and its agents or officials, and/or DEFENDANTS, implemented a scheme to defraud bondholders, such as Plaintiff, members of the Plaintiff class, and/or their predecessors, heirs, assigns, successors, or representatives.  As part of the scheme to defraud bondholders, GERMANY deceptively declared at the London Debt Conference 1952, that its vaults in Berlin which contained certain gold bonds had been "looted" and that the bonds were removed on May 8th, 1945 by invading Russians.

56.     However, trading on the bonds was ongoing during many years after the end of the war, in particular in SWITZERLAND, where trading never stopped on the bonds, and the trading of the German gold bonds occurred during that time, so the alleged "thieves" had

(8) eight years to liquidate their bonds prior to the enactment of the "validation" schemes. Bondholders such as, PLAINTIFF or CLASS MEMBERS, who bought the bonds from recognized stock exchanges, were being expected or compelled to forfeit their investments, or accept "pennies on the dollar".

57.     The alleged "theft" of the bonds was a mere possibility.  This was indicated in the Agreement between the UNITED STATES and GERMANY regarding Certain Matters Arising from the Validation of German Dollar Bonds which states: "Whereas the United States and Germany have agreed that it in their best interest to provide for the determination of the validity of German dollar bonds…in view of the possibility… that a large number bonds may have been unlawfully acquired during hostilities in Germany or soon thereafter."

58.     The Securities Act of May 27, 1933, under the provisions of  Subchapters 1 and 2, Domestic Securities, held that the "Act will apply to securities offered by foreign issuers including foreign governments." 15 U.S.C. 77b note 77 page 41.  For example, Defendants JP MORGAN, BANKERS TRUST, CITIBANK, served as the "American Trustees" and Fiduciaries for the Dawes, Young, or Rheinelbe Union Bonds.

59.     The United States became the "Country of Offering" under the so called "validation" agreements, and the United States is thus a Secondary Guarantor and Co-Obligor on the bonds, and has obligations to pay the bonds in the event of default.  The United States, being bound by virtue of its corporate character, its sovereignty is not involved.

60.     Substantial amounts of money of innocent bondholders, such as PLAINTIFF/CLASS MEMBERS went into and/or remain in the coffers of DEFENDANTS, by means of fraud, to which DEFENDANTS and their agents, or successors, participated and/or acquiesced and have been unjustly enriched.  Such money

is being illegally withheld by the DEFENDANTS, against the legitimate claims of the wronged and injured bondholders for payment of their bonds, including payment of principal and interest.

61.     Defendants' are jointly and/or severally liable for payment of the bonds, based upon, including, but not limited to: the BONDS themselves, and notably, the bonds name and identify the DEFENDANTS (or predecessors or successors thereof) as responsible for payment of the bonds and the terms and conditions of payment.   DEFENDANTS are also named therein as the Trustees and/or Redemption and/or Paying agents and/or Fiduciaries responsible for payment of the bonds (or predecessors or successors thereof).  Defendants are also liable based on the Express contractual obligations, and the Implied contracts and duties of good faith, and the Fiduciary duties and/or the equitable justifications, in order to prevent fraud and injustice, and to prevent the Defendants' unjust enrichment, and to prevent substantial harm to Plaintiffs/Class Members.

62.     PLAINTIFF/CLASS MEMBERS, bondholders were not represented by counsel at the London Debt Accord 1953, and their best interests were not properly represented by the Bondholders Protective Councils during the conference.

63.     Senator Hiram Johnson had campaigned to exclude Wall Street bankers from any role in the Bond holders Protective organizations, as in his view they had "perpetuated the wrong", and had violated "elementary business ethics" in selling of the bonds, and the Council was influenced by the law firm of Sullivan and Cromwell, which in the 1930's, represented bondholders, and contemporaneously, German defaulting firm/s.

64.     GERMANY, and the GERMAN government and its agencies herein, formally stated their intentions, and accepted and agreed to pay for the bonds, and formally recognized their contractual obligations to pay the debts on the defaulted bonds, and for that principal purpose entered the Agreement on German External Debt 1953,

which states in the preamble: "CONSIDERING that, for about twenty years, payments on German external debts have not, in general, conformed to the contractual terms, that from 1939 to 1945 the existence of a state of war prevented any payments from being made with respect to many of such debts, that since 1945 such payments have been generally suspended, and that the Federal Republic of Germany desires to put an end to this situation."

65.     The Agreement on German External Debt 1953 and "validation" laws or schemes, were unconstitutional acts of Congress in the United States, and unconstitutional acts in Germany; and ratification of the agreements by the United States and Germany were unconstitutional, to the Extent the agreements were violative of Plaintiffs' and Class Members' constitutional rights guaranteed in the 5th, 7th, and 14th Amendments of the United States Constitution, and to the extent they were violative of the Takings Clause.

66.     The Agreement on German External Debt 1953 and "Validation" schemes, were in violation of the United States constitutional guarantees, including, but not limited to, those found in the Fifth and Fourteenth Amendments, which state: "No person shall be deprived of life, liberty or property, without due process of law", and in violation of the constitutional guarantees "against impairment of private contracts", under Article I, Section X, which states, in part, that, "No State shall enter into any Treaty or Alliance or Confederation… or Law Impairing the Obligations of Contracts.."

67.     The Agreement on German External Debt 1953 and other related "validation" schemes, were also in violation of the PLAINTIFF'S or CLASS MEMBERS constitutional right to "Trial by Jury", pursuant to the Seventh Amendment prescribing that damage claims be fixed by JURY.

68.     The US and German agreements relative to the BONDS, impaired the obligations of contract vis-à-vis the Plaintiff or Class Members.   Further, they constituted an

abuse of power to the extent of being a governmental deprivation of bondholders' rights, or taking of property, of Plaintiff or Class Members, without just compensation, and without due process of law.

69.     The obligations of DEFENDANTS to pay PLAINTIFF/CLASS MEMBERS for the bonds remain intact pursuant to the contractual terms of the BONDS.   Furthermore, the DEFENDANTS, by their express or implied agreements, and stated or implied intentions, are liable to pay for the bonds.

70.     Even if the Agreement on German External Debt 1953 (or the London Debt Accord 1953), is deemed a valid, it is basically a proposal for settlement agreement – as indicated by one of the heading "Approval of Settlement Terms and Procedures" relative to the German gold bonds and German External Debt, and as such, the "validation" schemes, are not binding on PLAINTIFF or CLASS MEMBERS.

71.     The Agreement on German External Debt1953, in of itself, does not modify the terms of the bonds.  There is nothing which precludes PLAINTIFF/CLASS MEMBERS from obtaining payments for the bonds via the Federal Courts, given: (a) the rights of the Plaintiff/Class Members to redeem the bonds, and (b) the refusal by Defendants to honor their obligations pay for the bonds, and (c) the law which recognizes Bearer Bonds as enforceable, and (d) the law which recognizes the validity of the payment Gold Clauses expressed in the bonds, as enforceable definite contracts, ( by statute, US law and public policy), and long and approved use in the United States.

72.     The original contracts, and bonds, and the stated intentions of the parties, govern the instant agreements, contracts and/or bonds.  PLAINTIFF/CLASS MEMBERS are entitled to bring suit directly in the United States, or appropriate forum of their choice, and to state their claims against DEFENDANTS for the bad faith, fraud, default, and the refusal to pay the bonds pursuant to the terms of the bonds, because the

DEFENDANTS have breached their pecuniary, contractual and fiduciary obligations.

73.     The PLAINTIFF/CLASS MEMBERS did not accept the settlement "offer" in

1953, the London Debt Accord and did not subscribe to DEFENDANTS' "validation"

schemes.  PLAINTIFF/CLASS MEMBERS had/have the right to payment pursuant to

the terms of the debts, and Defendants are jointly and severally liable for payment of

the bonds.

74.     The Plain language of the Agreement is that it applied to those creditors that

accepted the settlement of the London Debt Accord 1953 under "ARTICLE 15,

ACCEPTANCE BY CREDITORS", which sets forth the methods of acceptance of the

settlement terms by a creditor who must voluntarily submit the old bonds and/or

coupons – for exchange or enfacement or "validation" pursuant to settlement offer.

The "Acceptance" by the creditor of the offer was a condition precedent to the

exchange and submission of his/her bonds to the "validation" scheme.

75.     In the absence of the voluntary submission by Plaintiff or Class Members, or

bondholders, to the settlement "offer" and "validation" scheme for reduction of debt,

the DEFENDANTS are obligated to honor the original payment terms of the bonds.

76.     The PLAINTIFF and CLASS MEMBERS rights were protected in the international

convention that formulated the London Debt Accord 1953, and therefore it did not

hinder the legal rights of American bondholders to proceed with their claims in court in

the event of refusal of payment of the bonds by DEFENDANTS.

77.     The Agreement on German External Debt 1953, Annex II stated that: AGREED

RECOMMENDATIONS FOR THE SETTLEMENT OF MEDIUM AND LONG

TERM DEBTS RESULTING FROM PRIVATE CAPITAL TRANSACTIONS –

Article 1 – Introductory "This Agreement establishes terms and procedures which are

to govern the settlement of the debts described in Article III below. *The Agreement*

*does not in itself modify the terms of the debts to which it applies.* Rather it is contemplated that new contracts will be entered into between each debtor and his creditors pursuant to the provisions of this Agreement."

78.     Given the existing rights of PLAINTIFF or CLASS MEMBERS to redeem their bonds, it is unlawful, and unenforceable, and contrary to public policy or the international agreements, and contrary the terms of the debts and bonds, and contrary to the stated intentions of the parties and debtors, the fiduciary duties, or guarantees of the parties or debtors, for GERMANY or DEFENDANTS, to deny their obligations to pay for the bonds and debts.

79.      Further, it is unlawful, unenforceable and contrary to public policy and the international agreements, and/or contrary to law or the terms of the debts or bonds, for GERMANY and DEFENDANTS to attempt to compel Plaintiff or Class Members to yield, or capitulate, or accept, or to subscribe to fraudulent "validation" schemes in Germany, or elsewhere, as a prerequisite to redemption or payment, and these conditions are not part of the terms of the debts or the bearer bonds..

80.     Further it is unlawful or unenforceable and/or contrary to public policy or the international agreements, and/or contrary to law or the terms of the debts or bonds, or the stated intentions of the Defendants, fiduciary duties, or guarantees, for DEFENDANTS to violate, or cause violation, of the PLAINTIFF'S and CLASS MEMBERS constitutional rights under the United States Constitution and Amendments.

81.     GERMANY and/or DEFENDANTS have taken unfair advantage of the "validation" schemes in order to destroy or impair PLAINTIFF or CLASS MEMBERS private contract rights.

82.     The "validation" schemes have been used by DEFENDANTS as a deceptive device

to illegitimately alter or eliminate their payment obligations and minimize their liabilities.  The deceptive practice is designed to frustrate bondholders and cause forfeiture of their claims.  As such the Defendants' "validation" schemes are not compulsory upon Plaintiff or Class Members.  DEFENDANTS seek to impose unilateral changes in the terms of payment of the BONDS, to the detriment of the rights and interests of Plaintiff or Class Members.

83.     Further, not all countries signed or ratified the Agreement on German External Debt 1953, and accordingly, those countries, and bondholders thereof,  are not bound by its settlement procedures.

84.     As to American bondholders, the UNITED STATES government has express or implied obligations to protect the private property interests and investments of American citizens.

85.     In addition, GERMANY, has, fraudulently or unlawfully, attempted to settle all claims by executive fiat.  For example in 1961, referring to "Second Agreement Regarding certain matters Arising from the Validation of German Dollar Bonds"; where GERMANY was seeking to compel registration of bonds, and resolution of claims no later by September 1, 1964.  This was a unilateral act by GERMANY to breach the Treaty, and numerous agreements, and as such it was unlawful and invalid. GERMANY has prejudiced, distorted or impaired the validity of its own agreement, and thus the Agreement on German External Debt 1953, fails to impose the "validation" schemes on Plaintiff, Class Members or bondholders.

86.     The Agreement or "validation" laws, have nil effect on the encashment or collectability of the bonds.  Moreover, for PLAINTIFF or CLASS MEMBERS, or their predecessors, Tax reasons existed for non-assention to the London Debt Agreement 1953, because bondholders assenting to the issuance of  new securities in

exchange for old, became liable for certain income tax liabilities.

87.     The effect of the London Debt Accord 1953 and "validation" schemes was to cause prejudice and damages to Plaintiff and Class Members, because they changed the payment, redemption, and other material terms of the Bonds, without consent of the bondholders, who chose NOT to exchange their German Gold Bonds, and PLAINTIFF and CLASS MEMBERS, have had to wait, approximately 40 YEARS, before they could engage in the process to redeem and obtain payment for their bonds.

88.     The result for PLAINTIFF or CLASS MEMBERS or bondholders was disastrous. Many of the bondholders, as well as their predecessors, Died, before they could redeem the Bonds, or collect, and to others, the bond certificates were lost and/or damaged.

89.     The German Gold Bonds were BEARER BONDS and were passed from generation to generation, and or sold from one individual, or entity, to another.

90.     Based on the agreements contained in the London Debt Accord 1953, the Non-Assenting Bondholders – in the United States, or elsewhere, such as PLAINTIFF and CLASS MEMBERS, had/have the legal right and power to demand redemption and payment on original terms and conditions stated in the bonds.   The DEFENDANTS' pre war debts, are due almost entirely to private persons or entities, and accordingly, settlements and payments are based on voluntary arrangements between debtors and creditors, and the settlement takes place when the individual creditor accepts the terms of the settlement made by the debtors.

91.     The actions and/or failures outlined above were designed to UNJUSTLY ENRICH and benefit the DEFENDANTS, such as GERMAN private and public institutions, and to unjustly enrich or benefit the trustees, or redemption or paying agents, or guarantors, such as DEFENDANTS' banks and/or financial institutions, by simply NOT PAYING Plaintiff and/or Class Members.

92.     DEFENDANTS have never paid for the full value of their obligation, to Plaintiff and

Class Members and bondholders, for their German Gold Bonds.

93.     On APRIL 15th, 1994, the United States SECURITIES AND EXCHANGE

COMMISSION cleared the way for PLAINTIFF and CLASS MEMBERS, the bondholders,

to start the process of redemption of the German Gold Bonds.  Plaintiff and Class Members,

could state their claims and demand payment from all liable DEFENDANTS named herein,

or other entities not known or named herein, including, banks, financial institutions,

guarantors, successors, selling brokers, redemption and or paying agents, and governments

and governmental agencies.

94.     The GERMAN and UNITED STATES government agreed to pay bondholders for their

bonds.  American securities dealers, such as DEFENDANTS, or their predecessors, or

including but not limited to, JP MORGAN, CITIBANK, BANKERS TRUST and other

DEFENDANTS, acted as "American Trustees", and/or fiduciary agents for the bonds

offered by issuers from GERMANY; and the GERMAN municipal and corporate issuers

were nationalized, and became the direct obligations of GERMAN government.  Prior and

subsequent to nationalization, the UNITED STATES ratified treaties, which obligated its

protection of the private property interests of bondholders in general.

95.     The 73rd U.S. Congress, Session 1, Chapter 38, on May 27, 1933, adopted a

mechanism to protect bondholders called the Corporation of Foreign Securities Holders

Act of May 27, 1933.  Said Corporation was authorized, delegated power, and ordered,

to wit:  (a) to function as Fiscal and Paying Agent of the defaulted obligations, (b) to

negotiate and assist resumption of payment due to current bondholders, (c) to adopt

corrective measures for the protection, vindication, reservation of the Bondholders

Contractual International Judicial Rights, (d) to protect the rights as Paying Agent, and as

a national interest in acting as Trustee for the bondholders.  These statutory provisions

are in the Codes 15 U.S.C. 77bb-77mm; 48 Stat. 92-95.

96.    The United States, through the Corporation of Foreign Securities Holders Act May 27, 1933, as fiduciary trustee, was charged with the protection of the bondholders' property interests to wit: "Agreement for transfer of bonds to Bondholders committee held to create express trust to conserve, salvage, and adjust investment; hence Federal court had jurisdiction of action by Committee."

97.    The United States Department of State acknowledged that these German gold bonds are valid instruments and obligations, that have been approved by the Department of State.  This was accomplished by the bonds being published in the Addendum of Additional Bonds to the MARSHALL PLAN, and by the United States Department of State, specifically requesting that Defendants, such as, JP MORGAN sell the Dawes bonds in the United States.

98.    The bonds contain a GOLD CLAUSE.  The Gold Clause provides that the BEARER is entitled to payment based upon the Gold content of the Dollar existing at that time, and the legal content of the dollar at that time was 25.8 grains of gold, nine tenths fine, as was defined by CONGRESS.

99.    The estimated and present value of the German gold bearer bonds is staggering. Example:

a.    The present value of a single Dawes bond, or Young bond, or Rhienelbe Union bond, a Twenty Year 7% Sinking Fund Mortgage Gold Bond, with an original face value of One Thousand ($1,000.00) US Gold Dollars, is in the MILLIONS OF DOLLARS, being actual present value is calculated at 25.8 grains of gold for each dollar, for a $1,000 gold bond the quantity of gold is 25,800 grains divided by 480 (equivalent in troy ounces) and brought to present value of gold as of February 4th, 2009 was $903.35/ounce [25,800 divided by 480 multiplied Price of Gold $903.35/ounce = $48,555.06 face value of single bond], and then the applicable interest rates in Gold including, compound and/or default interest, dating back,

over 60 years must be applied; and the price of Gold has increased tremendously as has the value of the German gold bonds.  Ron Campbell, enrolled agent of the United States Treasury Department, designated no. 10845, has confirmed and adopted the use of this formula.

100.     PLAINTIFF or CLASS MEMBERS, have equitable, legal, and/or beneficial rights, control and interests in the German Gold Bearer Bonds, including but not limited to, YOUNG, DAWES, & RHEINELBE UNION bonds, and other legitimate German Gold Bearer Bonds, such as FREE STATE OF BAVARIA, or UNITED STEEL WORKS CORPORATION.

101.     DEFENDANTS never paid for the German Gold bearer Bonds, of PLAINTIFF and CLASS MEMBERS, who have sought redemption and payment of the bonds, and yet the obligations are still unpaid, and remain owed.  On October 3, 1990, EAST GERMANY and WEST GERMANY were REUNITED, requiring that the provisions of the 1953 London Debt Agreement be implemented, and that Additional Payments be made to Plaintiff/Class Members or bondholders.

102.     PLAINTIFF/CLASS MEMBERS and Bondholders, in general, have been given the "Run Around" by DEFENDANTS for the past sixty years, and since 1994, as they sought to redeem and obtain payment for their German Gold Bonds.

## STATUTE OF LIMITATIONS and/or EQUITABLE TOLLING

103.     The applicable statutes of limitations for the instant claims on securities or bonds has not expired.

104.     Assuming *arguendo* that defendants attempt to assert a defense based on statute of limitations - as was asserted by other German governmental obligors and upheld the German Supreme Court on October 25, 2005 in the case of an American Bondholder against the City of Dresden - the Plaintiffs causes of action are tolled because the acts complained of have no statute of limitations, or which could or were only

recently discovered and/or ongoing acts and/or continuing wrongs, and/or the applicable statutes of limitations are tolled because of Defendants' concealments or denials of the facts alleged herein.   Further Defendants are estopped from relying on any statute of limitations because of their concealment of the fraudulent nature of their schemes.

105.    PLAINTIFF or CLASS MEMBERS have recently discovered the DEFENDANTS' conspiracy and Scheme to Defraud Plaintiffs and as well as the wrongful seizure, expropriation, concealment, withholding and/or retention and/or tampering with THE BONDS, and/or refusal to pay, THE BONDS of bondholders, Facts related to The Scheme to Defraud Plaintiffs and Class Members and bondholders have only recently come to Plaintiffs possession and knowledge, that show some of the ways how GERMANY and DEFENDANTS executed The Scheme to Defraud Plaintiff and/or CLASS MEMBERS, out of THE BONDS, or out of payments thereof.

### COUNT I
### CONSPIRACY TO DEFRAUD
### CONSPIRACY TO BREACH CONTRACTUAL OBLIGATIONS
### CONSPIRACY TO BREACH GOOD FAITH & FIDUCIARY DUTIES
### AGAINST ALL DEFENDANTS

106.    PLAINTIFFS, RICHARD BLEIER/CLASS MEMBERS, repeat, reallege, and incorporate each and every one of the allegations which are contained in the preceding paragraphs 1 to 105, as if the same were set forth fully and at length herein.

107.    DEFENDANTS agreed, directly or indirectly, and by concerted action, conspired to defraud, Plaintiff/Class Members, and bondholders.

108.    DEFENDANTS, preconceived a plan, for an unlawful purpose, and conspired or agreed, to do unlawful acts, by unlawful means or omissions, and to commit actual fraud or constructive fraud, upon bondholders, Plaintiff/Class Members.

109.    DEFENDANTS, by acquiescence or active participation, also engaged in a conspiracy to breach contractual obligations, and to breach their fiduciary duties, and Defendants did breach their contractual and fiduciary obligations and duties of fair dealing

and defaulted on payment of the bonds.

110.    DEFENDANTS by support and/or request and/or collaboration, collectively promoted, aided and abetted, ratified or endorsed the intentional or negligent misrepresentations or omissions or fraud or constructive fraud against Plaintiff/Class Members, and conspired to defer, deter, diminish, or deny the legitimate bondholders claims for redemption and payment of the bonds.

111.    DEFENDANTS conspiracy caused forfeiture of rights or claims or bonds, and/or caused misappropriation of bonds, and a deprivation of PLAINTIFF/CLASS MEMBERS property interests, and vested rights, and Defendants refused proper redemption or payment on the bonds, and caused economic harm and injury to Plaintiff/Class Members, and bondholders.

112.    In furtherance of the conspiracy, the DEFENDANTS knowingly made, or continue to make, false and/or misleading statements, and/or continue to make fraudulent misrepresentations, or make omissions of objective facts, in connection with the bonds, as to the lack of value or validity of the bonds, (false or misleading statements such as, among others, the bonds or claims are "worthless" or "cannot be paid"), all the acts, statements, or omissions, were to the detrimental reliance of the Plaintiff/Class Members, bondholders, and DEFENDANTS have caused economic harm to Plaintiff/Class Members.

113.    The conspiracy to defraud, and conspiracy to breach contractual obligations, and conspiracy to breach good faith or fiduciary duties by DEFENDANTS is ongoing, and it is systematically being committed against the Plaintiff/Class Members, and bondholders, in that: GERMANY and DEFENDANTS, by one, or more, or all of the participants, in the conspiracy, actively or by compliance, have engaged or done, or do the following, but not limited to:

   (a)  Continue to conceal their wrongful acts, from and/or to;

   (b)  Continue to misrepresent their obligations for payment of bonds; from and/or to;

   (c)  Continue to misrepresent material facts or conceal the real worth or value of the
        bonds pursuant to the Gold Clause payment terms, from and/or to;

(d) Continue to falsely and misleadingly assert the "need" for "validation" scheme before payment, from and/or to;

(e) Continue to use "validation" scheme with spurious requirements as an instrumentality of fraud, or constructive fraud, in order to thwart bondholder's rights, or confiscate or misappropriate or tamper with bonds and/or to cause forfeiture or deny claims, from and/or to;

(f) Continue to operate with bad faith, from and/or to;

(g) Continue to breach their contractual obligations (express or implied), and continue to breach their fiduciary duties, from and/or to;

(h) Continue to misrepresent or conceal material facts relative to the procedures for redemption or payment of the bonds, from and/or to, among others, the Plaintiff, and the Class Members, and bondholders, and other Victims' Representatives, Lawyers, Politicians, Courts, Historians, and Interested parties to whom DEFENDANTS, are and have been, under an obligation: (i) to pay for BONDS and property of bondholders, and (ii) to truthfully and fully disclose the existence of the real value, and/or records, and/or information, and/or legitimate redemption procedures, relative to THE BONDS.

114.   The acts of one or more of the conspirators herein, are the acts of all the DEFENDANTS within the conspiracy, who are jointly and severally liable for the economic harm and damages sustained by Plaintiff/Class Members.

115.   As a direct and proximate result of DEFENDANTS' conspiracy to defraud, conspiracy to breach contractual obligations and conspiracy to breach good faith and conspiracy to breach fiduciary duties, PLAINTIFF/CLASS MEMBERS have suffered economic harm.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this court, of which

the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact

which should be permitted to award Plaintiff and Class members MILLIONS of dollars

and (ii) interest, and attorney fees, exemplary or punitive damages, costs of action.

## COUNT II
## NEGLIGENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS

116.   PLAINTIFFS, RICHARD BLEIER/CLASS MEMBERS repeat, reallege, and

incorporate each and every one of the allegations as contained in the above referenced

paragraphs 1-115, as if the same were set forth fully and at length herein.

117.   DEFENDANTS, as Trustees, and/or Obligors, and/or Guarantors, and/or

Redemption and Paying Agents, or Successors thereof, on the PLAINTIFF/CLASS

MEMBERS' BONDS, had, and have legal and/or equitable duties, and special and/or

fiduciary relationships, and have duties owing towards Plaintiff or Class Members, as

legitimate bondholders seeking redemption and payment of the bonds.

118.   DEFENDANTS owe a duty to communicate proper and accurate information to

the Plaintiff/Class Members, bondholders seeking to redeem and obtain payment of their

bonds, upon which they could reasonably rely in the conduct of their affairs relative to the

bonds, and DEFENDANTS had/have a duty NOT to conceal or suppress information,

relative to redemption and/or payment of the bonds, to which they had exclusive

possession of, and enjoyed a superior position to bondholders, Plaintiff/Class Members.

119.   DEFENDANTS breached their duties, and acted negligently, recklessly, and/or

fraudulently.

120.   Throughout the years, in particular since 1994, when the SEC declared that

bondholders could press their claims for payment of the bonds, the DEFENDANTS have

received multiple inquiries from bondholders seeking redemption of their bonds.  For

example, on or about March 2006, PLAINTIFF or CLASS MEMBERS, by themselves or

through their representatives, contacted the DEFENDANTS, and made inquiries (verbally

by telephone, or in writing by letter or fax, or by email) about "where" and "how" and

"with whom" to redeem the bonds and how to obtain the payments due on the bonds.

121.    DEFENDANTS, through their employees, working in their offices, acting within the scope of employment or authority for their respective Defendants', consistently failed, or refused to give adequate responses to the questions, and/or misrepresented they "did not have" or "did not know" about redemption or payment procedures on German gold bonds.

122.    DEFENDANTS failed to disclose the proper information, when they had/have a duty to disclose such, and/or failed to provide any meaningful procedure for redemption and payment of the bonds to the bondholders, whether privately or publicly.

123.    Defendants either acted intentionally to provide false or misleading information, or were negligent in ascertaining the truth of their statements, and Defendants failed to verify, disclose, or institute proper and fair procedures for redemption and payment of the bonds, while knowing they had a legal or contractual obligations, and/or fiduciary or equitable duties to provide the information, and to redeem and pay for the bonds.

124.    These acts, failures and/or omissions, and/or negligent misrepresentations, were in direct violation of the DEFENDANTS' duties, which existed by virtue of the special or fiduciary relationships, and by virtue of the special, legal and equitable obligations, and/or fiduciary duties, between the parties, and under the circumstances, the Defendants' acts, negligent misrepresentations, failures and omissions also amounted to constructive fraud, and were to the detrimental reliance of PLAINTIFF/CLASS MEMBERS, who were injured by the Defendants' misrepresentations and/or were injured by Defendants' failure to provide proper information or redemption procedures, and as a direct and proximate result of such misconduct, PLAINTIFF/CLASS MEMBERS suffered economic harm.

125.    As a further direct and proximate result of DEFENDANTS' breach of duty, and misconduct, Plaintiff/Class Members were not able to redeem their bonds pursuant to their legal rights, and were not able to obtain payment from Defendants according to the terms of the bonds, and PLAINTIFF/CLASS MEMBERS had to forfeit claims, and suffered economic damages.

126.    As a further direct and proximate result of the breaches and omissions,

DEFENDANTS have gained an Unconscionable Advantage, over the Plaintiffs/Class Members, and have evaded their redemption and payment obligations, and have been Unjustly Enriched, by withholding adequate information, and preventing meaningful redemption of the bonds, and by refusing payment of the PLAINTIFF/CLASS MEMBERS bonds, for which payment is  due and owing.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this court, of which the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff and Class Members MILLIONS of dollars and (ii) interest, and attorney fees, exemplary or punitive damages, costs of action.

### COUNT III
### CONSTRUCTIVE FRAUD
### AGAINST ALL DEFENDANTS

127.    PLAINTIFFS, RICHARD BLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations as contained in the above referenced paragraphs 1-126, as if the same were set forth fully and at length herein.

128.    DEFENDANTS, as Trustees, and/or Obligors, and/or Guarantors, and/or Redemption and Paying Agents, and/or Successors thereof, on the PLAINTIFF/CLASS MEMBERS' BONDS, have legal, and/or equitable duties, and have special and/or fiduciary relationships or obligations, and owe duties towards Plaintiff/Class Members seeking redemption and payment of the bonds.

129.    DEFENDANTS had/have duties to maintain proper redemption and payment procedures for the PLAINTIFF/CLASS MEMBERS' bonds, and Defendants had/have a duty to communicate accurate information to the Plaintiff/Class Members and bondholders seeking to redeem and/or obtain payment of their bonds, upon which they could

reasonably rely in the conduct of their affairs relative to the bonds, and DEFENDANTS have a duty NOT to conceal or suppress information, and Defendants have duty to act with GOOD FAITH, and not to act in ways adverse or detrimental to the PLAINTIFFS' rights.

130.    DEFENDANTS received questions and inquiries from bondholders, Plaintiff/Class Members, concerning the redemption and payment of their bonds.   Specifically Defendants received questions as to "how" the bonds could be redeemed and "where" and with "whom" and "how" payment could be obtained.

131.    When Defendants received the requests and inquiries, the DEFENDANTS knew and realized, in light of their equitable, legal or fiduciary duties or obligations, or in light of the confidential or special relationships between the parties, that they had/have duties to PLAINTIFFS/CLASS MEMBERS, and to provide adequate and meaningful responses. The Defendants' answers to the Plaintiffs' questions, and/or their responses relative to redemption and payment procedures, lacked transparency, and were negligently, or intentionally, deceptive or ambiguous and/or unsubstantiated.

132.    DEFENDANTS further realized that bonds from PLAINTIFF/CLASS MEMBERS were still unpaid and/or in default, and that Plaintiffs' claims were in good faith and forthcoming, and DEFENDANTS had/have a duty to be transparent, and open, and fair, and reasonably prompt and efficient, in dealing with the Plaintiff/Class Members' claims, and to pay according to the terms of the bonds, and DEFENDANTS had/have a duty NOT to impose unreasonable, or arbitrary and capricious, or extracurricular, requirements (such as proof of ownership in 1945), which was not within the plain language and ambit or terms of the Bearer bonds.

133.    Defendants failed to do the necessary duties as was required pursuant to the special and fiduciary relationships with Plaintiff/Class Members, and DEFENDANTS breached their legal and/or equitable duties and/or fiduciary obligations.

134.    DEFENDANTS knew that bonds were in default, and that bondholders, such as PLAINTIFF/CLASS MEMBERS would, sooner or later, demand payment of their bonds, and Defendants had/have a duty to institute proper redemption mechanisms, and Defendants had/have a duty to make payment according to the terms of the bonds, and had/have a duty to maintain proper information and implement fair and proper procedures for redemption and payment of the bonds.

135.    Further DEFENDANTS had/have a duty to make such redemption information, and to make fair procedures for redemption and payment of bonds according to the terms of the bonds, AVAILABLE to Plaintiffs, in order to safeguard PLAINTIFFS/CLASS MEMBERS' investments or monies held in trust by DEFENDANTS.  And Defendants had/have a duty to provide the bondholders a reasonable opportunity to redeem their bonds and obtain just payment.

136.    DEFENDANTS negligently or intentionally failed to fulfill their fiduciary obligations, and failed to meet their duties of providing adequate information, and failed to meet their obligations to provide meaningful redemption and payment of the bonds to Plaintiffs/Class Members, all of which operated as a constructive fraud.

137.    DEFENDANTS did not provide proper information and reasonable redemption and just payment to Plaintiffs/Class Members.  Further, the DEFENDANTS adopted contrary measures, completely adverse to Plaintiffs' rights and interests, in that DEFENDANTS, directly or indirectly, endorsed, approved, acquiesced to, participated in, or conducted an improper, or unlawful "validation" scheme, which functioned as a ruse, and by definition and operation was constructive fraud.

138.    The deception was designed to deprive Plaintiff/Class Members of their rights, and/or claims, and/or bonds and/or monies, all of which was in direct breach of the Defendants' special relationships and/or equitable or legal duties or fiduciary obligations,

and all of which, operated as a constructive fraud, for which DEFENDANTS are

accountable, and liable for the damages caused to Plaintiff/Class Members.

139.    DEFENDANTS breached and violated their duties, and/or acted negligently or

recklessly, by failing to provide meaningful redemption procedures for payment of the

bonds, and/or by failing to provide adequate information, and/or, by concealing

redemption or payment information or promoting deceptive standards (such as

concealments relative to the validity and value of the bonds under the Gold Clauses

payment terms), or by providing false or misleading information or statements, such as the

bonds are "worthless" or "cannot be paid", all to the detrimental reliance of Plaintiff/Class

Members, who suffered economic harm and injury as a result of the Defendants' acts or

omissions, which amount to positive or constructive fraud, and have detrimental effect

upon Plaintiff/Class Members and upon private and/or public interests.

140.    The acts or omissions, false statements or misrepresentations, of Defendants'

relative to the bonds, had/have a systematic propensity to deceive bondholders and the

public, and had/have a systematic tendency to foster, and further, and operate as a fraud

upon Plaintiff/Class Members, and bondholders, irrespective of the moral guilt of the

wrongdoers, or intent to deceive or actual dishonesty.

141.    DEFENDANTS solicited the Plaintiff/Class Members' monies, and Defendants

solicited investment in the bonds, under circumstances where these monies or investments

from Plaintiff/Class Members, were not gifts, and could not be considered as gifts; and

DEFENDANTS solicited trust and confidence, by holding themselves out as reliable,

creditworthy, trustworthy, and expert financial institutions, and by holding themselves out

as reputable, Trustees, or Obligors, or Selling Brokers, or Redemption and Paying Agents,

and/or Guarantors, or successors thereof, and by holding themselves out as dependable

entities, for repayment of the bonds, to the detrimental reliance and injury of Plaintiffs.

142.    As such, DEFENDANTS established equitable, legal, or fiduciary duties and/or special or confidential or fiduciary relationships with Plaintiff/Class Members, bondholders, and thereafter, DEFENDANTS breached their legal, equitable or fiduciary duties and/or obligations causing harm to Plaintiff/Class Members.

143.    As a direct and proximate result of DEFENDANTS' constructive fraud, and breach of legal, equitable, or fiduciary duties, Plaintiff/Class Members suffered monetary damages and were not able redeem their bonds and were not able to obtain payment according to the terms of the bonds.

144.    And as a direct and proximate result of said DEFENDANTS' constructive fraud, the DEFENDANTS have gained an undue and Unconscionable Advantage and have been unjustly enriched by withholding proper information or redemption and by refusing payment of the bonds, and by keeping all the bond monies due to PLAINTIFF/CLASS MEMBERS, of principal and interest, which are due and owing to the Plaintiffs, and DEFENDANTS' have unjustifiably evaded payment of the bonds.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this court, of which the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff and Class Members MILLIONS of dollars and (ii) interest, and attorney fees, exemplary or punitive damages, costs of action.

## COUNT IV – FRAUD

## AGAINST COMMERZBANK AG & DEUTSCHE BUNDESBANK AND DEFENDANTS

145.    PLAINTIFFS, RICHARD BLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations as contained in the above referenced paragraphs 1-144, as if the same were set forth fully and at length herein.

146.     On or about, February 2006, Plaintiffs, by themselves, or through their representatives, made inquiries with BAFIN, the Federal Financial Supervisory Authority in Bonn, Germany, relative to redemption and payment of the German gold bonds, such as the Rheinelbe Union, and were informed by one of the employees who works at BAFIN, Mr. Stephan Neuburg, and he indicated and confirmed in his official capacity and/or within the scope of his employment, and/or agency, and/or authority for BAFIN, that he personally spoke with DEUTSCHE BUNDESBANK, and they confirmed to him that the DEUTSCHE BUNDESBANK was an appropriate partner for redemption and payment of the bonds, and the thing to do was to send the German gold bonds to the DEUTSCHE BUNDESBANK for applicable redemption and payment.

## FRAUD ALLEGATIONS AS TO DEUTSCHE BUNDESBANK

147.     On or about, February/March 2006, DEUTSCHE BUNDESBANK in Frankfurt, Germany, was contacted by Plaintiffs, by themselves, or through their representatives, in order to get the German gold bonds redeemed, such as Dawes, Young, or Rhein Elbe Union, or other legitimate bonds, and to obtain payment for the gold bearer bonds.

148.     On or about February/March 2006, officials, employees and/or representatives of the DEUTSCH BUNDESBANK, namely Dr. Schmidt and/or Mr. Gierenstein, acting within the scope of employment and/or agency and/or authority for the DEUTSCHE BUNDESBANK, with malice aforethought made intentional misrepresentations of material fact, verbally and/or in writing, by post letter, fax or email, and stated falsely, and/or misleadingly, and/or misrepresented as follows, and to the effect - THAT:

(A)     The Bonds are "WORTHLESS PAPER" and they "see no point in discussing the matter" of redemption of the bonds, and;

(B)     "Germany" and "Deutsche Bundesbank" have "NO responsibility for payment of the bonds", and;

(C)     "COMMERZBANK AG" was the entity that dealt with claims in connection with the bonds through a domestic "CONTACT OFFICE" in Frankfurt, but the office was "CLOSED" for redemption and payment of the Plaintiff or Class

Members gold bonds, and that DEUTSCHE BUNDESBANK therefore "COULD
NOT PROVIDE FURTHER INFORMATION OR NAME OF A CONTACT
PERSON", for redemption or payment of the bonds.

149.    The employees/officers/directors/agents of Deutsche Bundesbank knew the falsity
and/or misleading nature of their above-referenced statements.

150.    The officials, employees or representatives or directors of DEUTSCHE
BUNDESBANK, Dr. Schmidt and/or Mr. Gierenstein, with malice aforethought, acting
within their scope of employment, agency and/or authority for the Deutsche Bundesbank,
made the false, and/or misleading, and/or deceptive statements, knowingly, intending to
mislead by misrepresentations of material fact, or omissions thereof; when (a) they KNEW
that GERMANY had responsibility for the pre war debts on the bonds and wanted to hide
their liability; and (b) they KNEW that GERMANY had accepted its obligations for
payment of the bonds; (c) and they KNEW that GERMANY, and its relevant agency
GERMAN DEFENDANTS, such as the DEUTSCHE BUNDESBANK, in fact dealt with
claims in connection with redemption of bonds and had/have the responsibility to give
accurate information and obligations to pay for the legitimate bonds, (d) and they KNEW
that COMMERZBANK had an office for redemption and payment of bonds, that was still
open but withheld the information from the outset; (e) and they KNEW with whom, and
where, and how the Plaintiff/Class Members, could contact the right person at the
COMMERZBANK to get bonds redeemed or paid, but they misleadingly, deceptively, or
intentionally, failed to provide the accurate information.

151.    Further on or about February/March 2006, the officials, employees or
representatives or directors of DEUTSCHE BUNDESBANK, Dr. Schmidt and
Gierenstein, with malice aforethought, acting within their scope of employment, agency
and/or authority for the Deutsche Bundesbank, made false, and/or misleading statements,
and/or omissions, knowingly, negligently, or intentionally misrepresented to the effect that
the bonds have no value due to "INSUFFICIENT PROOF OF OWNERSHIP".

152.    The employees of Deutsche Bundesbank, know, or KNEW, of the Falsity or

Misleading nature of their misrepresentations, and they know, or KNEW, the German gold

bonds are BEARER BONDS, payable upon demand to the bearer, (regardless of "proof of

ownership" or irrespective of location of the "bonds in 1945"), and they know, or KNEW,

of the terms of the bearer bonds, required no proof of ownership.

153.    The employees of Deutsche Bundesbank, know, or KNEW, of the Falsity or

Misleading nature of their misrepresentations, and they know, or KNEW the bonds

contain  GOLD CLAUSE  payment terms of the bonds, which render them highly

valuable.  And they knew that the gold clauses was clearly set forth and was consistent

with the stated intentions expressed by all the parties to the bonds, and/or participating in

the bonds contracts.

154.    The misrepresentations or false and misleading statements or omissions made by

GERMANY, and/or its agent, DEUTSCHE BUNDESBANK, and/or any of its

employees, were maliciously designed to deceive, defraud and/or deprive the

PLAINTIFF/CLASS MEMBERS of their rights to payment, and to deny the bondholders

of any meaningful opportunity to present their legitimate claims.

155.    Further, the false statements or misrepresentations by Deutsche Bundesbank

and/or its employees, were intended to deceive, or had an effect of deceiving, the

bondholders, into deeming their bonds were "WORTHLESS", or into believing that the

bonds are worth less than what they actually are worth.  The misleading statements were

designed to discourage or prevent legitimate claims.

156.    The false or misleading statements or misrepresentations by DEUTSCHE

BUNDESBANK were to the detrimental reliance and injury of PLAINTIFFS, and/or

caused forfeiture of Plaintiff/Class Members' claims, and caused economic harm and

damages to Plaintiff or Class Members.

157.    And such false and misleading statements were also made for the benefit or unjust

enrichment of GERMANY and DEFENDANTS, and to secure an unconscionable

advantage for Germany and Defendants, and to cause Plaintiff or Class Members or

bondholders to forfeit their claims and/or deny claims.  And GERMANY and/or

DEUTSCHE BUNDESBANK are vicariously liable for the torts or misrepresentations or fraud or misleading statements or omissions of its employees or representatives or agents acting within the scope of employment and/or agency and/or authority for the DEUTSCHE BUNDESBANK and GERMANY.

### FRAUD ALLEGATIONS AS TO COMMERZBANK AG

158.     On or about March 2006, COMMERZBANK AG in Frankfurt, Germany, was contacted by Plaintiff or Class Members, by themselves, or through their representatives, or agents, relative to redemption of the bonds and payment of cash for the bonds.

159.     On or about March 2006, COMMERZBANK AG in Frankfurt Am Main, by its representatives and/or employees and/or agents or representative departments, including, but not limited to, Zentraler Service Bereich Transaction Banking, or the Zentraler Stab Recht, confirmed they function as an "Examining Agent" for the redemption and payment of the Plaintiff and/or Class Members gold bonds.  This was indicated or confirmed by Herman Stahl and/or Julius Kimmle who are employees of Commerzbank, acting within the scope of employment, and/or authority, and/or agency for COMMERZBANK AG.

160.     False or misleading or deceptive statements, with malice aforethought, were made by defendant COMMERZBANK AG, through its employees and/or representatives, responsible for redemption and payment of the bonds, who negligently, or recklessly, or intentionally, misled Plaintiff and Class Members, and who made misrepresentations of material facts, or omissions thereof, verbally, or in writing, by fax, letter, or email, relative to the redemption or "validation" scheme, as follows, and to the effect THAT:

      A.     "BONDS are "INVALID", and;

      B.     There is ""NO CHANCE" to get the bonds redeemed or "validated" and "NO CHANCE" to receive  payment, "EXCEPT", if you are "JEWISH", and prove "Where the bonds were in 1945" outside Germany.

161.     These misleading and/or false or deceptive statements were made by Julius Kimmle and/or Herman Stahl, in the scope of employment or authority for COMMERZBANK AG, when they KNEW, the falsity or misleading nature of their

statements, and/or knew they were misrepresentations of material fact, and they KNEW
the BEARER BONDS did NOT require the Bearer or Bondholder to be "JEWISH", and
they KNEW the terms of the BEARER BONDS themselves had NO requirement
whatsoever, that MANDATED the Bearer of the bond "to prove the bond's location in
1945", outside Germany, or to demonstrate a "chain of custody to 1945".

162.     COMMERZBANK AG is vicariously liable for the torts or intentional
misrepresentations or misleading statements or fraud of its employees or representatives or
agents, acting within the scope of employment, or authority, or agency for Commerzbank.
In addition COMMERZBANK AG is responsible for the actions or omissions of its
designated department for German gold bonds, and the "Examining Agents", making
fraudulent or misleading statements.

163.     The deceptive and false and misleading statements by COMMERZBANK AG
were to the detrimental reliance and injury to PLAINTIFF and/or CLASS MEMBERS,
and/or bondholders, and caused economic loss to Plaintiff and/or Class Members or
bondholders, and such fraud, misleading statements and misrepresentation of material fact
was perpetrated by COMMERZBANK AG, for its benefit and that of its co-conspirators,
DEFENDANTS, in order to diminish claims, or deter, or deprive bondholders' rights, or
prevent, or deny, or cause forfeiture of the PLAINTIFF or CLASS MEMBERS or
bondholders' claims; and/or to impermissibly alter payment conditions of the bonds, on an
arbitrary and/or capricious basis, so as NOT TO PAY on the bonds to bondholders, and/or
to unjustly enrich Defendants, and to secure for Commerzbank and Defendants an
unconscionable advantage.

164.     Based on the statements by DEUTSCHE BUNDESBANK'S representatives or
employees or officials; and the statements by COMMERZBANK AG employees,
officials, or representatives; and based on the declarations of bondholders, or CLASS
MEMBERS', who submitted bonds for "validation"; it is evident that GERMANY, and
the GERMAN redemption and/or paying agents, such as Bundesbank or Commerzbank,
had/have NO intention to pay for the Plaintiffs/Class Members' bonds.

165.    The "validation" scheme and redemption and payment process employed by

GERMANY and COMMERZBANK AG,  provides no source of due process, and no

source of fairness in treating the claims, and no source of legal relief, and no chance for

payment for Plaintiffs or legitimate bondholders, who submit claims, due to the unreliable

and fraudulent nature of the "validation" scheme in GERMANY, which can change at any

moment, according to the "Examiner" whim or caprice, in that:

a.    GERMANY and/or COMMERZBANK AG, as redemption and paying

agent for the bonds, have included and/or use bond redemption or payment criteria which

have absolutely nothing to do with the payment terms of the original Bearer Bonds sold

and payable in the United States; the BONDS require no "Proof of Ownership", or

"location of the bonds in 1945", or being "JEWISH".

b.    Some PLAINTIFFS or CLASS MEMBERS or bondholders, are in fact

JEWISH, and such legitimate JEWISH bondholders are entitled to redemption and

payment of their bonds by GERMANY, COMMERZBANK or the obligor

DEFENDANTS.  Similarly, some Plaintiffs/Class Members or bondholders, are in fact

NON-JEWISH, and have their own sets of beliefs, and such legitimate NON-JEWISH

bondholders, are also entitled to redemption and payment of their bonds by GERMANY,

or the paying agents, COMMERZBANK AG, and/or other obligor DEFENDANTS, in

accordance with the terms of the bonds.

c.    The religious background, or beliefs of a bondholder, as one of the

purported factors employed by DEFENDANTS, or GERMANY or the redemption and

paying agents, such as DEUTSCHE BUNDESBANK, or COMMERZBANK AG, for

redemption and payment of the bonds, is a religious and/or ethnic and/or cultural factor,

and is an unconstitutional and/or unlawful factor to utilize in the redemption or payment of

the German gold bonds, and it is not a relevant criterion, nor a condition precedent, for

payment of the bonds, which are Bearer Bonds.

166.   GERMANY, DEUTSCHE BUNDESBANK, COMMERZBANK and

DEFENDANTS have taken the position that they will NOT pay on the bonds, even if

bonds are legitimate and authenticated by experts, and they will never honor the Plaintiffs or Class Members' rights, or comply with their legal, equitable, fiduciary obligations, or the redemption and payment terms of the bonds, unless, ordered to do so by Court.

167.    PLAINTIFF attaches the Declaration of Ms. Elfriede Korber, a bondholder, who has hundreds of German gold dollar bonds, Young, Dawes, Rhienelbe, and others, and is a prospective CLASS MEMBER, who experienced the "validation process" in GERMANY and was falsely told her bonds would be redeemed, and she authenticated her bonds via expert, and she deposited her bonds at COMMERZBANK in Dusseldorf, according to the instructions given to her by German government agency, the DEUTSCHE BUNDESBANK.

168.    There was a Mr. Herlinger, with whom Ms. Korber was communicating, and she did what was requested of her to satisfy the "requirements" for "validation", and she was told that money would be paid to her, or her beneficiary's account in Commerzbank Dusseldorf.  But no monies were paid.  The statements made to her were false and they strung her along, and ultimately, the German government, and Commerzbank, for no legitimate reason, reneged on their statements, or promises, or agreements or obligations to redeem and pay her bonds, and she had no option but to demand the return of her bonds.

### FRAUD ALLEGATIONS AGAINST ALL DEFENDANTS

169.    PLAINTIFF or CLASS MEMBERS, by themselves, or through their representatives, successors, agents, or assigns, have demanded redemption with DEFENDANTS, the redemption and paying agents, and/or trustees, and/or guarantors, and/or selling brokers, and/or successors in interest, and/or parent or subsidiary companies, or principals or agents of the Defendants.  Plaintiffs have demanded payment from these parties responsible for payment of the bonds, but Defendants have refused to redeem or to pay cash for the bonds.

170.    PLAINTIFF or CLASS MEMBERS have stated fraud with particularity as to the DEFENDANTS, such as DEUTSCHE BUNDESBANK and COMMERZBANK, and while the general rule is that fraud must be pled with particularity as to each Defendant in

a multi-defendant case, under the circumstances, of the Conspiracy to Defraud by

DEFENDANTS, which is ongoing for many years, and the nature of this Class Action,

the PLAINTIFF and CLASS MEMBERS respectfully request the Court to recognize the

exceptions to the general rule, in that the application of the Rule, prior to discovery, may

permit sophisticated defrauders to successfully conceal the details of their fraud.

171.    Furthermore, to require Plaintiff or Class Members, to describe in the complaint,

the countless or untold instances of fraud or misleading statements with particularity, that

occurred relative to the myriad of bondholders who have contacted the Defendants, over

the years, would be an overwhelming task, given the large number of Bondholders in

America and worldwide, and the large number of CLASS MEMBERS, and the number

of DEFENDANTS, in the ongoing conspiracy to defraud bondholders, and would

require extensive and appropriate discovery.

172.    Accordingly, PLAINTIFF/CLASS MEMBERS, respectfully request the Court,

to the extent applicable and justifiable, to relax the normally rigorous particularity rule

relative to fraud, as the documents, evidence, facts are within the DEFENDANTS

exclusive knowledge and control; and DEFENDANTS are insiders, and/or collaborators,

or co-conspirators, or affiliated, or subsidiaries or parent companies, or alter egos, or

related entities, involved in the massive fraud to cause economic loss to Plaintiffs and

which has caused economic loss to Plaintiff/Class Members, and other victims, and the

breach of contracts, refusal to pay the bonds, and/or deprivation of rights, of the hundreds

and thousands of bondholders at issue.

173.    DEFENDANTS, acted to commit the wrongs, and negligence, and fraud, and the

breaches of contractual and fiduciary obligations complained of, and took part in the

conspiracy to defraud bondholders.

174.    DEFENDANTS' participation in the scheme to defraud, was done with active

involvement, and/or the knowledge of the fraudulent statements, actions or omissions of

the co-conspirators.

175.    DEFENDANTS acquiesced to, or aided and abetted, the fraud of their co-

Defendants, and have been unjustly enriched, and obtained an unconscionable advantage, by their acquiescence, and/or purposeful conduct, and default, or refusal to pay the bonds.

176.     As a direct and proximate result of COMMERZBANK'S and DEUTSCHE BUNDESBANK'S, and DEFENDANTS', fraud, or false or misleading statements or omissions of fact, were all to the detrimental reliance and injury and economic harm of PLAINTIFF and CLASS MEMBERS, who have suffered monetary and other damages.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this court, of which the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff and Class Members MILLIONS of dollars and (ii) interest, and attorney fees, exemplary or punitive damages, costs of action.

<u>**COUNT V**</u>

<u>**PIERCING THE CORPORATE VEIL/ALTER EGO
RESPONDEAT SUPERIOR OR PRINCIPAL/AGENT LIABILITY
AS TO ALL DEFENDANTS**</u>

177.     PLAINTIFFS, RICHARD BLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations as contained in the above referenced paragraphs 1-176, as if the same were set forth fully and at length herein.

178.     DEFENDANTS on their own, or jointly, acted through their alter egos, or subsidiaries, wholly owned, or affiliates, or divisions, or employees, or representatives, or agents or agencies, or other entities, which were responsible for redemption or payment of the bonds; AND which subsidiaries, affiliates, divisions, agencies or agents, employees, or entities that DEFENDANTS controlled, and/or dominated and/or had unity of interest, and/or had common ownership, or common name, or common directors or officers, or commingling of funds and assets, of the various entities, and/or were alter egos of each other; and/or were the DEFENDANTS' mere shells, conduits or

Instrumentalities, and/or that separate personalities did not really exist; through which DEFENDANTS acted to commit various torts, wrongs, or breaches of fiduciary duty or breaches of contract, or bad faith and/or defaults on payment of the bonds.

179.    These were entities through which DEFENDANTS acted to effect the fraudulent schemes and conspiracy, AND entities through which DEFENDANTS implemented deceit and/or caused harm and/or caused economic loss to victims, PLAINTIFF/CLASS MEMBERS, and bondholders, and it would inequitable to permit DEFENDANTS to avoid liability and effect fraud by use of conduits, instrumentalities, or fictitious forms.

180.    Under established agency law, and/or Respondeat Superior, and/or Piercing the Corporate Veil, and/or other appropriate legal principles of liability, or law, or public policy, the DEFENDANTS, and their subsidiaries, and/or affiliates, and/or divisions, and/or agents and/or principals, and/or parents and/or subsidiaries, and/or other combinations of DEFENDANTS are jointly and/or severally liable for the acts and omissions complained of, and for aiding and abetting each other, and PLAINTIFF and CLASS MEMBERS request the Court to apply equitable remedies where appropriate under the circumstances to prevent fraud and injustice.

181.    These wrongs, torts, frauds, misrepresentations, conspiracies, scheme to defraud, breaches of fiduciary duty, breaches of contract, or failure to pay the bonds, which caused economic loss and other harm to PLAINTIFF/CLASS MEMBERS, was done and executed at the direction of the DEFENDANTS, and/or their Related entities, and/or Defendants' majority shareholders, and accordingly, all are responsible for payment of the bonds, in order to prevent injustice, and to prevent fraud against the Plaintiff/Class Members, bondholders, and/or to prevent unjust enrichment of Defendants.

182.    DEFENDANTS employed manipulative and/or deceptive devices in a scheme to defraud PLAINTIFF/CLASS MEMBERS, and/or engaged in acts which operate/d as a fraud, and/or made untrue statements of material fact, and/or omitted statements of material fact so as make the statements not  misleading, in connection with the bonds, relative to validity and/or value and/or redemption procedure and/or payment criteria of

the bonds, and did so by negligent or unlawful means and/or by the use of any means or instrumentality of interstate commerce, or the mails or facilities of the national exchange in violation of the common laws and/or US Securities laws or international laws.

183.    To the extent that DEFENDANTS may try to limit their liability by means of fictitious forms, or ambiguous corporate structures or configurations, or other agents or entities, and to the extent that DEFENDANTS controlled the wrongdoers, the DEFENDANTS have control person liability, or vicarious liability, as they willfully and culpably participated in the fraudulent scheme, and controlled the primary violators, and/or acted in bad faith, and/or aided or abetted the fraud or breaches, and/or acted to induce the fraud or breaches, whether directly or indirectly, and/or had knowledge of the fraud or breaches, and did not prevent the wrongdoing.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this court, of which the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff and Class members MILLIONS of dollars and (ii) interest, and attorney fees, exemplary or punitive damages, costs of action.

## COUNT VI

## WRONGFUL EXPROPRIATION/TAKING OF PROPERTY AGAINST All DEFENDANTS

184.    Plaintiffs, RICHARDBLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one o f the allegations as contained the above referenced paragraphs 1-183, as if the same were set forth fully and at length herein.

185.    The aforesaid described conspiracy, unlawful and fraudulent acts and/or omissions of DEFENDANTS and GERMANY constituted a wrongful expropriation and/or taking of Plaintiffs RICHARD BLEIER, CLASS MEMBERS', rights, interests, property, and specifically THE BONDS, or their rights to payments for the BONDS, which are the subject of this claim.

186. The aforementioned conspiracy, fraudulent acts or omissions and wrongful expropriation and/or takings involved GERMANY's and/or DEFENDANTS':

*a*. transportation, shipment, confiscation, taking and/or other acts related to THE BONDS in the United States, or other actions which had an effect on Plaintiff and Class Members rights and/or property in the US, or the securities market in the US, or took other actions which had a direct effect on similar rights and/or commercial market in the US as those are defined by 28 *U.S.C.A.* § *1605 (a) (2 );*

*b*. deprivation and/or adversely affecting Plaintiff BLEIER and the Members of the Plaintiff Class', property and rights in the BONDS and/or property that had been exchanged for property in the US, all of which were taken related to the commercial securities market and activities related, those are defined by 28 *USCA* § *1605 (a) (3);*

*c*. wrongful expropriation and/or taking Plaintiffs or the Class Members of the Plaintiff Class' property in the US and elsewhere in the world, THE BONDS, which is/are in the custody, possession, control and/or are/were being stored in DEFENDANTS' possession, and all of which is and was in violation of international law as those acts are defined by *28 USCA* § *1605 (a) (3);* and

*d*. damage to and/or loss of Plaintiff or Class Members property or rights in the US, and these damages and/or losses were caused by breaches or tortious and/or wrongful act(s) or omission(s) of DEFENDANTS, and/or ministry officials, employees, agents and or representatives of DEFENDANTS and/or one of its ministries, departments, organs and/or agencies and while they were acting within the scope of their office or

employment as those are defined by 28 *U.S. C.A. Sec.1605 (a) (5).*

187.    As a direct result of GERMANY/DEFENDANTS aforesaid conspiracy, wrongful

acts, omissions and/or wrongful expropriations and/or takings, Plaintiff and Class Members have

suffered monetary and other damages.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury

trial, damages and judgment against Defendants jointly and/or severally for (i)

compensatory damages, which meet the jurisdictional requirements of this court, of which

the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact

which should be permitted to award Plaintiff and Class Members MILLIONS of dollars

and (ii) interest, and attorney fees, exemplary or punitive damages, and costs of this action.

## COUNT VII
## CONSPIRACY TO DEFRAUD
### Against All Defendants

188.    Plaintiffs RICHARD BLEIER and CLASS MEMBERS repeat, reallege and

incorporate each and every one of the allegations of the foregoing paragraphs herein, 1

through 187, as if the same were set forth fully, and at length, herein.

189.    The aforesaid acts or omissions DEFENDANTS were part of a

scheme to defraud and conspiracy designed to dispossess and deprive the

rightful owners or bearers of bonds, including Plaintiff/Class Members of their

property, their bonds, and the rights and interests therein; and to cause the

prevention, diminution, deferral, denial and/or forfeiture of legitimate bondholders'

claims, and to deprive Plaintiff/Class Members of payment for their bonds.

190.    The aforesaid fraud and other acts directed at Plaintiffs and bondholders

and class members were motivated by DEFENDANTS and GERMANY's desire

to avoid its multi-billion US dollar obligation, for payment to bondholders.

191.    The aforesaid conspiracy, fraud and other acts by DEFENDANTS and

GERMANY were wrongful.  The aforesaid conspiracy, fraud and other acts were in violation of applicable laws and regulations governing DEFENDANTS' and GERMANY's conduct, actions and obligations related to Plaintiffs and bondholders property and rights, THE BONDS and marketable securities.

192.    As a direct and proximate result of DEFENDANTS and GERMANY's aforesaid conspiracy, fraud and other wrongful acts, Plaintiffs and Class Members have suffered monetary and other damages.

**WHEREFORE** Plaintiffs RICHARD BLEIER, and CLASS MEMBERS, demand a jury trial, damages and judgment against Defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this court, of which the Plaintiff/Class Members shall leave to the determination of the ultimate trier of fact which should be permitted to award Plaintiff and Class Members MILLIONS of dollars and (ii) interest, and attorney fees, exemplary or punitive damages, and costs of this action.

<u>COUNT VIII</u>

<u>NEGLIGENCE and/or NEGLIGENT SUPERVISION</u>

<u>Against All Defendants</u>

193.    Plaintiffs RICHARD BLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations of the foregoing paragraphs 1 through 192, as if the same were  fully set forth and at length herein.

194.    GERMANY and DEFENDANTS had an obligation to exercise diligence with regard to identification, validation, redemption and/or payment for Plaintiff RICHARD BLEIER and the CLASS MEMBERS, bondholders, of the Plaintiff/Class Members' property, THE BONDS.

195.    GERMANY and DEFENDANTS had an obligation to supervise their agents, employees, representatives and/or all persons acting within their actual and/or apparent authority or scope of

employment so as to insure that such persons, acted properly, and lawfully, and with due

diligence, so as not to allow them to make the improper statements and/or commit unlawful or

fraudulent acts as alleged herein, with regard to validation, redemption and/or payment for

Plaintiffs and the Class Members bondholders, Plaintiff/Class Members' property, the BONDS.

196.    GERMANY and DEFENDANTS were negligent in their obligation to honor the

aforesaid duties.

197.    As a direct and proximate result of GERMANY's and DEFENDANTS negligence

and/or failure to properly control and/or supervise the individuals, persons and/or entities for

redemption or payment of the bonds;  and as a direct and proximate result of GERMANY's and

DEFENDANTS negligence and/or failure to properly institute and administer fair and lawful

procedures for redemption and payment of the bonds of Plaintiff and Class Members,

bondholders, Plaintiff and the members of the Plaintiff Class and bondholders have suffered

monetary and other damages.

**WHEREFORE**, Plaintiffs BLEIER, and CLASS MEMBERS, demand a jury trial, damages

and judgment against DEFENDANTS, jointly and/or severally for (i) compensatory damages

which meet jurisdictional requirements of this court,  and  plaintiff shall leave to the

determination of the ultimate trier of fact which should be permitted to award plaintiff and class

members in the MILLIONS OF DOLLARS and (ii) interest, attorneys' fees, punitive and/or

exemplary damages, and costs of this action.

## COUNT IX
## UNJUST ENRICHMENT
### Against All Defendants

198.    Plaintiffs, RICHARD BLEIER and CLASS MEMBERS,  repeat,  reallege and

incorporate each and every one of the allegations of the foregoing paragraphs 1

through 197, as if the same were set forth fully and at length herein.

199.     By the aforesaid acts, inactions, negligent, fraudulent, wrongful, unlawful,

and/or other improper acts, GERMANY and DEFENDANTS,  have been and/or are

being unjustly enriched by seizure, expropriation, taking, retention, withholding and/or

failing to pay Plaintiffs and Class Members for THE BONDS.

200.     GERMANY and DEFENDANTS have been unjustly enriched from

revenues, profits, and/or other benefits, including but not limited to, retention of

bondholders monies or property, preferred interest rates and/or ratings for securities

sold in the US and which revenues, profits and/or benefits are directly related to or the

result of GERMANY or DEFENDANTS' increased market capitalization and assets

predicated upon GERMANY' and DEFENDANTS' failure to pay Plaintiff/Class

Members and bondholders, and DEFENDANTS' failure to redeem the bonds and failure

to provide the cash payments to the Plaintiff and Class Members of the Plaintiff Class,

and bondholders, for their property, THE BONDS.

201.     DEFENDANTS' received monies as a result of PLAINTIFF'S and CLASS

MEMBERS' purchases of the BONDS, and DEFENDANTS wrongfully accepted

and retained these benefits to the detriment of PLAINTIFF and CLASS

MEMBERS.

202.     DEFENDANTS' enrichment at the expense of PLAINTIFF and CLASS

MEMBERS was unjust.

203.     As a direct and proximate result of GERMANY'S and DEFENDANTS' wrongful

conduct and aforesaid unjust enrichment, Class Members' and Plaintiff's property rights

and interests, have been adversely affected, and Plaintiff and Class Members and

have suffered monetary and other damages.

204.     As a result of DEFENDANTS' wrongful conduct, PLAINTIFF and CLASS

MEMBERS are entitled to restitution from and institution of a constructive trust,

disgorging all profits, benefits, and other compensation obtained by

DEFENDANTS.

**WHEREFORE** Plaintiffs BLEIER, and CLASS MEMBERS, demand a jury trial, damages

and judgment against DEFENDANTS jointly and/or severally for (i) compensatory damages

which meet jurisdictional requirements of this court, and which the plaintiff and class members

shall leave to the determination of the ultimate trier of fact which should be permitted to award

Plaintiff/Class Members in the MILLIONS OF DOLLARS and (ii) restitution from and

institution of a constructive trust, disgorging all profits, benefits, and other compensation

obtained by Defendants, attorney's fees, interest, exemplary damages, and costs of this action.

## COUNT X

### EQUITABLE DISGORGEMENT
### Against All Defendants

205.     Plaintiffs RICHARD BLEIER and CLASS MEMBERS repeat, reallege and

incorporate each and every one of the allegations of the foregoing paragraphs 1 through

204, as if same were fully set forth and at length herein.

206.      The aforesaid actions and/or inactions of GERMANY and

DEFENDANTS was unjust, improper, wrongful, negligent and/or in violation of

applicable laws, treaties, conventions, customs, regulations and standards.

207.     GERMANY'S and DEFENDANTS' unjust enrichment from the aforesaid

actions, inactions, breaches, fraud and conspiracy, is unjust, improper, inequitable,

wrongful, negligent and/or unlawful.

208.     As a direct and proximate result of GERMANY's and DEFENDANTS'

unlawful acts or omissions, and unjust enrichment, Plaintiff's and/or Class Members'

property, rights to payment, and/or interests, relative to the BONDS have been adversely

affected, and Plaintiff and Class Members have suffered monetary and other damages.

209.    As a direct and proximate result of DEFENDANTS' misconduct, PLAINTIFF and CLASS MEMBERS are entitled to restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation obtained by DEFENDANTS.

**WHEREFORE**, PLAINTIFF/CLASS MEMBERS, demand a jury trial, and damages and judgment against defendants jointly and/or severally for (i) compensatory damages which meet the jurisdictional requirements of this Court, and which the Plaintiffs/Class Members shall leave to the determination of the ultimate trier of fact, which should be permitted to award Plaintiffs /Class Members in the MILLIONS OF DOLLARS, equal to their unjust enrichment, and (ii) restitution from and institution of a constructive trust, disgorging all profits, benefits,  other compensation obtained by Defendants, and (iii) interest, attorneys' fees, exemplary or punitive damages, and costs of this action.

## COUNT XI

### IMPOSITION OF CONSTRUCTIVE TRUST
### Against All Defendants

210.    Plaintiffs RICHARD BLEIER/CLASS MEMBERS repeat and reallege and incorporate every one of the allegations of the foregoing paragraphs 1 through 209, as if the same were set forth fully and at length herein.

211.   GERMANY and DEFENDANTS knew and/or had reasonable basis to conclude that they were NOT permitted to engage in the above transactions.

212.    GERMANY and DEFENDANTS seized, took, expropriated, received, stored, deprived of payment, and/or otherwise took actions against Plaintiffs/Class Members' Property, including THE BONDS.

213.    As a result of The Scheme to Defraud GERMANY and DEFENDANTS acquired actual and/or constructive possession and/or title to Plaintiff or Class Members

monies', or property, THE BONDS.

214.    The estimated and/or approximate real value of Plaintiff/Class Members property and/or monies, and THE BONDS, that GERMANY and DEFENDANTS seized, took, expropriated, received, froze and/or refused redemption or payment of, and/or adversely affected, is in MILLIONS OF DOLLARS.

215.    GERMANY and DEFENDANTS knew, should have known and/or could have through the exercise of reasonable diligence determined that the Plaintiffs and Class Members as bondholders had superior rights, title and interest in THE BONDS and that GERMANY and DEFENDANTS could not take, or acquire them, or deny them without paying for same.

**WHEREFORE**, Plaintiffs BLEIER and CLASS MEMBERS, the bondholders, demand a jury trial, judgment and damages against the defendants jointly and/or severally and/or in the alternative for: (i) the imposition of a constructive trust upon and/or concerning an amount of DEFENDANTS assets in the United States, or worldwide, equal the value of the PLAINTIFFS/CLASS MEMBERS, property, the BONDS, the value of which Plaintiff and Class Members leave to the determination of the ultimate trier of fact, which should be permitted to award Plaintiffs/Class members collectively MILLIONS OF DOLLARS and (ii) restitution, and disgorging all profits, benefits, and compensation received by Defendants, (iii) interest, attorneys' fees, and exemplary or punitive damages, and/or costs of this action.

## COUNT XII

## CONVERSION
### Against All Defendants

216.    Plaintiffs BLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations of the foregoing paragraphs 1 through 215, as if same were set forth fully and at length herein.

217.   DEFENDANTS schemed to defraud, Plaintiffs BLEIER and Class Members, out of monies, and/or property, specifically the BONDS, and/or money payments for the bonds. Defendants conversion of Plaintiffs/Class Members' property, THE BONDS, was wrongful, and in violation of international and all applicable laws.

218.   As a direct and proximate result of GERMANY's and DEFENDANTS conversion of the bonds/property, Plaintiff and Class Members, suffered substantial and ongoing monetary damages.

**WHEREFORE**, PLAINTIFF/CLASS MEMBERS demand jury trial, damages and judgment against defendants jointly and/or severally for (i) compensatory damages, which meet the jurisdictional requirements of this Court and which the plaintiffs/class members shall leave to the determination of the ultimate trier of fact, which should be permitted to award plaintiff or class members MILLIONS OF DOLLARS, and (ii) interest, exemplary damages, attorneys' fees, and costs of this action.

## COUNT XIII

### ACCOUNTING
### Against All Defendants

219.   Plaintiffs BLEIER/CLASS MEMBERS repeat, reallege and incorporate each of the allegations of the foregoing paragraphs 1-218, as if the same were set forth fully and at length herein.

220.   Through the Scheme, Defendants converted and/or participated in the conversion of the Plaintiffs and Class Members property, specifically THE BONDS.

222.   DEFENDANTS conversion of PLAINTIFF and/or CLASS MEMBERS' property, THE BONDS, was wrongful, in violation of international and all applicable laws.

223.   As a direct and proximate result of DEFENDANTS conversion of property, Plaintiffs BLEIER and CLASS MEMBERS, suffered substantial and ongoing monetary and other damages.

**WHEREFORE,** Plaintiffs BLEIER and CLASS MEMBERS, demand a jury trial and damages and judgment against defendants jointly and/or severally for: (i) an Accounting by Defendants, of all the profits they made and/or assets and/or monies they retained of Plaintiff/Class Members, or bondholders, and (ii) interest, attorneys' fees, exemplary damages, and costs of this action.

## COUNT XIV

## SPOLIATION OF EVIDENCE

### Against All Defendants

224.     Plaintiff BLEIER/CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations of the foregoing paragraphs 1 through 223 as if the same were set forth fully and at length herein.

225.     DEFENDANTS concealed and/or withheld and/or destroyed documents that could show obligations to PLAINTIFF BLEIER and CLASS MEMBERS, related to THE BONDS.

226.     DEFENDANTS desire to destroy, conceal and/or withhold such documents, and this is primarily designed to protect their interests and fees, and the DEFENDANTS also wish to keep secret their liability, involvement in, and profiteering from THE BONDS.

227.     DEFENDANTS also wish to frustrate Plaintiff BLEIER and CLASS MEMBERS, ability to ever pursue DEFENDANTS in a United States Court. DEFENDANTS have received unfair advantage because of the destruction, concealment and/or withholding of documents.

228.     As a direct and proximate result of DEFENDANTS' aforesaid actions to destroy, conceal and/or withhold documents, Plaintiff BLEIER and CLASS MEMBERS, suffered monetary and other damages.

**WHEREFORE,** Plaintiffs BLEIER and CLASS MEMBERS, demand a jury trial,

damages and judgment against Defendants jointly and/or severally for (i) compensatory

damage which the Plaintiff/Class Members 1eave to the determination of the ultimate trier

of fact, which should be permitted to award PLAINTIFF/CLASS MEMBERS, in the

MILLIONS of DOLLARS and (ii) interest, attorneys' fees, exemplary and punitive

damages, and costs of this action.

### COUNT XV

### PRESERVATION *I* PRODUCTION OF DOCUMENTS
### Against All DEFENDANTS

229.        Plaintiffs BLEIER/CLASS MEMBERS repeat, reallege, and incorporate

each and every one of the allegations of the foregoing paragraphs 1 through 228 as if the

same were set forth fully and at length herein.

230.        Plaintiffs BLEIER and CLASS MEMBERS have causes of action against

GERMANY and DEFENDANTS, and/or others for (i) default and failure to pay the agreed

upon amount for THE BONDS pursuant to the terms of the bonds, (ii) conspiracy to defraud

plaintiff and class members and bondholders, related to THE BONDS and (iii) other possible

actions, breaches of contracts or breaches of fiduciary duties, damages and/or injuries to them

involving THE BONDS.

231.        Plaintiffs BLEIER and CLASS MEMBERS and bondholders believe that each

of the DEFENDANTS is in possession of documents related to the aforesaid claims.

232.        Plaintiffs BLEIER and CLASS MEMBERS and bondholders

believes that each of the DEFENDANTS, in the normal course of their

respective business should maintain documents related to the aforesaid

claims.

233.        Plaintiff BLEIER/CLASS MEMBERS and bondholders believe that in the

normal course of business DEFENDANTS should maintain documents during the

relevant period to THE BONDS, including but not limited to:

a. *"THE BLACK LIST" of black listed bonds, and all documents related to its creation, modifications, amendments, updates and/or decisions by Defendants NOT to allow THE BLACK LIST to be produced in the United States or the Federal courts* - which is/are the basis upon which DEFENDANTS committed all or part of the Scheme to Defraud;

b. *"THE CORE LOAN DOCUMENTS"* which formed the entire obligations, terms and conditions of THE GENERAL CONTRACT, and obligations, terms and conditions of the BONDS', including but not limited to:

    I.     THE INDENTURE/S

    II.    THE MORTGAGE/S

    III.   THE TRUSTEE AGREEMENT/S

c. ACCOUNTING OF ALL PAYMENTS FOR BONDS PURCHASED UP TO AND INCLUDING 1945;

d. PAYMENTS FOR BONDS ALLEGEDLY EXCHANGED after the London Debt Agreement 1953;

e. DEFENDANTS', or other entities, NOTIFICATIONS TO INTERNATIONAL POLICE, LAW ENFORCEMENT, SECURITIES AUTHORITIES that they should NOT permit the redemption of ANY BONDS that were NOT exchanged in accordance the London Debt Agreement 1953 and should consider all persons attempting to redeem bonds, or trade, collateralize, use bonds to enhance balance sheets, and/or otherwise to use such Bonds as illicit or prohibited or against the law.

    *f.*    DOCUMENTS related to DEFENDANTS involvement with any investigation, prosecutions, litigations, lawsuits, incarceration and/or seizure of any Gold Bonds, related to:

1. Giulio Bissiri - in Germany, Luxembourg, or Italy, 1990's & 2000's;

2. Richard Carson - in London or California in the 1990's

3. Ronnie Fulwood - in Florida or South Carolina in the 1990s;

4. Hans-Georg Glassman - in Germany in the 2000's;

5. The Integrated Equities Case - in New Jersey in the 1990's;

6. Stephan Kaiser - in Germany in the 2000's;

7. James W. Korth - in Miami in the 1990's;

    Ron Stockdale - in Canada in the 1980's;

8. The TEPLIN Case – Miami or New York and/or Maryland in the 1980's/1990's;

9. Jeffrey Weston - in New Jersey in the 1990s; or

10. James Grizzard, Edward Fagan, German Gold Bondholders Redemption Group LLC, in Florida or New York cases 2006

11. Any other cases, dates, persons, in USA, or worldwide

234.    The Plaintiff and Class Members enumerate the documents above because they are necessary to establish, among other things, A) who or which additional parties should be named as defendants, and/or B) what other causes of action are applicable, and/or C) what are the relevant Federal statutes, if any, upon which additional claims may be based, and/or D) what is applicable statute of limitations

for causes of actions, and/or E) what including potential exemplary, treble and/or punitive damages, and what injunctive relief if any, may be requested.

235.    DEFENDANTS are, should be, were and/or should have been in possession of the documents enumerated above, and Plaintiffs BLEIER/CLASS MEMBERS will certainly involve one or more of the instant DEFENDANTS, and other parties whose identities are not presently known, to Plaintiffs BLEIER and CLASS MEMBERS, and bondholders, and which/who can only be discovered through access to the requested documents and/or other documents within the possession, custody or control of DEFENDANTS.

236.    Plaintiff BLEIER and CLASS MEMBERS have reason to believe that Defendants have the requested and necessary documents in their possession, custody and/or control.  DEFENDANTS are obligated by law to maintain the documents that will support Plaintiff BLEIER's and CLASS MEMBERS claims, related to bonds.

237.    By virtue of possession of THE BONDS, Plaintiffs BLEIER/CLASS MEMBERS believe that potential claimants and/or bondholders may also have been the victim of fraud, conspiracy or other wrongful acts, involving and affecting interstate and/or foreign commerce and may not know it.

238.    Plaintiffs BLEIER/CLASS MEMBERS believe that DEFENDANTS are wrongfully, improperly and/or negligently destroying, concealing and/or withholding the documents enumerated above, so as to minimize their individual and collective exposure for actions, including but not limited to Fraud and/or Conspiracy to commit fraud, including but not limited to:

   a.   Wrongful Conversion and/or Misappropriation;

   b.   Racketeering;

   c.   Mail and wire fraud;

   d.   Transportation and sales of securities and/or commercial instruments, which commercial activity occurred in the US and caused direct affect

in the United States, in violation of 28 *U.S.C.* § *1605 (a) (2);*

e.  Wrongful expropriation/taking in violation of International Law of property or bonds belonging to PLAINTIFF and CLASS MEMBERS and bondholders, and/or Plaintiff's and Class Members' predecessors or successors in interest, or representatives, which property was located in the US and elsewhere, in violation of 28 *U.S.CA.* § *1605 (a) (3);*

f.  Causing loss/damage to property belonging to and/or Plaintiffs' and/or class members' Predecessor's in interest, which property was located in the US and elsewhere, in violation of **28** *US. CA.* § *1605 (a) (5);*

g.  Violation of National Stolen Property Act of 1994; and

h.  Violations of the l899 and1907 Hague Conventions, and the European Convention on Human Rights, Other Treaties, and *Jus Cogens.*

239.     Plaintiff BLEIER and CLASS MEMBERS believe that the damage claims - based on reliable third party estimates of the number of outstanding bonds and their face value runs into the MILLIONS OF DOLLARS.

240.     Plaintiff BLEIER/CLASS MEMBERS and/or their representatives, predecessors, and/or other bondholders, with similar Bond claims, have made demands for the documents from Defendants.

241.     Prior demands by others for the documents from defendants were rejected.

242.     Without production of the documents, Plaintiff and Class Members believe that claims will be adversely prejudiced relative to required specificity, and especially those required when pleading fraud, conspiracy, racketeering, securities violations, violations of the National Stolen Property Act, and/or other similar claims.

   **WHEREFORE**, Plaintiffs BLEIER and CLASS MEMBERS, demand jury trial and damages and judgment against DEFENDANTS jointly and/or severally, and

request (i) Production of Documents and Preservation of Documents, and (ii) all applicable damages, interest, attorneys' fees, and costs of this action.

## COUNT XVI

### DAMAGES FROM REFUSAL, DELAY and/or INTERFERENCE WITH PRODUCTION OF DOCUMENTS Against All Defendants

243.   PLAINTIFF BLEIER and CLASS MEMBERS repeat, reallege, and incorporate each and every one of the allegations of the foregoing paragraphs 1 through 242 as if the same were set forth fully and at length herein.

244.   PLAINTIFF or CLASS MEMBERS have made requests for redemption and payment of bonds, and demands for information and documents, and proper redemption procedures.

244.   PLAINTIFF or CLASS MEMBERS were unable to secure the production of documents or appropriate information from Defendants.

245.   PLAINTIFF and CLASS MEMBERS reasonably believe that one or more DEFENDANTS will continue to delay, refuse and/or object to the production of documents, which are needed to properly make, plead, and prove the claims related to the bonds. Each and every delay, refusal and/or objection to the production of the enumerated documents is designed to cause Plaintiff and Class Members to suffer, incur and/or sustain further damages.

WHEREFORE, Plaintiffs BLEIER, and CLASS MEMBERS, demand and prays for judgment be entered against such of the Defendants, jointly and/or severally, who delay, refuse and/or interfere with the production of the necessary documents, for damages, actual and/or punitive, as well as the imposition of attorney's fees and costs.

## COUNT XVII

### BREACH OF CONTRACT
### BREACH OF EXPRESS CONTRACT AND
### BREACH OF IMPLIED CONTRACT
### Against All Defendants

246.     PLAINTIFFS, Richard Bleier and Class Members, repeat and reallege and incorporate the preceding allegations and prior paragraphs 1 to 245, as if fully set forth and integrated herein.

247.     The German gold bonds are BEARER instruments, BONDS that entitle the holders to payment upon demand.

248.     GERMANY and DEFENDANTS had/have EXPRESS contractual obligations; and liability to redeem and pay for the bonds, and Defendants had/have express contractual obligations to pay for the gold bearer bonds to the Bearers or holders of the bonds, such as PLAINTIFF and CLASS MEMBERS, for the bonds.  DEFENDANTS are obligated to pay the Plaintiffs, in times of war or peace, pursuant to the express terms of the original bonds.

249.     The General bond contracts, and the Terms of the Bonds, and the Actions and Intentions of Defendants, and conduct or relationships between the parties, created special duties and relationships, and fiduciary duties, and obligations of trust, good faith, and fair dealing, and DEFENDANTS as Trustees, as Obligors, or Guarantors, or Selling Brokers, or Redemption or Paying Agents, on the bonds, or successors thereof, had/have fiduciary duties and DEFENDANTS were entrusted with PLAINTIFF/CLASS MEMBERS' monies, savings, or investments, and Defendants are obligated to redeem and pay bondholders.

250.     GERMANY and DEFENDANTS also had/have IMPLIED contractual obligations to pay bondholders; and the express and implied contracts also create IMPLIED duties of Good Faith and Fair Dealing, and establish liability on

Defendants to redeem and pay for the gold bearer bonds to the holders of the

bonds, such as PLAINTIFF and CLASS MEMBERS, which were issued and sold

in the United States, or elsewhere, to Plaintiffs/Class Members, and who as

investors and/or buyers of bonds, reasonably expected a return on their financial

investments and patience.  DEFENDANTS benefitted substantially from the sale

of the bonds, and from monies received from Plaintiff/Class Members' purchases,

funds or finance, and for which DEFENDANTS are obligated to redeem and pay

the Plaintiff/Class Members' bonds, pursuant to the terms of the bonds.

251.    Further DEFENDANTS have contractual obligations and liability to pay for

the bonds, pursuant to the Core Loan Documents, and/or Trustee Agreements,

and/or Indentures, and/or Mortgages, and/or other Documents relative to the issue

of the bonds, and/or DEFENDANTS' express, or implied, Guarantees for

payment for the bonds.

252.    Further DEFENDANTS are obligated to pay for the bonds, pursuant to the

BONDS and their Express Contracts, and terms and conditions, and pursuant to

the Defendants' Express Conduct, or Defendants' Express Agreements and

Defendants' Express Stated intentions, such as GERMANY'S stated intention to

pay for the bonds and desire to "end the status of default".

253.    DEFENDANTS are also liable for payment of the bonds pursuant to the

Defendants' Assumed or Stated Intentions, and/or special or fiduciary

Relationships, and/or the application of Equity, under the basis of Implied

Contracts - where Defendants have knowingly accepted benefits or monies from

Plaintiff/Class Members, bondholders and accepted the investments and monies,

under circumstances where the monies paid and investments made by

PLAINTIFF and CLASS MEMBERS cannot be considered a gift,  and having

accepted the benefits, DEFENDANTS are liable to make payment on the bonds, of principal and interest, as "quasi contract", and the payment is accordingly due and owing to Plaintiff/Class Members

254.  DEFENDANTS are liable for the outstanding and unpaid principal and interest under the PLAINTIFFS and CLASS MEMBERS' Bonds.

255.  DEFENDANTS have breached their contractual obligations (both express and/or implied) and have not redeemed and have not paid for the bonds upon maturity and/or upon demand for redemption and payment by Plaintiff/Class members, bondholders, and DEFENDANTS continue to refuse to pay to PLAINTIFF/CLASS MEMBERS and bondholders, for the bonds, according to the terms and conditions of the bonds.

256.  DEFENDANTS offered the bonds for sale in the American market, and accepted their duties and obligations to pay when they sold the bonds and received monies and benefits from the sale of the bonds to the American investors, and by failing to pay for the bonds when due and owing, have gained undue and unconscionable advantages, and have been unjustly enriched and kept monies and benefits at the expense of the PLAINTIFF/CLASS MEMBERS and bondholders.

257.  GERMANY and DEFENDANTS have also Guaranteed and/or Succeeded and/or Assumed and/or Agreed to pay for the BONDS, and/or DEFENDANTS are Trustees, and/or Redemption and Paying Agents, for payment of the outstanding unpaid obligations under the bonds, and/or are DEFENDANTS are bound by the original terms of the bonds and obligations under the bonds.

258.  The bonds had a 20 year term (e.g. Rheinelbe Union) and interest coupons providing for interest at the rate of 7% per annum on June and December from

January 1926 to 1946.  Both principal and interest payable United States.

259.     The bonds had different interest rates, Examples: the Young Bonds had 5.5% interest rate (Issued 1930 due 1965) and the Dawes Bond had 7% interest rate (issued 1924 due 1949),  and United Steel Works Corporation had 6.5% interest rate (issued 1927 due 1947),  and Free State of Bavaria had 6.5% interest (issued 1925 due 1945).

260.     The bonds have not been cancelled, perforated, voided, or otherwise modified, and are genuine.  Each bond has a $1,000 face value amount, under the Gold Clause in each bond, represents the equivalent value in gold coin of the United States existing at the time.  Interest amounts are payable in the equivalent value in gold coin of the United States existing at the time.

261.     The total outstanding and unpaid principal and/or interest is currently estimated for each bond is $2,000,000 USD (Two million USD), and continues to increase with the price of gold, and the calculation of compound interest, and default interest, and the gold clause payment terms and other relevant factors.

262.     Through its actions and agreements, GERMANY and DEFENDANTS, have repeatedly tolled and revived the applicable statute of limitations for enforcing the bonds.  These actions and agreements include but not limited to DEFENDANTS' statements as recently as 1994, acknowledging and confirming the DEFENDANTS payment obligations renewing the Twenty year statute of limitations at least till 2014.

263.     The DEFENDANTS have breached their contractual obligations (express and/or implied) by failing to pay the PLAINTIFF and CLASS MEMBERS according to the original terms of the bonds, which are due and unpaid, and are in breach and default, and Defendants have refused to pay upon demand.

264.     Pursuant to the UNIFORM COMMERCIAL CODE, a bona fide purchaser in good faith, or successor thereof, may take delivery of a BEARER instrument and enforce his/her rights and obtain redemption and payment of the bonds (irrespective of where the bond was located in 1945 or religious background of the bondholder). And the DEFENDANTS are required to honor the payment obligations pursuant to the terms of the bearer bonds and intentions of the parties.

265.     As a direct and proximate cause of the DEFENDANTS' breach of contract (both express contract and/or implied contract) and DEFENDANTS' breach of the express or implied covenants of good faith and fair dealing, and the DEFENDANTS' the failure to pay for the bonds, and the DEFENDANTS continuing default, PLAINTIFF AND CLASS MEMBERS have suffered monetary and other damages.

**WHEREFORE,** Plaintiff and Class Members, demand jury trial, damages, and judgment against Defendants, jointly and/or severally for (i) compensatory damage which the plaintiff and class members shall leave to determination of the trier of fact which should be permitted to award PLAINTIFF/CLASS MEMBERS in the MILLIONS of DOLLARS and (ii) interest, attorneys' fees, exemplary and punitive damages, and costs of action.

### COUNT XVIII

### BREACH OF FIDICIARY DUTY AND BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING
#### Against All Defendants

266.     Plaintiffs RICHARD BLEIER/CLASS MEMBERS repeat and reallege and incorporate the prior paragraphs 1 to 265, as if fully set forth herein. The German gold bonds are BEARER instruments, BONDS that entitle the holder to payment upon demand.

267.     DEFENDANTS had a fiduciary relationship, and fiduciary duty towards

PLAINTIFF/CLASS MEMBERS and bondholders, who reposed trust and confidence in DEFENDANTS who had superior knowledge and skill in these affairs, and PLAINTIFF/CLASS MEMBERS relied in good faith on DEFENDANTS to do all that is necessary at all times to protect the rights and interests and investments as bondholders.

268.    DEFENDANTS breached their fiduciary duties and did not act in the best interests of bondholders and failed to honor their obligations and failed to honor the contractual terms of the bonds.

269.    DEFENDANTS further had an express or implied obligation of good faith and fair dealing relative to the bondholders and PLAINTIFF/CLASS MEMBERS, and to do the utmost to be fair and to redeem the bonds promptly and fairly and to pay bondholders according to the express terms of the bonds.

270.    DEFENDANTS breached their express or implied obligations of good faith and fair dealing and did not provide any fair or just or meaningful redemption process and/or did not provide any payment of the bonds of Plaintiff/Class Members or Bondholders.

271.    As a direct and proximate cause of the DEFENDANTS' Breach of Fiduciary Duties and Breach of Covenants of Good Faith and Fair Dealing, and DEFENDANTS' failure to redeem and pay for the bonds, and the DEFENDANTS ongoing bad faith, and scheme to defraud, PLAINTIFF/CLASS MEMBERS, and bondholders, have suffered monetary and other damages.

**WHEREFORE,** Plaintiff BLEIER and Class Members, demand a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damage which the plaintiff and class members shall leave to determination of the trier of fact which should be permitted to award PLAINTIFF/CLASS MEMBERS, in the

MILLIONS of DOLLARS and (ii) interest, attorneys' fees, exemplary and punitive

damages, and costs of action.

## COUNT XIX

### CLAIM FOR DAMAGES DUE TO DEFENDANTS DEFAULT AND FAILURE TO PAY THE BONDS
### Against All Defendants

272.     Plaintiffs RICHARD BLEIER/CLASS MEMBERS repeat and reallege and

incorporate the prior paragraphs 1 to 271, as if fully set forth herein. The German

gold bonds are BEARER instruments, BONDS that entitle the holder to payment

upon demand.

273.     GERMANY and DEFENDANTS have pecuniary obligations, and

contractual obligations, to pay Plaintiff and Class Members, and/or bondholders,

pursuant to the express terms of the original bonds, and DEFENDANTS have

pecuniary obligations, and contractual obligations, to redeem and pay for the gold

bonds held by PLAINTIFF/CLASS MEMBERS, which were issued and sold in

the United States, pursuant to the terms of the bonds, in the United States.

274.     Further DEFENDANTS have pecuniary obligations, and contractual

obligations, pursuant to the Core Loan documents, and/or Trustee agreements

and/or Mortgage, or Indentures, and/or implied contracts, and/or equity, and/or as

Guarantors, and/or as Trustees, and/or as Co- Obligors, and/or as Selling Brokers,

and/or Redemption or Paying Agents, for payment of the bonds, to the full extent

of law, principal and interest, to Plaintiff/Class Members and/or the bondholders.

275.     DEFENDANTS are liable for the outstanding and unpaid principal and

interest under the Plaintiff's and Class Members, Bonds.

276.     GERMANY and DEFENDANTS offered the bonds for sale in the

American market and accepted their obligations to pay when they sold the bonds

and received valuable consideration and significant amounts of monies and benefits from the sale of the bonds to the American investors.

277.     GERMANY and DEFENDANTS have explicitly and contractually agreed to pay the bonds and debts, and/or guaranteed and/or succeeded and/or assumed the outstanding unpaid obligations under the bonds, and/or are bound by the original terms of the bonds and obligations under the bonds.

278.     The bonds had a 20 year term and interest coupons providing for interest at the rate of 7% per annum on June and December from January 1926 to 1946. Both principal and interest payable in the United States.

279.     The bonds have not been cancelled, perforated, voided, or otherwise modified and are genuine.  Each bond has a $1,000 face value amount, under the gold clause in each bond, represents the equivalent value in gold coin of the United States existing at the time.  Interest amounts are payable in the equivalent value in gold coin of the United States existing at the time.

280.     The total outstanding and unpaid principal is currently estimated for each bond at $2,000,000 (Two million USD per Bond) and continues to increase with the price of gold.

281.     Through their actions and agreements, GERMANY and DEFENDANTS, have repeatedly tolled and revived the applicable statute of limitations for enforcing the bonds.  These actions and agreements include but not limited to statements as recently as 1994, acknowledging and confirming Defendants payment obligations, renewing Twenty year statute of limitations at least till 2014.

282.     The DEFENDANTS have breached their contractual obligations by failing to pay the Plaintiff and Class Members and bondholders according to the original

terms of the bonds, which are due and unpaid and thus are in breach and default and Defendants have refused to pay upon demand.

283.    As a direct and proximate cause of the DEFENDANTS' scheme to defraud, breaches of contract and breaches of fiduciary duties, and DEFENDANTS' failure to redeem and pay for the bonds, and the DEFENDANTS default, the PLAINTIFF and CLASS MEMBERS have suffered monetary and other damages.

**WHEREFORE,** Plaintiff BLEIER and CLASS MEMBERS, demand a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) compensatory damage which the PLAINTIFF and CLASS MEMBERS, shall leave to determination of the ultimate trier of fact, which should be permitted to award Plaintiff /Class Members MILLIONS DOLLARS and (ii) interest, attorneys' fees, exemplary or punitive damages, and/or costs of this action.

## COUNT XX

### PROMISSORY and/or EQUITABLE ESTOPPEL
### Against All Defendants

284.    Plaintiffs RICHARD BLEIER/CLASS MEMBERS repeat and reallege and incorporate the prior paragraphs 1 to 283, as if fully set forth herein.

285.    The GERMAN government, and DEFENDANTS, promised to redeem and pay for the gold bonds to the BEARERS OF THE BONDS, and DEFENDANTS promised to hold the funds of the Plaintiff/Class Members' in Trust, verbally, and/or in writing, and/or in the bonds language, until such time that Plaintiff and/or Class Members made their demand for redemption and payment of the bonds, and GERMANY further promised additional payments to bondholders, verbally, and/or in writing, and/or in the agreements, upon the reunification of Germany, and also promised payments of the bonds after 1994, all which entitled the Plaintiffs to payment upon demand according to the terms of the bonds.

286.     PLAINTIFF/CLASS MEMBERS reasonably relied on the promise of
redemption and payment of the Bonds by DEFENDANTS; and it was also
foreseeable and expected, that the non-assenting bondholders (those who did not
accept the settlement "offer" under the London Debt Accord 1953) would
reasonably rely on the promises of redemption and payment from the GERMAN
and DEFENDANTS Obligors, and Plaintiff/Class Members' reasonably relied on
the guarantees of the Defendants, Trustees, and Selling Brokers, and/or
Redemption and Paying Agents, or successors thereof, and therefore
Plaintiff/Class Members were induced into substantial forbearance to their
detriment, and had to forego redemption/payment, and wait for 40 years or more,
in order to be able to redeem their bonds, according to the full terms of the bonds.

287.     DEFENDANTS should be equitably stopped from reneging on their
obligations, and/or promise of redemption, and/or promises or obligations of
payment of the bonds, and it would be unconscionable and unjust for
DEFENDANTS to deny redemption or to deny payment to bondholders, and
Plaintiff/Class Members who have suffered as a result of the breaches of trust and
fiduciary obligations, and the failure of DEFENDANTS to fulfill their obligations
or promises of redemption and payment of the bonds.

> **WHEREFORE,** Plaintiff BLEIER and CLASS MEMBERS, demand a jury
> trial, damages and judgment against defendants jointly severally and/or
> individually for (i) compensatory damage which the PLAINTIFF and CLASS
> MEMBERS, shall leave to determination of the ultimate trier of fact, which
> should be permitted to award Plaintiff /Class Members MILLIONS
> DOLLARS and (ii) interest, attorneys' fees, exemplary or punitive damages,
> and/or costs of this action.

## COUNT XXI

### RESTITUTION
### Against All Defendants

288.     Plaintiffs RICHARD BLEIER/CLASS MEMBERS repeat and reallege and incorporate the prior paragraphs 1 to 287, as if fully set forth herein.

289.     DEFENDANTS' received monies as a result of PLAINTIFF'S and CLASS MEMBERS' purchases of the BONDS, and DEFENDANTS wrongfully accepted and/or retained these benefits or monies, to the detriment of PLAINTIFF and CLASS MEMBERS.

290.     DEFENDANTS' enrichment at the expense of PLAINTIFF and CLASS MEMBERS was unjust.

291.     As a direct and proximate result of GERMANY'S and DEFENDANTS' wrongful conduct and aforesaid unjust enrichment, Class Members' and Plaintiff's property rights and interests, have been adversely affected, and Plaintiff and Class Members and have suffered monetary and other damages.

292.     As a result of DEFENDANTS' wrongful conduct, PLAINTIFF and CLASS MEMBERS are entitled to restitution from and institution of a constructive trust, disgorging all profits, benefits, and other compensation obtained by DEFENDANTS.

293.     As a direct and proximate result of DEFENDANTS actions or omissions, wrongs, breaches of fiduciary duty or bad faith, and/or unjust enrichment, the PLAINTIFF/CLASS MEMBERS have suffered monetary and other damages.

**WHEREFORE,** Plaintiff BLEIER and CLASS MEMBERS, demand a jury trial, damages and judgment against defendants jointly severally and/or individually for (i) damages which the PLAINTIFF and CLASS MEMBERS, shall leave to determination of

the ultimate trier of fact, which should be permitted to award Plaintiff /Class Members

MILLIONS DOLLARS and (ii) restitution from , and institution of a constructive trust,

disgorging all profits, benefits, and other compensation obtained by Defendants,

interest, attorneys' fees, exemplary or punitive damages, and/or costs of this action.

## PRAYER FOR RELIEF AND JUDGMENT

**WHEREFORE** Plaintiff RICHARD BLEIER, on behalf of himself, and all others

similarly situated, and CLASS MEMBERS, pray for relief and demand judgment against

DEFENDANTS as follows:

a) An order certifying the proposed plaintiff Class, designating Plaintiff as named
representative of the Class, and designating the undersigned as Class Counsel;

b) A judgment for the full amount of all outstanding and unpaid principal and
interest, including but not limited to compound interest, due on the bonds in
equivalent value of gold coin of the United States in the MILLIONS of
DOLLARS, estimated at $2,000, 000 (Two Million USD) per bond, and/or
greater amount, to be proven at trial;

c) An award of pre-judgment and post judgment interest, attorneys' fees, and costs
of this action;

d) Punitive, exemplary, and/or treble damages;

e) An order enjoining Defendants from further deceptive practices with respect to
redemption or payment of the bonds and declaration that Defendants provide
suitable redemption and payment procedures for Plaintiffs and bondholders;

f) A declaration that Defendants must disgorge, for the benefit of the class, all or
part of the ill gotten financial gains, or profits they received from the selling of
the bonds, or from the denial of payment of the bonds, or to make full restitution
to Plaintiffs and Class Members;

g) An award to Plaintiff and the Class of compensatory and exemplary damages and/or statutory damages, and interest thereon.

h) A declaration that Defendants institute proper, adequate, meaningful and efficient redemption and payment procedures for Class Members and that Defendants are financially responsible for notifying all Class Members of this action and the availability of proper redemption and payment procedures for their bonds.

i) Such further relief as the Court deems just and proper.


Dated:       February 4th , 2009


Respectfully submitted,
ATTORNEY FOR PLAINTIFF RICHARD BLEIER
And Proposed Class Members

/s/  *Hassan A. Abbas*

Hassan A. Abbas
Attorney and Counsellor at Law
Illinois A.R.D.C. No. 6206474
Hoveniersstraat 2,Suite 232-Box 344
Antwerp 2018 Belgium
Tel. 323 233 3910  Fax 323 233 9767
Email hassanabbas@telenet.be