IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Richard Bleier, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV6254 |
| | ) | |
| Bundesrepublik Deutschland a/k/a, | ) | |
| Federal Republic of Germany,  *et al.* | ) | |
| | ) | Hon. James B. Zagel |
| Defendants. | ) | U.S. District Judge |

**<u>MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS ON
BEHALF OF DEFENDANTS COMMERZBANK, AG, COMMERZBANK "CHICAGO
BRANCH," COMMERZBANK "NEW YORK BRANCH," COMMERZBANK "LOS
ANGELES BRANCH," COMMERZBANK "ATLANTA BRANCH," COMMERZBANK
CAPITAL MARKETS CORP., A/K/A "CCMC" A DIVISION OF COMMERZBANK AG,
COMMERZBANK SECURITES, A DIVISION/SUBSIDIARY OF COMMERZBANK
AG, DEUTSCHE BANK AG AND DEUTSCHE BANK/BANKERS TRUST CO.,
CITIBANK, N.A., J.P. MORGAN CHASE, N.A., SCHRODERS PLC, UBS AG, THE
BANK OF NEW YORK MELLON, AND CREDIT SUISSE GROUP AG, AND OR ITS
AFFILIATES</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

DOCUMENTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE ........................... 4

HISTORICAL FACTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE ............... 6

      History of German Dollar Bonds ...................................................................... 6

      Problems Created by Russian Seizure of Bonds .................................................. 7

      Objectives of Screening Procedures .................................................................... 7

      Validation Law.................................................................................................... 8

      Agreement on Validation Procedures .................................................................. 8

      Second Implementing Ordinance......................................................................... 9

      The 1953 Treaty ................................................................................................. 9

THE RULE 12(B)(6) STANDARD.................................................................................. 11

ARGUMENT ............................................................................................................... 11

I.      THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE
       PLAINTIFF ADMITS THAT HE HAS NOT COMPLIED WITH THE
       VALIDATION PROCEDURES THAT ARE CONDITIONS PRECEDENT FOR
       SUING IN COURT.......................................................................................... 11

II.     ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED............................................ 14

      A.     The Applicable Statutes Of Limitations Have Expired. ....................................... 14

      B.     None Of Plaintiff's Tolling Theories Can Revive His Time-Barred Claims........ 19

             1.     The Discovery Rule Does Not Revive Plaintiff's Claims. ...................... 19

             2.     The Fraudulent Concealment Doctrine Does Not Revive Plaintiff's
                 Claims. ............................................................................................... 20

             3.     Plaintiff's Claims Do Not Satisfy The Continuing Violation
                 Doctrine.............................................................................................. 21

    4. The Equitable Tolling Doctrine Does Not Revive Plaintiff's Claims. .................................................................................. 22

  C. Reviving Plaintiff's Claim Would Violate Defendants' Right To Due Process. ................................................................................................ 23

III. THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE IT FAILS TO MEET THE PLEADING REQUIREMENTS OF FEDERAL RULES OF CIVIL PROCEDURE 8(A) AND 9(B). .................................. 24

  A. Because Plaintiff Ties Every Aspect of the Amended Complaint to Allegations of Fraud, the Entire Complaint Must Meet the Particularity Standards of Rule 9(b). ........................................................................ 24

  B. For the Vast Majority of the Complaint, Plaintiff Concedes That He Has Not Satisfied Rule 9(b). ...................................................................... 25

  C. Plaintiff Relies Extensively on Impermissible Group Pleading, And Does Not Allege Which Defendant Took What Relevant Action and Which Facts, If Any, Relate to Him. ............................................................. 26

  D. Plaintiff's Attempt to State a Single Claim Against Deutsche Bundesbank and Commerzbank with Particularity Fails............................................ 29

  E. Although Rule 9(b) Applies to the Entire Amended Complaint, the Amended Complaint Also Fails to Meet the Requirements of Rule 8(a). ............ 30

IV. PLAINTIFF'S CLAIMS ARE NON-JUDICIABLE UNDER THE POLITICAL QUESTION DOCTRINE. ............................................................................... 31

V. DISMISSAL OF CERTAIN SPECIFIC COUNTS. ......................................................... 34

  A. Counts X , XI, and XXI Are Not Independent Causes of Action. ........................ 34

  B. Plaintiff Has Failed to State a Valid Claim for Spoliation of Evidence. .............. 34

  C. The Federal Rules of Civil Procedure Have Rendered the "Equitable Bill of Discovery" Obsolete.......................................................................... 36

CONCLUSION................................................................................................... 38

# TABLE OF AUTHORITIES

FEDERAL CASES

*767 Third Ave. Assocs. v. Consulate General of Socialist Fed. of Yugoslavia*,
    218 F.3d 152 (2d Cir. 2000).................................................................................................34

*Abrey v. Reusch*,
    153 F. Supp. 337 (S.D.N.Y. 1957)..............................................................................Passim

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
    172 F.3d 467 (7th Cir. 1999) ....................................................................................21, 29

*Agency Holdings Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987)..............................................................................................................17

*Am. Ins. Ass'n. v. Garamendi*,
    539 U.S. 396, 123 S.Ct. 2374 (2003)...................................................................................35

*Baker v. Carr*,
    369 U.S. 186 (1962)........................................................................................................32, 35

*Banks v Fritsch*,
    No. 90-0277, 1990 WL 73035 (E.D. Pa. May 30, 1990).......................................................38

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)....................................................................................................11, 32

*Big River Zinc Corp. v. Steel Dynamics*,
    2006 U.S. Dist. LEXIS 46128 (S.D. Ill. July 7, 2006) ...........................................................5

*Bolshanin v. Zlobin*,
    76 F. Supp. 281 (D. Alaska 1948) ........................................................................................5

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007) .................................................................................25, 30, 37

*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 446 (7th Cir. 1990) ..........................................................................................20, 23

*Callsen v. Hope*,
    75 F. 758 (D. Alaska 1896).....................................................................................................5

*Cherokee Nation v. United States*,
    80 Ct. Cl. 1 (Ct. Cl. 1932)......................................................................................................5

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103, 68 S.Ct. 431 (1948).......................................................................33

*Conley v. Gibson*,
    355 U. S. 41 (1957)...............................................................................................11

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000)..............................................................................................33

*Deirmenjian v. Deutsche Bank, A.G.*,
    526 F. Supp. 2d 1068 (C.D. Cal. 2007) ..............................................................33

*Diliberti v. U.S.*,
    817 F.2d 1259 (7th Cir. 1987) ............................................................................22

*Drake v. Laboratory Corp. of America Holdings*,
    290 F. Supp. 2d 352 (E.D.N.Y. 2003) ................................................................37

*Draper v. Pickus*,
    No. 04 C 8150, 2007 U.S. Dist. LEXIS 18200 (N.D. Ill. Mar. 15, 2007) .............14

*Fitzgerald v. Seamans*,
    553 F.2d 220 (D.C. Cir. 1977)............................................................................22

*Flynn v. Shultz*,
    748 F.2d 1186 (7th Cir. 1984) ............................................................................33

*Forsythe v. Black Hills Corp.*,
    2007 U.S. Dist. LEXIS 17814 (N.D. Ill. Mar. 12, 2007).....................................36

*Forti v. Suarez-Mason*,
    672 F. Supp. 1531 (N.D. Cal. 1987) ...................................................................19

*Four Seasons Hotel v. Get-A-Way Travel, Inc.*,
    2006 U.S. Dist. LEXIS 45893 (D. Nev. July 5, 2006)...........................................5

*Franklin v Turner*,
    No. 92-891-FR, 1992 WL 252121 (D. Or. Sept. 25, 1992) ..................................38

*Fujisawa Pharm. Co. v. Kapoor*,
    115 F.3d 1332 (7th Cir. 1997) ............................................................................18

*Gas Tech. Inst. v. Rehmat*,
    No. 05 C 2712, 2006 WL 3743576 (N.D. Ill. Dec. 15, 2006) ..............................18

*Gooding v. Warner-Lambert Co.*,
    744 F.2d 354 (3rd Cir. 1984) ..............................................................................14

*Greer v. Bank One*,
   No. 1 C 7352, 2002 U.S. Dist. LEXIS 13715 (N.D. Ill. July 23, 2002) ...................................21

*Handel v. Artukovic*,
   601 F. Supp. 1421 (C.D. Cal. 1985) ..................................................................................18

*Henson v. CSC Cred. Servs.*,
   29 F.3d 280 (7th Cir. 1994) .............................................................................................5

*Hentosh v. Herman M. Finch Univ. of Health Sciences*,
   167 F.3d 1170 (7th Cir. 1999) ..........................................................................................21

*Hollander v. Brown*,
   457 F.3d 688 (7th Cir. 2006) ...........................................................................................14

*Home Ins. Co. v First Nat'l Bank*,
   89 F.R.D. 485 (N.D. Ga. 1980)..........................................................................................38

*Humble Oil Refining Co., v. Harang*,
   262 F. Supp. 39 (E.D. La. 1966) .......................................................................................39

*In re African-Am. Slave Descendants Litig.*,
   304 F. Supp. 2d 1027 (N.D. Ill. 2004) ........................................................................Passim

*In re Austrian & German Holocaust Litig.*,
   250 F.3d 156 (2d Cir. 2001)........................................................................................Passim

*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
   543 F.3d 150 (3d Cir. 2008)...........................................................................................5-6

*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig*,
   493 F.3d 393 (3d Cir. 2007).............................................................................................5

*In re Merck Co.*,
   2006 U.S. Dist. LEXIS 2345 (D.N.J. Jan. 20, 2006) ................................................................5

*In re Providian Financial Corp. ERISA Litigation*,
   No. C-01-05027 CRB, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ................................27

*Iwanowa v. Ford Motor Co.*,
   67 F. Supp. 2d 424 (D.N.J. 1999) ............................................................................ 19, 33-34

*Johnson v. Ford Motor Co.*,
   2004 U.S. Dist. LEXIS 1199 (N.D. Ill. Jan. 29, 2004) .........................................................36

*Jones v. Bock*,
   549 U.S. 199 (2007)........................................................................................................14

*Kalmich v. Bruno*,
   553 F.2d 549 (7th Cir. 1977) ...........................................................................15

*Kashani v. Nelson*,
   793 F.2d 818 (7th Cir. 1986) ...........................................................................32

*Kelberine v. Societe Internationale*,
   363 F.2d 989 (D.C. Cir. 1966) ................................................................... 33-34

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)...................................................................................... 23-24

*Kolupa v. Roselle Park Dist.*,
   438 F.3d 713 (7th Cir. 2006) ...........................................................................31

*Limestone Development Corp. v. Village of Lemont*,
   520 F.3d 797 (7th Cir. 2008) ...........................................................................14

*Lloyd-El v. U.S.*,
   No. 2:05-CV-705, 2002 WL 33096220 (W.D. Pa. Dec. 19, 2002) ........................................34

*Menominee Indian Tribe v. Thompson*,
   161 F.3d 449 (7th Cir. 1998) .............................................................................5

*Miller v. United States*,
   583 F.2d 857 (6th Cir. 1978) .............................................................................5

*Molina v. First Line Solutions LLC*,
   566 F. Supp. 2d 770 (N.D. Ill. 2007) ...............................................................17

*Mortimer Off Shore Servs. v. Fed. Rep. of Germany*,
   2007 U.S. Dist. LEXIS 71906 (S.D.N.Y. Sept. 27, 2007)....................................13

*Nelson v. Price*,
   115 F. Supp. 2d 925 (N.D. Ill. 2000) ................................................17, 21, 23

*North Star Steel Co. v. Thomas*,
   515 U.S. 29 (1995)..............................................................................................18

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).............................................................................................28

*Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum*,
   577 F.2d 1196 (5th Cir. 1978) ..................................................................... 33-34

*Order of R.R. Telegraphers v. Ry. Express Agency*,
   321 U.S. 342, 64 S.Ct. 582 (1944)................................................................ 23-24

*Orkin v. Taylor,*
    487 F.3d 734 (9th Cir. 2007) ............................................................. 18

*Papasan v. Allain,*
    478 U.S. 265 (1986) ....................................................................... 5

*Perkins v. Silverstein,*
    939 F.2d 463 (7th Cir. 1991) ............................................................ 14

*Ramos v. Patrician Equities Corp.*
    765 F. Supp. 1196 (S.D.N.Y. 1991) .................................................... 28

*Richardet v. Murdale True Value, Inc.,*
    S.D. Ill. Case No. 07-CV-0368-MJR, 2008 U.S. Dist. LEXIS 84908 (2008) ......... 37

*River Vil. W. LLC v. Peoples Gas Light & Coke Co.,*
    2008 U.S. Dist. LEXIS 77796 (N.D. Ill. Sept. 25, 2008) ............................ 4

*Rothery Storage & Van Co. v Atlas Van Lines, Inc.*
    609 F. Supp. 554 (N.D. Ill. 1985) ...................................................... 38

*Ryan v. Mary Immaculate Queen Center,*
    188 F. 3d 857 (7th Cir. 1999) ........................................................... 30

*Samco Global Arms, Inc. v. Arita,*
    395 F.3d 1212 (11th Cir. 2005) ......................................................... 18

*Sampson v. Federal Republic of Germany,*
    975 F. Supp. 1108 (N.D. Ill. 1997) ................................................. 15, 19

*Scholes v. Ames,*
    850 F. Supp. at 713 ...................................................................... 35

*Schultz v. Texaco, Inc.,*
    127 F. Supp. 2d 443 (S.D.N.Y. 2001) .................................................. 22

*Sears v. Likens,*
    912 F.2d 889 (7th Cir. 1990) ............................................................ 27

*Singletary v. Cont'l Ill. Nat'l Bank,*
    9 F.3d 1236 (7th Cir. 1993) ............................................................. 22

*Small v. Chao,*
    398 F.3d 894 (7th Cir. 2005) ............................................................ 14

*Stark Trading v. Falconbridge Ltd.,*
    552 F.3d 568 (7th Cir.2009) ............................................................. 11

*Sterbenz v. Attina*,
205 F. Supp. 2d 65 (E.D.N.Y. 2002) ....................................................................37

*Stogner v. California*,
539 U.S. 607, 123 S.Ct. 2446 (2003)...................................................................24

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) .......................................................................11, 32

*The Nat'l Black Expo v. Clear Channel Broad.*,
No. 03 C 2751, 2007 U.S. Dist. LEXIS 9783 (N.D. Ill. Feb. 8, 2007)...................20

*U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*,
415 F. 3d 601 (7th Cir. 2005) ..............................................................................26

*United States v. Kubrick*,
444 U.S. 111, 100 S.Ct. 352 (1979)......................................................................24

*Warth v. Seldin*,
422 U.S. 490 (1975).............................................................................................28

*Williams v. Washington Metropolitan Area Transit Authority*,
232 U.S. App. D.C. 251 (D.C. Cir. 1983).............................................................14

*Wimes v. Eaton Corp.*,
537 F. Supp. 331 (E.D. Wisc. 1983).....................................................................38

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financial. Services*,
536 F.3d 663 (7th Cir. 2008) .......................................................................11, 32

*Wood v. Carpenter*,
101 U.S. 135 (1879).............................................................................................24

*Yucyco, Ltd. v. Republic of Slovenia*,
984 F. Supp. 209 (S.D.N.Y. 1997)........................................................................34

*Zeidler v. A & W Restaurants, Inc.*,
No. 99 C 2591, 2000 WL 122616 (N.D. Ill. Jan. 25, 2000) ...................................17

STATE CASES

*A.T. Kearney, Inc. v. INCA Int'l, Inc.*,
477 N.E.2d 1326 (Ill. App. 1985).........................................................................35

*Armstrong v. Guigler*,
673 N.E.2d 290 (Ill. 1996)...................................................................................16

*Boyd v. Travelers Ins. Co.*,
    652 N.E.2d 267 (Ill. 1995) ................................................................................37

*Dardeen v. Kuehling*,
    821 N.E.2d 227 (Ill. 2004) ...............................................................................37

*Foster v. Plaut*,
    625 N.E.2d 198 (Ill. App. 1993) .......................................................................21

*Guertin v Guertin*,
    561 N.E.2d 1339 (Ill. App. 1990) .....................................................................38

*Ingersoll v. Klein*,
    262 N.E.2d 593 (Ill. 1970) ...............................................................................36

*LeBlanc v. G.D. Searle & Co.*,
    533 N.E.2d 41 (Ill. App. 1988) .........................................................................15

*Newell Co. v. Petersen*,
    758 N.E.2d 903 (Ill. App. 2001) .......................................................................15

*Ortega v. City of New York*,
    876 N.E.2d 1189 (N.Y. 2007)...........................................................................36

*Partipilo v. Hallman*,
    510 N.E.2d 8 (Ill. App. 1987) ...........................................................................16

*Zions First Nat. Bank v. Paul Green*,
    2007 WL 4109125 (N. D. .Ill. 2007) ................................................................25

## FEDERAL STATUTES

18 U.S.C. § 1961 .....................................................................................................17

28 U.S.C. 1605(a)(2) ...............................................................................................18

28 U.S.C § 1350, note, § 2(c) ............................................................................ 19-20

42 U.S.C. § 2000e ...................................................................................................13

28 U.S.C.A. 1605(a) ................................................................................................18

Holocaust Victims Redress Act, Pub.L. No. 105-158, 112 Stat. 15 (1998) ..................18

National Stolen Property Act, 18 U.S.C. § 2314 .......................................................18

**STATE STATUTES**

735 ILCS 5/13-205 ................................................................................................................17

735 ILCS 5/13-210 ................................................................................................................15

**OTHER AUTHORITIES**

Charles A. Wright, *et al., Fed. Prac. & Proc*. § 4519, at 595 (1996)............................................18

Fed. R. Civ. Proc. 8 ............................................................................................ Passim

Fed. R. Civ. Proc. 9............................................................................................ Passim

Fed. R. Civ. Proc. 12.........................................................................................................2, 11

Fed. R. Civ. Proc. 21.............................................................................................................2

Validation Law, Art. 31 and 33 .............................................................................................13

Validation Law, Arts. 24 and 41 ...........................................................................................12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Richard Bleier, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 CV6254 |
| | ) | |
| Bundesrepublik Deutschland a/k/a, | ) | |
| Federal Republic of Germany, *et al.* | ) | |
| | ) | Hon. James B. Zagel |
| Defendants. | ) | U.S. District Judge |

## <u>MEMORANDUM OF LAW IN SUPPORT<br>OF DEFENDANTS' JOINT MOTION TO DISMISS</u>

Defendants (hereinafter jointly "Defendants")

1.      Commerzbank, AG, Commerzbank "Chicago Branch," Commerzbank "New York Branch," Commerzbank "Los Angeles Branch," Commerzbank "Atlanta Branch," Commerzbank Capital Markets Corp., a/k/a "CCMC" a division of Commerzbank AG, and Commerzbank Securities, a division/subsidiary of Commerzbank AG, (collectively "Commerzbank"), by counsel Rubin, Winston, Diercks, Harris & Cooke, LLP and Tishler & Wald, Ltd.;

2.      Deutsche Bank AG and Deutsche Bank/Bankers Trust Co. by counsel Milbank, Tweed, Hadley & McCloy LLP and Eimer Stahl Klevorn & Solberg LLP;

3.      Citibank, N.A. by counsel Katten Muchin Rosenman LLP;

4.      J.P. Morgan Chase Bank, N.A. by counsel Ulmer & Berne LLP;

5.      Schroders plc by counsel Ropes & Gray LLP;

6.      UBS AG by counsel Katten Muchin Rosenman LLP;

7.      The Bank of New York Mellon by counsel Katten Muchin Rosenman LLP;

8.      Credit Suisse Group AG, and or its affiliates, by counsel Milbank, Tweed, Hadley & McCloy LLP and Eimer Stahl Klevorn & Solberg LLP jointly submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. Rules 8(a), 9(b), 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint.[1]

### PRELIMINARY STATEMENT

On October 31, 2008 Plaintiff Richard Bleier ("Bleier" or "Plaintiff") filed a twelve count complaint against Defendants.  On February 4, 2009 Bleier filed an Amended Complaint (the "Amended Comp.") adding new causes of action, adding new parties without leave of court as required by Fed. R. Civ. P. Rule 21, and adding class allegations.[2]

---

[1]   Pursuant to the Court's Rule 16 order issued on December 23, 2008, Defendants hereby reserve their right pending resolution of this motion to move to dismiss the Amended Complaint based on individualized issues that are not common to all Defendants, including but not limited to personal jurisdiction.

Defendants The Federal Republic of Germany, the German Ministry of Finance, Deutsche Bundesbank, Bank of International Settlements and Dillon Warburg have not been served and no appearances have been entered on their behalf.

[2]   The 95 page Amended Complaint contains 21 counts.  Count I is styled as "Conspiracy to Defraud, Conspiracy to Breach Contractual Obligations, Conspiracy to Breach Good Faith & Fiduciary Duties Against All Defendants."  Count II is styled as "Negligent Misrepresentation Against All Defendants."  Count III is styled as "Constructive Fraud Against All Defendants."  Count IV is styled as Fraud Against Commerzbank AG & Deutsche Bundesbank and Defendants."  Count V is styled as "Piercing the Corporate Veil/Alter Ego Respondeat Superior or Principal/Agent Liability as to All Defendants."  Count VI is styled as "Wrongful Expropriation/Taking of Property Against All Defendants."  Count VII is styled as "Conspiracy to Defraud Against All Defendants."  Count VIII is styled as "Negligence and/or Negligent Supervision."  Count IX is styled as "Unjust Enrichment Against All Defendants."  Count X is styled as "Equitable Disgorgement Against All Defendants." Count XI is styled as Imposition of Constructive Trust Against All Defendants."  Count XII is styled as "Conversion Against All Defendants."  Count XIII is styled as "Accounting Against All Defendants."  Count XIV is styled as "Spoliation of Evidence Against All Defendants."  Count XV is styled as "Preservation/Production of Documents Against All Defendants."  Count XVI is styled as "Damages from Refusal, Delay and/or Interference with Production of Documents Against All Defendants."  Count XVII is styled as "Breach of Contract Breach of Express Contract and Breach of Implied Contract Against All Defendants."  Count XVIII is styled as "Breach of Fidiciary [sic] Duty And Breach of Implied Covenants Of Good Faith and Fair Dealing  Against All Defendants."  Count XIX is styled as "Claim for Damages Due to Defendants Default and Failure to Pay the Bonds Against All Defendants."  Count XX is styled as "Promissory And/or Equitable Estoppel Against All Defendants."  Count XXI is styled as "Restitution Against All Defendants."

Plaintiff alleges that after World War I Germany issued bonds that were sold in the United States between 1924 and 1930. The Complaint identifies the bonds as: the German External Loan 1924 7% Bonds Due October 15th, 1949 (the "Dawes Bonds"); the German Government International 5½% Loan 1930 Due June 1st, 1965 (the "Young Bonds"); and the Rheinelbe Union 7% Twenty-Year Sinking Fund Mortgage Gold Bonds – Due January 1st, 1946 (the "Rheinelbe Bonds;" together with the Dawes Bonds and Young Bonds, the "Bonds"). Plaintiff alleges that he "is the legal and equitable owner" of Bonds, but he fails to allege the specific Bond he owns, the amounts, or how he came to own or possess the Bonds. (Amended Comp. ¶ 1). Plaintiff alleges that in 1933 the German Reich placed a moratorium on the payment of the Bonds, which lasted until after World War II, at which time the Federal Republic of Germany allegedly continued to avoid payment of the Bonds.

Plaintiff alleges that the Defendants are the "redemption or paying agent" for the Bonds, possess documents relating to the Bonds and "engaged in a scheme to defraud bondholders and bad faith refusal to pay the bonds." (Amended Comp. ¶¶ 43, 44, 55, 105, 174, 181, 182, 189, 213, 233, 271, 283). Plaintiff also alleges that the Defendants are obligated to pay the outstanding principal and interest due on the Bonds. (Amended Comp. ¶¶ 248, 252).

The Amended Complaint is subject to dismissal, in its entirety, for at least four independent reasons:

(1)     Plaintiff admits that he has failed to comply with the validation procedures for the Bonds as established by a United States treaty as well as related legal instruments, which procedures are conditions precedent for suing on the Bonds in court;

(2)     All of Plaintiff's claims are time-barred by the applicable statutes of limitations;

(3)     The Amended Complaint in any event fails to meet the pleading requirements of Fed. R. Civ. P. Rules 8(a) and 9(b); and

(4)     To the extent Plaintiff challenges the validation procedures applicable to the Bonds as invalid and inapplicable, his claims are non-justiciable under the political question doctrine.[3]

## DOCUMENTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE

For the reasons explained below the Court is entitled to take judicial notice of the documents attached as exhibits to the Joint Motion to Dismiss without considering this to be a motion for summary judgment.   Attached hereto are a United States Treaty (Ex. D), an agreement between the United States and other foreign sovereigns (Ex. B) and two German laws that are specifically referenced and authenticated in the Treaty of April 1, 1953 between the Federal Republic of Germany and the United States, 4 U.S.T. 885 (the "1953 Treaty") (Exs. A and C).[4]

The Court may take judicial notice of the attached documents because they are matters of public record.  *See River Vil. W. LLC v. Peoples Gas Light & Coke Co.*, 2008 U.S. Dist. LEXIS 77796 (N.D. Ill. Sept. 25, 2008) *citing*, *U. S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

---

[3]   To the extent that the Amended Complaint purports to be a class action, once it is shown that the only named plaintiff, Bleier, fails to state a claim, the entire putative class action is subject to dismissal. *See Foster v. Center Township of LaPorte County*, 798 F.2d 237, 245 (7th Cir. 1985) ("That a suit may be a class action, however, adds nothing to the question of standing, for even the named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207 (1975)); *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs") (citation omitted).

[4]   Article IV of the 1953 Treaty states: "For the purpose of all proceedings in the United States, the English texts of the Validation Law and of the Second Implementing Ordinance thereunder of March 7, 1953 (Bundesanzeiger Nr. 50 of March 13, 1953) which are annexed to the Agreement on Validation Procedures shall be authentic."

Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.  *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) *citing*, *Doherty v. City of Chicago*, 75 F.3d 318, 324 n.4 (7th Cir. 1996); *Henson v. CSC Cred. Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Specifically the Court may take judicial notice of the 1953 Treaty.  *See Cherokee Nation v. United States*, 80 Ct. Cl. 1, 4 (Ct. Cl. 1932) ("The court will take judicial notice that the Cherokee Nation had a constitution, and of the contents of the treaties made with that nation . . . ."); *Callsen v. Hope*, 75 F. 758, 761 (D. Alaska 1896) ("Under the Constitution of the United States (article 6, par. 2), all treaties made or which shall be made under the authority of the United States are the supreme law of the land; and courts take judicial notice of them.").  Courts may also take judicial notice of documents attached to or incorporated by reference to a treaty such as Exhibits A and C.  *See Bolshanin v. Zlobin*, 76 F. Supp. 281, 283 (D. Alaska 1948).  The Court may take judicial notice of executive agreements such as Exhibit B.  *See Miller v. United States*, 583 F.2d 857, 859 (6th Cir. 1978).

The Court may consider these documents of which it is entitled to take judicial notice without thereby converting this motion to dismiss into a motion for summary judgment.  *See Big River Zinc Corp. v. Steel Dynamics*, 2006 U.S. Dist. LEXIS 46128, 8 9 (S.D. Ill. July 7, 2006) *citing*, *U. S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *Four Seasons Hotel v. Get-A-Way Travel, Inc.*, 2006 U.S. Dist. LEXIS 45893 (D. Nev. July 5, 2006); *In re Merck Co.*, 2006 U.S. Dist. LEXIS 2345 (D.N.J. Jan. 20, 2006).[5]

---

[5]   *Merck*  was reversed and remanded twice on other grounds.  *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig*, 493 F.3d 393 (3d Cir. 2007); *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig*., 543 F.3d 150 (3d Cir. 2008).  In the 2008 case the circuit court stated that "The District Court took judicial notice of the various public documents submitted to it in connection with the motion to

## **HISTORICAL FACTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE**

The historical facts relevant to this motion, including the validation procedures for the Bonds as established in the documents attached hereto, have been set forth in detail by Judge Herlands in *Abrey v. Reusch*, 153 F. Supp. 337 (S.D.N.Y. 1957).   In light of the comprehensiveness and thoroughness of Judge Herlands' opinion, Defendants provide the Court with an extensive summary of relevant parts of *Abrey*.

### History of German Dollar Bonds[6]

As explained by Judge Herlands, following World War I a large number of Dollar-denominated bearer bonds were sold by German issuers.  *See id.* at 339.  These bond issues were underwritten in the United States, and were payable through corporate trustees or paying agents in the United States.  *See id.*

Prior to the outbreak of World War II, many of these bonds had been repurchased and reacquired by the issuers for eventual retirement, and later submitted to meet sinking fund and amortization requirements.   Such reacquired bonds were retained in Germany and no longer represented valid obligations.  *See id.*  During World War II, however, it was impossible to present the bonds to the American trustees or paying agents for cancellation and, consequently, large numbers of these uncancelled and negotiable bonds were held in the vaults of German banks.  *See id.*

---

dismiss.  Appellants do not challenge this decision on appeal and we see no reason to disturb it."  *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, 543 F.3d at 153, n.1.

[6]   The sub-headings used in this section dealing with the historical facts underlying Defendants' motion follow the headings in Judge Herlands' opinion.  *See Abrey*, 153 F. Supp. at 339-42.

<u>Problems Created by Russian Seizure of Bonds</u>

After Germany's surrender, Russian occupation forces seized the bonds they found in the German bank vaults within the area of their control.  These looted bonds, with an estimated face amount of $350,000,000, were returned to circulation by the Russians.  *See id.*

Simultaneously, other German Dollar bonds, amounting to approximately $250,000,000, were in the legitimate possession of their *bona fide* purchasers.  *See id.*  The risks flowing from that situation have been described by Judge Herlands in the following words:

> There was thus a real possibility that the eventual holders of the looted bonds would share the available assets (limited available foreign exchange) of the German obligors equally with the legitimate bondholders, a large number of whom were nationals of the United States.  Moreover, the free and open trading in the United States of all German Dollar Bonds was impeded by the uncertainties arising from the situation described above.

*Id.*

<u>Objectives of Screening Procedures</u>

In order to avoid those risks and to facilitate the settlement of German external debts, the United States and other nations cooperated with the government of the Federal Republic of Germany to create a procedure whereby all foreign currency bonds, including Dollar bonds, might be screened.  *See id.*  The objective was to determine whether the bonds were valid or were among those looted by the Russians, so that holders of looted bonds could not share in the limited available foreign exchange assets with the holders of legitimate bonds.  The primary mechanism for carrying out this objective was to require all German foreign currency bonds, including Dollar bonds, to be submitted for a determination of their validity.  The pertinent measures, as listed chronologically in Judge Herlands' opinion, were:

(1)  The Validation Law of August 25, 1952[7]
(2)  The First Implementing Ordinance of February 21, 1953

---

[7]  Attached hereto as Exhibit A.

(3)  The Agreement on Validation Procedures of February 27, 1953[8]
(4)  The Second Implementing Ordinance of March 13, 1953[9]
(5)  The Treaty of April 1, 1953[10]

*See id.* at 339-40.

Validation Law

The Validation Law (*i.e.*, the Law for the Validation of German Foreign Currency Bonds) was enacted in Germany in August 1952 and establishes the relevant procedures and criteria for validation.   The schedule of foreign currency bonds attached to the Validation Law lists the bonds to which the Validation Law applies.  *See id.* at 340.[11]  Subdivision A(1)(i) and(3)(I), and Subdivision C, item 64 of the schedule lists the Bonds that Plaintiff has identified in his Amended Complaint.

Agreement on Validation Procedures

The Agreement on Validation Procedures (the "Agreement") is an executive agreement between the United States and Germany, which is based on the Validation Law.  As explained by Judge Herlands, "[i]t recites 'that the policy of the Federal Republic of Germany embodied in the Validation Law is in conformity with the policy of the United States,' and that the United States 'wishes to implement' the provisions of the Validation Law 'within the territorial jurisdiction of the United States' by making 'mutually satisfactory' provision 'as to the procedures therefor within the territorial jurisdiction of the United States.'"  *Id.* (quoting Agreement).

The Agreement establishes a three-member Board for the Validation of German Bonds in the United States (the "Validation Board"), one member being German, the other American, and

---

[8]   Attached hereto as Exhibit B.

[9]   Attached hereto as Exhibit C.

[10]   Attached hereto as Exhibit D.

[11]   As was the case in *Abrey*, the First Implementing Ordinance plays no role here.  It lists certain additional bonds covered by the Validation Law that are not at issue.  *See id.*

the third functioning as an umpire in case of a difference of opinion between the German and American members. *See id.* It also deals with, among other things, the "binding effect of a decision rendered by the Validation Board and of 'any decision reviewing a decision of the Validation Board pursuant to a legal remedy allowed by' the Validation Law." *See id.* (quoting Agreement).

Second Implementing Ordinance

The Second Implementing Ordinance, approved and promulgated in Germany and consented to by the United States, implements the application of the Validation Law to Dollar bonds. *See id.* at 340-41. It addresses, among other things, the course and form of proceedings before the Validation Board (including evidentiary questions) as well as the Validation Board's adjudicatory functions with respect to validating or invalidating bonds presented to it. *Id.*

The 1953 Treaty

On April 1, 1953 the United States and Germany signed the Treaty regarding Certain Matters Arising from the Validation of German Dollar Bonds, which "confirms and, in effect, incorporates by reference the Validation Law of August 25, 1952, the First and Second Implementing Ordinances, and the Agreement on Validation Procedures." *Id.* at 341. As explained by Judge Herlands, *the 1953 Treaty mandates that "no bond shall be enforceable unless and until it shall be duly validated (Article II) …."* *Id.* (italics added).

Judge Herlands also clarified that both the Validation Law and the Second Implementing Ordinance "require the Validation Board to validate a bond duly registered with it if the registrant-bondholder establishes that the bond was 'held abroad,' which term is defined as 'located on January 1, 1945, outside the borders of Germany as they existed on December 31, 1937 (hereinafter called 'outside Germany').'" *Id.* (quoting Validation Law and Second Implementing Ordinance). According to Judge Herlands, "the foregoing are 'the requirements

9

for validation'" of a bond registered with the Validation Board, which the registrant of the bond

"has to prove."  *Id.* (quoting Validation Law).[12]

---

[12]  The following is a reproduction of Judge Herlands' summary of certain features of the procedure applicable before the Validation Board:

(A) If validation is demanded on the ground that the bond was held outside Germany on January 1, 1945, the bond must be registered with the Validation Board (Validation Law, Articles 7(1), 21);

(B) Specified items of information must be set forth together with "the facts relevant for the registration" and "an indication or submission of the evidence" (Validation Law, Article 22; Second Implementing Ordinance, Article 4);

(C) The registered bond must be submitted and delivered to the Validation Board or deposited with a suitable institution, unless the Validation Board provides for some other procedure (Validation Law, Article 23);

(D) The registrant has the burden of proving the requirements for validation.  "For this, he may use any evidence, in particular official documents, statements of a bank or broker, and affidavits or other forms of affirmation" (Validation Law, Article 24(1));

(E) "The issuer as well as the trustees and paying agents shall be given an opportunity to make a statement in respect of the registration and to submit evidence" (Validation Law, Article 24(2));

(F) The Validation Board "may make such investigation as" it "considers necessary to ascertain the facts.  For this purpose" it "may request the registrant to submit specified documents or other appropriate evidence" (Validation Law, Article 24(3)).  The Validation Board "may request the courts to take depositions of witnesses and experts and to receive other evidence" (Validation Law, Article 17);

(G) "If there is reason to believe that a bond * * * cannot be validated," the Validation Board "shall inform the registrant of the facts and evidence on which such belief rests and shall give him an opportunity to refute his belief" (Validation Law, Article 24(3));

(H) The registrant has "a period of three months from the receipt of such request" within which to submit his evidence or statement (Second Implementing Ordinance, Article 5(2));

(I) "As soon as the Validation Board considers the record as sufficiently complete, it shall make its decision regarding the validation" (Second Implementing Ordinance, Article 5(3));

(J) "In no case shall validation be denied before the Validation Board has informed the registrant of the facts and the evidence opposing validation and has given him an opportunity to contest them" (Second Implementing Ordinance, Article 5(4));

(K) The Validation Board "shall validate the bond if" it "is satisfied, after giving such weight as" it "sees fit to all pertinent circumstances, that the registration meets the requirements of Article 3(1) No. 1" (Validation Law, Article 27(1));

(L) The Validation Board "shall deny the validation of a registered bond if" it "is not satisfied, after giving such weight as" it "sees fit to all pertinent circumstances, that the requirements for a validation by" it "has been met."  The Validation Board "shall set forth in writing the reasons for" its decision denying validation (Validation Law, Article 28(1)(2));

(M) The Validation Board must send the registrant by "registered letter" (or some other equivalent method permitting proof of the date of receipt) a notice of the Board's decision denying validation,

## THE RULE 12(B)(6) STANDARD

A court may dismiss a complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). The 50-year-old standard promulgated in *Conley v. Gibson*, 355 U. S. 41 (1957), that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief, has "earned its retirement." *Twombly*, 127 S. Ct. *at* 1964. "The pleader must show through his allegations that it is plausible, rather than merely speculative, that he is entitled to relief." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financial. Services*, 536 F.3d 663, 667-668 (7th Cir. 2008). The complaint in a complex case, such as this case, must demonstrate enough merit on it face to warrant protracted litigation and avert dismissal. *See Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 574 (7th Cir. 2009).

## ARGUMENT

**I.    THE AMENDED COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF ADMITS THAT HE HAS NOT COMPLIED WITH THE VALIDATION PROCEDURES THAT ARE CONDITIONS PRECEDENT FOR SUING IN COURT.**

Before Plaintiff may sue in court, he must have complied with the validation procedures for the Bonds as established by the 1953 Treaty and related legal instruments. Plaintiff admits that he has not done so. Accordingly, the Amended Complaint must be dismissed.

---

the reasons therefor, and "a statement informing him of the legal remedies available to him" (Validation Law, Article 28(3));

(N) "A decision of the Validation Board validating a bond is not subject to any review. In respect of a decision denying validation, the registrant has only the legal remedies specified in" the Validation Law (Validation Law, Article 29).

*Abrey*, 153 F. Supp. at 341-42.

The 1953 Treaty provides in pertinent part in Article II that "No bond . . . shall be enforceable unless and until it shall be validated either by the Board for Validation of German Bonds in the United States established by the Agreement on Validation Procedures, or by the authorities competent for that purpose in the Federal Republic."  4 U.S.T. 885, at Art. II.  Once registered, the Validation Law requires an evidentiary hearing at which the registrant has to establish that the bond was outside of Germany on January 1, 1945; or that the registrant was the lawful acquirer (as defined in Article 38); or that the bond was "restituted" to the registrant after being confiscated prior to May 8, 1945 (V-E Day).  The registrant has the burden of proving that the bond is entitled to be validated.   (Validation Law, Arts. 24 and 41).   Only "where the Validation Board has refused to validate a registrant's bonds" may a bondholder then seek a judicial determination of whether the validation requirements have been met.  *Abrey*, 153 F. Supp at 345; Validation Law, Art. 31 and 33.

In a recent case, *Mortimer Off Shore Servs. v. Fed. Rep. of Germany,* 2007 U.S. Dist. LEXIS 71906, *1 (S.D.N.Y. Sept. 27, 2007) (appeal pending), the court upheld these validation procedures and dismissed a similar complaint.

> Before the bonds can be enforced, the Validation Law requires bondholders to register their bonds with either the German Examining Agency or a Validation Board in the country of offering.  If the bonds are not registered and examined by the appropriate agency, they are deemed invalid and unenforceable.  Accordingly, because the Treaty incorporated the Validation Law by reference, any bonds subject to the Treaty are unenforceable unless and until they are validated by the appropriate agency.

*Mortimer* at 3-4 (citations omitted).   The *Mortimer* court explained that the unequivocal language of the 1953 Treaty states that, "[n]o bond" listed in the Validation Law "[is] enforceable unless and until it shall be validated" either by the Examining Agency in Germany or by the Validation Board in the country of offering.  *Id.* (*citing* 8 U.S.T. 885, at Art. II).

Here Plaintiff not only fails to allege that he has (1) registered his Bonds; (2) followed the administrative validation procedures; and (3) received a written decision refusing to validate his Bonds, he *admits* that he has not.   (*See*, *e.g.*, Amended Comp. ¶ 42(a)).   Accordingly, the Amended Complaint fails to state a claim upon which this Court can grant relief.

The process established by the Validation Law and adopted by the United States in the 1953 Treaty is similar to a process that requires a litigant to exhaust administrative remedies before being permitted access to the courts; it comports with the requirements of due process. *See Abrey*, 153 F. Supp at 345.   Requiring a litigant to exhaust administrative remedies is common.   For example, in Title VII litigation, 42 U.S.C. § 2000e, a prerequisite to litigating a Title VII claim in the district court is that the claimant must first obtain a "right to sue" letter. *See*, *e.g.*, *Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991); *Gooding v. Warner-Lambert Co.*, 744 F.2d 354 (3rd Cir. 1984); *Williams v. Washington Metropolitan Area Transit Authority*, 232 U.S. App. D.C. 251 (D.C. Cir. 1983).

If the failure to exhaust administrative remedies is apparent from the face of the complaint, dismissal for failure to state a claim is properly granted.  *See Jones v. Bock*, 549 U.S. 199 (2007) (The general rule that failure to plead exhaustion of administrative remedies is an affirmative defense not required to be pled, does not apply where an affirmative defense appears on the face of the complaint; such a complaint is subject to dismissal); *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 802 (7th Cir. 2008) (Plaintiff not required to refute defenses in the complaint, however, where allegations in complaint show relief is barred, dismissal is proper).   Plaintiff not only failed to plead that he has complied with required validation procedures, but admitted that he did not comply with the validation requirements. This admission is fatal and Defendants' motion to dismiss should be granted.

13

## II.     ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED.

### A.     The Applicable Statutes Of Limitations Have Expired.

Although the running of the statute of limitations is an affirmative defense, dismissal is appropriate when a plaintiff "pleads [himself] out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citation omitted); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (court is authorized to dismiss claims based on Rule 12(b)(6) when they are "indisputably time-barred"); *Draper v. Pickus*, No. 04 C 8150, 2007 U.S. Dist. LEXIS 18200, at *14 (N.D. Ill. Mar. 15, 2007) (plaintiff "plead[s] himself out of court" by alleging facts that show that suit was time-barred).  This is the case here.

Plaintiff alleges that he was unable to bring his claims until April 15, 1994 when, he pleads, "the United States Securities and Exchange Commission cleared the way for Plaintiff and Class Members, the bondholders, to start the process of redemption of the German Gold Bonds." (Amended Comp. ¶ 93; *see also id.* ¶¶ 53, 87).  However, this allegation is fairly construed to be an admission that Plaintiff could have – and should have – filed suit in 1994.  Assuming, solely for purposes of this joint motion, that this allegation is true, all of Plaintiff's claims were long-since time-barred by 2008, when this suit was filed.[13]

None of the statutes of limitations in Illinois applicable to Plaintiff's common law claims permit a cause of action that accrued in 1994 (at the latest) to be first asserted in 2008:[14]

---

[13]  Based on other allegations in the Amended Complaint, Plaintiff's claims arose in the second and third quarter of the last century, such as in the 1930s "when GERMANY under the Hitler Regime, determined NOT to make any further payments on the BONDS," or in the 1950s during the London Debt Conference.  (Amended Comp. p. 3.)  In reality therefore — and without the above assumption of truth accorded to Plaintiff's unsupported allegation that it was impossible to pursue his claims before 1994 — the limitations periods on Plaintiff's claims expired several decades ago.

[14]  Illinois courts apply forum law to procedural matters, including statutes of limitations.  *See Newell Co. v. Petersen*, 758 N.E.2d 903, 908 (Ill. App. 2001); *Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir.

| Count/ Cause of Action[15] | Statute of Limitations | Source |
|---|---|---|
| Count I & VII: Conspiracy[16] | 5 years | 735 ILCS 5/13-205; *Marx v. Northwestern Memorial Hospital*, No. 04 C 5688, 2007 WL 1280643, at *5 (N.D. Ill. Apr. 30, 2007) |
| Count II: Negligent Misrepresentation | 5 years | 735 ILCS 5/13-205; *Pucci v. Litwin*, 828 F. Supp. 1285, 1299 (N.D. Ill. 1993) |
| Count III: Constructive Fraud | 5 years | 735 ILCS 5/13-205; *Ko v. Eljer Indus., Inc.*, 678 N.E.2d 641, 646 (Ill. App. 1997) |
| Count IV: Fraud | 5 years | 735 ILCS 5/13-205; *Davis v. Wells Fargo Bank*, No. 07 C 2881, 2008 U.S. Dist. LEXIS 31636, at *8 (N.D. Ill. Apr. 17, 2008) |
| Count VI: Wrongful Expropriation/ Taking of Property | 5 years | 735 ILCS 5/13-205; *Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) (tort) |

1977) (forum law statutes of limitations apply "even though the causes of action to which they are applied may [be] governed by the substantive law of another jurisdiction"). Illinois' borrowing statute (735 ILCS 5/13-210) is inapplicable because Plaintiff alleges that he resides in Illinois (Amended Comp. ¶¶ 1, 41). *See LeBlanc v. G.D. Searle & Co.*, 533 N.E.2d 41, 42 (Ill. App. 1988) (Illinois' borrowing statute applies only where none of the parties is an Illinois resident); *Sampson v. Federal Republic of Germany*, 975 F. Supp. 1108, 1122 (N.D. Ill. 1997); *aff'd*, 250 F.3d 1145 (7th Cir. 2001). Thus, this Court cannot apply the limitations periods of Germany, although the claims would be untimely there as well. Indeed, as Plaintiff acknowledges (Amended Comp. ¶ 104), the German Supreme Court (*i.e.*, Germany's highest court of general jurisdiction) upheld a lower German court's ruling that claims based on the bonds at issue here are time-barred. *See Bundesgerichtshof* (German Supreme Court), Oct. 25, 2005, Case No. XI ZR 353/04.

[15] This chart covers Counts I-IV, VI-IX, XII-XIV and XVII-XX. Count V ("piercing the corporate veil/alter ego/respondeat superior or principal/agent liability") is not a cause of action, but is a list of theories by which liability that may be given with respect to one entity (if Plaintiff has a valid cause of action against that entity) may be attributed or extended to another entity that was not directly involved in the actions that are the basis for the first entity's liability. Similarly, Count X ("equitable disgorgement"), Count XI ("constructive trust") and Count XXI ("restitution") are not separate causes of action, but are remedies that may be available to Plaintiff if he otherwise has a legally cognizable claim, and are subject to the limitations period applicable to that claim. *See Partipilo v. Hallman*, 510 N.E.2d 8, 12 (Ill. App. 1987) (right to disgorgement time-barred together with underlying claim for unjust enrichment); *Pucci*, 828 F. Supp. at 1300 ("constructive trust is an equitable remedy, not a cause of action"); *Armstrong v. Guigler*, 673 N.E.2d 290, 291 (Ill. 1996) (restitution is a remedy, not a cause of action, and follows the limitations period applicable to the claim for which restitution is available). Since each count must set forth a separate cause of action, and Counts V, X, XI and XXI fail to do so, this Court should dismiss these Counts for failure to state a claim upon which relief can be granted. *See, e.g., Pucci*, 828 F. Supp. at 1300 (dismissing supposed "claim" for constructive trust under Rule 12(b)(6) because constructive trust is not an independent cause of action). For Counts XV-XVI (Plaintiff's document-related claims), see *infra* at V. B and C.

[16] Plaintiffs claim for "conspiracy to defraud" is the subject of both Count I and Count VII.

| Count/ Cause of Action[15] | Statute of Limitations | Source |
|---|---|---|
| Count VIII: Negligence/ Negligent Supervision | 5 years | 735 ILCS 5/13-205; *Superior Bank FSB v. Golding*, 605 N.E.2d 514, 515-16 (Ill. 1992) |
| Count IX: Unjust Enrichment | 5 years | 735 ILCS 5/13-205; *Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co.*, No. 05 C 5749, 2007 U.S. Dist. LEXIS 23898, at *47, n.13 (N.D. Ill. Mar. 30, 2007) |
| Count XII: Conversion | 5 years | 735 ILCS 5/13-205; *Walker v. N. Trust Co.*, No. 06 C 4901, 2008 U.S. Dist. LEXIS 3163, at *2, *5 (N.D. Ill. Apr. 17, 2008) |
| Count XIII: Accounting | 5 years | 735 ILCS 5/13-205; *Greenberg v. Broad Capital Assocs., Inc.*, No. 02 C 6116, 2002 U.S. Dist. LEXIS 19437, at *8 (N.D. Ill. Oct. 8, 2002) |
| Count XIV: Spoliation of Evidence | 5 years | 735 ILCS 5/13-205; *U.S. Aviation Underwriters v. Precision Airmotive Co.*, No. 93 C 5776, 1996 U.S. Dist. LEXIS 9236, at *6 (N.D. Ill. June 28, 1996) |
| Count XVII: Breach of Contract | 10 years | 735 ILCS 5/13-206; *Lichfield Cmty. Unit Sch. Dist. v. Specialty Waste Services*, 757 N.E.2d 641, 644 (Ill. App. 2001) |
| Count XVIII: Breach of Fiduciary Duty[17] | 5 years | 735 ILCS 5/13-205; *Draper*, 2007 U.S. Dist. LEXIS 18200, at *11-12 |
| Count XIX: Default on Bonds | 10 years | 735 ILCS 5/13-206; *People v. Hellmuth Obata & Kassabaum, Inc.*, 500 N.E.2d 34, 39 (Ill. 1986) |
| Count XX: Promissory Estoppel[18] | 5 years | 735 ILCS 5/13-205; *Molina v. First Line Solutions LLC*, 566 F. Supp. 2d 770, 783 (N.D. Ill. 2007) |

---

[17]   In addition to breach of fiduciary duty, Count XVIII also asserts a claim based on the "implied covenant of good faith and fair dealing."  Under Illinois law, however, this covenant "is not an independent source of contractual duties but rather is a tool for interpreting express contractual terms." *Zeidler v. A & W Restaurants, Inc.*, No. 99 C 2591, 2000 WL 122616, at *2 (N.D. Ill. Jan. 25, 2000).  As with Counts V, X, XI and XXI, therefore, Count XVIII should be dismissed to the extent it asserts the implied covenant of good faith and fair dealing as a cause of action. *Id.*  ("The [covenant] cannot properly be read as imposing additional limitations on A & W's ability to terminate beyond those stated in the agreement. For this reason, we dismiss Count 3 [the claim based on the covenant] for failure to state a claim.").

Plaintiff's federal "claims" also were time-barred in 2008 when this suit was brought. Specifically, claims based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, based on Plaintiff's allegation that Defendants have "engaged in racketeering activities and/or wire and mail fraud" (Amended Comp. ¶¶ 40(i), 44(i)), are subject to a 4-year statute of limitations. *See Agency Holdings Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 149, 156, (1987) (stating that "the large majority of civil RICO complaints use mail fraud, wire fraud or securities fraud as the required predicate offenses," and applying 4-year limitations period to all civil RICO claims); *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1338 (7th Cir. 1997) (accord). The 4-year limitations period applies also to predicate offenses falling under the National Stolen Property Act, 18 U.S.C. § 2314, (Amended Comp. ¶¶ 40(l), 44(l)), which prohibits the interstate transportation of stolen securities, among other things. *See Gas Tech. Inst. v. Rehmat*, No. 05 C 2712, 2006 WL 3743576, at *29 (N.D. Ill. Dec. 15, 2006) (applying 4-year statute of limitations to RICO claims based on, *inter alia*, 18 U.S.C. § 2314).[19]

Where a federal action contains no statute of limitations, it is the standard practice to borrow the statute of limitations applicable to the most analogous cause of action under the law of the state in which the federal court sits. *See, e.g., North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) ("Since 1830, state statutes have repeatedly supplied the periods of limitation for

---

[18]   In addition to promissory estoppel, <u>Count XX</u> also asserts a claim for "equitable estoppel." Equitable estoppel, however, is not a cause of action, but is a tolling theory that addresses the circumstances in which a defendant is barred from relying on the statute of limitations. *See, e.g., Nelson v. Price*, 115 F. Supp. 2d 925, 930 (N.D. Ill. 2000); *see also infra* at II.B.2. As with Counts V, X, XI, XXI and XVIII, therefore, Count XX should be dismissed to the extent it asserts equitable estoppel as a cause of action.

[19]   Plaintiff also refers to the Holocaust Victims Redress Act, Pub.L. No. 105-158, 112 Stat. 15 (1998) (Amended Comp. ¶¶ 40(l), 44(l)), but this law does not create a private right of action. *See Orkin v. Taylor,* 487 F.3d 734, 738-41 (9th Cir. 2007). Similarly mistaken is Plaintiff's assertion that Defendants' conduct somehow constituted a "violation of 28 U.S.C.A. 1605(a)" (Amended Comp. ¶¶ 40(k), 44(k)), as this is a section of the Foreign Sovereign Immunities Act, which is a jurisdictional statute and does not create a cause of action. *See, e.g., Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1214 (11th Cir. 2005) (analyzing commercial activity exception under 28 U.S.C. 1605(a)(2)).

federal causes of action when federal legislation made no provision ….") (internal citations omitted); 19 Charles A. Wright, *et al., Fed. Prac. & Proc.* § 4519, at 595 (1996).  Under that rule, Plaintiff's international law claims are long-since barred regardless of which analogous Illinois limitations period is applied (see the above chart).[20]

Specifically, as regards Plaintiff's allegation that Defendants violated the "1899 and 1907 Hague Convention and Other Treaties & Jus Cogens" (Amended Comp. ¶¶ 40(l), 44(l)) and "European Convention on Human Rights Article 1, Protocol 1" (Amended Comp. ¶¶ 40(m), 44(m)), it is well settled that, even if international law does not contain an explicit limitations period, such claims lapse through the passage of time.  *See, e.g., Sampson*, 975 F. Supp. at 1108 (claim for compensation for illegal imprisonment in Nazi concentration camp barred by statute of limitations); *In re African-Am. Slave Descendants Litig.,* 304 F. Supp. 2d 1027, 1074-75 (N.D. Ill. 2004) (claims for reparations on behalf of former slaves were time-barred, noting that "statutes of limitation serve to promote justice for litigants which cannot be disregarded out of vague sympathy for plaintiffs and their claims"); *Forti v. Suarez-Mason,* 672 F. Supp. 1531 (N.D. Cal. 1987) (applying California statute of limitations to civil claims against a former Argentine general for alleged acts of torture, murder and prolonged detention); *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 462 (D.N.J. 1999) (WWII-era forced labor claims dismissed as untimely).   In addition, Plaintiff does not show how such international law norms would be applicable here, including why they would be binding upon the private bank defendants (rather

---

[20]   *See, e.g., Handel v. Artukovic*, 601 F. Supp. 1421, 1431 (C.D. Cal. 1985) (dismissing plaintiff's international law claims as time-barred because "the parties have not brought to the Court's attention any civil statute of limitations, either in domestic law or in an international forum, that comes close to the [number of years] involved here.")

than states and other public international entities), or why a European treaty, such as the European Convention on Human Rights, would apply in a United States court.

Even if a statute of limitations derived from federal law is considered to be more fitting for Plaintiff's international law claims, they remain time-barred. There is no federal statute with a limitations period longer than the ten years established by, for example, the Torture Victims Protection Act (TVPA). *See* 28 U.S.C § 1350, note, § 2(c).

**B.      None Of Plaintiff's Tolling Theories Can Revive His Time-Barred Claims.**

None of Plaintiff's various tolling theories has any merit here.[21]

**1.      The Discovery Rule Does Not Revive Plaintiff's Claims.**

The Amended Complaint's allegations of "discoveries" made by Plaintiff (Amended Comp. p. 8, ¶¶ 43, 104-105) have no merit because Plaintiff, or his predecessor in right, certainly knew of the alleged injury when it occurred. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (discovery rule postpones beginning of limitations period until injury is known, or through reasonable diligence should have been known).[22] The alleged cessation of payments on the Bonds from the 1930s onward and Plaintiff's related claims such as wrongful expropriation or conversion are not the kind of acts of which Plaintiff or his predecessor could have been unaware.

---

[21]  Plaintiff also sets forth the novel theory that "the acts complained of have no statute of limitations." (Amended Comp. ¶ 104.) There is, however, no support for such theory, as is evidenced by the fact that, as shown above, Illinois or federal law applies a limitations period to each of the causes of action asserted in the Amended Complaint. Plaintiff does not even posit any explanation why a claim for alleged failure to pay on financial bonds should not be subject to any limitations period. Indeed, even claims for heinous acts such as torture and extra-judicial killing under the TVPA, are governed by a 10-year limitations period. *See* 28 U.S.C. § 1350, note, § 2(c).

[22]  To the extent Plaintiff did not himself hold the Bonds at the time the injury occurred, the relevant inquiry is what his predecessor in right with respect to the bonds knew or should have known. *See African-Am. Slave Descendants Litig.*, 304 F. Supp. 2d at 1070-71.

In any event, according to his own pleading, Plaintiff knew of his injury at the latest in 1994 when, the Amended Complaint alleges, the U.S. Securities and Exchange Commission "cleared the way" for Plaintiff's suit.  (Amended Comp. ¶ 93.)  Indeed, Plaintiff alleges that he has sought to redeem his Bonds since at least 1994.  (Amended Comp. ¶ 102.)  This action was thus long since time-barred when it was filed in 2008.  *See The Nat'l Black Expo v. Clear Channel Broad.*, No. 03 C 2751, 2007 U.S. Dist. LEXIS 9783, at *15-16 (N.D. Ill. Feb. 8, 2007) (discovery rule could not prevent limitations from running as of 1992 when "[b]y plaintiff's own complaint, [he] knew that [he] was injured in 1992"); *Nelson*, 115 F. Supp. at 930 (denying application of discovery rule where complaint itself showed that plaintiff was aware of injury).  In addition, Plaintiff acknowledges that numerous other bondholders have asserted claims in purportedly similar situations as early as in the 1980s and 1990s.  (Amended Comp. ¶¶ 42, 233.)  Plaintiff offers no explanation why he would not have learned about his injury as the same time as those other bondholders did.

## 2. The Fraudulent Concealment Doctrine Does Not Revive Plaintiff's Claims.

The fraudulent concealment doctrine does not apply to Plaintiff's claims because the Amended Complaint's conclusory allegations fail to identify the supposed "fraud," much less the circumstances under which it supposedly occurred and which of the Defendants purportedly committed it.  *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (fraudulent concealment doctrine, also known as equitable estoppel doctrine, requires details of fraud to be pled with particularity).  "A complaint should distinctly state what the discovered fraud actually was and when the plaintiff discovered it, so that the Court may evaluate whether he could have discovered it through the exercise of due diligence*." Greer v. Bank One*, No. 1 C 7352, 2002 U.S. Dist. LEXIS 13715, at *8 (N.D. Ill. July 23, 2002) (citations

omitted).  Further, a complaint must demonstrate that the defendant "made misrepresentations or performed acts which were known to be false, with the intent to deceive plaintiff, and upon which plaintiff detrimentally relied," *Foster v. Plaut*, 625 N.E.2d 198, 203 (Ill. App. 1993), and that those misrepresentations were "above and beyond the wrongdoing upon which the plaintiff's claim is founded."  *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1174 (7th Cir. 1999).  The Amended Complaint does not satisfy any of these requirements.

And, as noted above at II.B.1, there is no explanation why Plaintiff could not have filed this action in the past fourteen years, even though by Plaintiff's own admission, he was aware of the alleged claims no later than 1994.  (Amended Comp. ¶¶ 93, 102.)

### 3. Plaintiff's Claims Do Not Satisfy The Continuing Violation Doctrine.

The allegation that the Defendants engaged in "continuing" misconduct — such as by failing to disgorge their profits or to compensate Plaintiff — fails to distinguish between alleged continuing *conduct* and alleged continuing *damage*.  Continuing damage does not trigger the continuing violation doctrine; only continuing conduct does.  *See Diliberti v. U.S.*, 817 F.2d 1259, 1264 (7th Cir. 1987) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.") (citation omitted).  Applying the continuing violation doctrine whenever there has been a failure to acknowledge liability *sua sponte* before suit is filed would effectively immortalize every disputed claim.  *See Singletary v. Cont'l Ill. Nat'l Bank*, 9 F.3d 1236, 1241 (7th Cir. 1993) (statute of limitations cannot be tolled based on the denial of liability or a refusal to cooperate in making the plaintiff's case").[23]

---

[23]  *See also Schultz v. Texaco, Inc.,* 127 F. Supp. 2d 443, 447 (S.D.N.Y. 2001) (noting that if the rule were otherwise, no claim would ever be time-barred); *Fitzgerald v. Seamans,* 553 F.2d 220, 230 (D.C. Cir. 1977) ("[T]he mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule.").

Directly on point is *African-Am. Slave Descendants Litig.*, 304 F. Supp. 2d at 771-72, where the plaintiffs brought a claim for an accounting for their ancestors' slave labor and argued that the banks' failure to provide such accounting constituted a continuing violation that tolled the centuries-old claim for reparations. The court rejected this argument, noting that the underlying injury concerned the denial of payment for the forced labor. The alleged failure to provide an accounting, the court held, was not new unlawful conduct that could operate to toll the limitations period. *Id.*

Indeed, the difficulty in reconstructing relevant information decades after the events in issue is a fundamental reason for statutes of limitations, not a justification for ignoring them. *See Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49, 64 S.Ct. 582, 586 (1944) (statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared").

### 4. The Equitable Tolling Doctrine Does Not Revive Plaintiff's Claims.

The equitable tolling doctrine allows a plaintiff to avoid the bar of a statute of limitations if, despite "all due diligence," he is unable to obtain vital information bearing on the "existence of his claim." *Cada,* 920 F.2d at 451 (refusing to apply equitable tolling doctrine). However, because the doctrine conflicts with the basic objective of repose underlying a statute of limitations, *see Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997), "there is continuing uncertainty whether the doctrine of equitable tolling exists in Illinois." *Bontkowski*, 305 F.3d at 762.

Even if equitable tolling exists in Illinois, it does not apply to this case. Rather than showing that he applied all due diligence, Plaintiff does not even allege that he made any reasonable investigations or inquiries with respect to his claims. *See Nelson*, 115 F. Supp. 2d at

930 (denying equitable tolling where plaintiffs failed to allege that they reasonably investigated the facts underlying their claims).

Further, as shown above at II.B.1, Plaintiff (or his predecessor) knew of the alleged injury for decades, and Plaintiff has conceded that he knew of the existence of his claims no later than 1994. (Amended Comp. ¶¶ 93, 102.) But despite such knowledge, Plaintiff waited until 2008 to bring this suit. There is no justification for equitable tolling here. *See African-Am. Slave Descendants Litig.*, 304 F. Supp. 2d at 774 (denying equitable tolling because plaintiffs and their ancestors knew the relevant circumstances pertaining to the existence of their claims long before the expiration of the statutes of limitations yet failed to bring suit earlier).

**C.      Reviving Plaintiff's Claim Would Violate Defendants' Right To Due Process.**

Plaintiff's claims relate to Bonds allegedly issued almost a century ago and to a validation scheme established more than half a century ago. Requiring Defendants to defend against Plaintiff's decades-old claims would deprive them of their constitutional rights and would contravene the very purpose of a statute of limitations. The Supreme Court has repeatedly espoused the fundamental principle that

> Statutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' *Wood v. Carpenter*, 101 U.S. 135, 139 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.' *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944).

*United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356-57 (1979). As the Supreme Court explained in *Stogner v. California*, 539 U.S. 607, 615, 123 S.Ct. 2446, 2452 (2003), the purpose behind limitation periods is that "no quantum of evidence" would be sufficient to substantiate a claim due to concerns that "the passage of time has eroded memories or made witnesses or other evidence unavailable." That is the precise concern presented by the present

action, where the claims arose more than a half century ago.  *See also Klehr*, 521 U.S. at 187,

117 S.Ct. at 1989 (tolling a limitations period indefinitely conflicts with a statute of limitation's

basic objective of repose).

### III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE IT FAILS TO MEET THE PLEADING REQUIREMENTS OF FEDERAL RULES OF CIVIL PROCEDURE 8(A) AND 9(B). [24]

Plaintiff does not allege the most fundamental facts regarding his case, including: (1)

what bonds he owns; (2) how he came to own those bonds; (3) how he validated the bonds; (4)

which particular Defendant, if any, serves as the paying or redemption agent on each bond; (5)

when and how he presented a specific bond to each Defendant; and (6) what each Defendant said

and did to defraud him.  Whether judged under the particularity requirement of Fed. R. Civ. P.

Rule 9(b) applicable to fraud or the less stringent general pleading standards of Rule 8(a), such a

nebulous pleading is inadequate.

### A.   Because Plaintiff Ties Every Aspect of the Amended Complaint to Allegations of Fraud, the Entire Complaint Must Meet the Particularity Standards of Rule 9(b).

Because Plaintiff's claims are alleged to be based on a "course of fraudulent conduct,"

they must be pled with particularity under Rule 9(b), even if the causes of action alleged "are not

by definition fraudulent torts."  *See, e.g., Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d

502, 507 (7th Cir. 2007); *Zions First Nat. Bank v. Paul Green*, 2007 WL 4109125, *2-*3 (N. D.

Ill. 2007).  Counts I, III and IV are labeled as claims for "conspiracy to defraud," "constructive

fraud," and "fraud" respectively.  Counts II, V-XII, and XV explicitly allege fraud or a scheme to

defraud.  (*See, e.g.*, Amended Comp. ¶¶ 107, 121-124, 138, 140, 182, 185, 189, 195, 199, 207,

---

[24]   Defendants reserve their rights, pending resolution of this motion, to move to dismiss the Amended Complaint for failure to satisfy the requirements of Rules 8(a) and 9(b) as to each individual defendant.

213, 230, 217, 271, 283).[25]   The remaining counts[26] (XIII, XVII-XX) are based on one or more

Defendants' alleged failure to redeem bonds (Amended Comp. ¶¶ 220, 263, 268, 273, 282, 287),

and Plaintiff has explicitly tied these claims to "the Scheme" to defraud by alleging that the

Defendant's "default on payment of the bonds" was part of their "active participation" in a

conspiracy to defraud Plaintiff.  (Amended Comp. ¶ 109; *see also* Amended Comp. ¶¶ 43, 271,

283).

To comply with Rule 9(b), Plaintiff must allege "the who, what, where, when, and how of

the allegedly fraudulent conduct so that the defendant can adequately form a response to the

fraud allegation."  *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F. 3d 601, 605

(7th Cir. 2005).  The Amended Complaint does not meet that standard as it fails to allege to

which Defendant any allegation pertains, what action a Defendant took, and to whom that action

was directed. (Amended Comp. ¶¶ 170-172).

### B.    For the Vast Majority of the Complaint, Plaintiff Concedes That He Has Not Satisfied Rule 9(b).

Plaintiff concedes that "the general rule is that fraud must be plead with particularity as to

each Defendant."  (Amended Comp. ¶¶ 170-172).   Nonetheless, he admits that he has only

attempted to state fraud with particularity as to one of his twenty-one Counts for two of the

twenty-four Defendants.  *Id.*  Even the allegations against those two Defendants fail to meet the

requirements of Rule 9(b), as described below.  As to the balance of his complaint, Plaintiff

---

[25]   Counts XIV and XVI purport to state claims based on the refusal to produce or destruction of documents. Such claims are alleged to be an integral part of the scheme (*see, e.g.*, *Amended Comp.* ¶ 238) to defraud Plaintiff and, in any event, fail to state a claim as set forth *infra* at V. B and C.

[26]   Count V (piercing the corporate veil); Count X (equitable disgorgement); Count XI (constructive trust); and Count XXI (restitution) are not stand-alone causes of action, as set forth *infra* at V.A, and should be dismissed.

concedes that he ignores the heightened pleading standard and he "respectfully request[s] the Court to recognize the exceptions to the general rule." (Amended Comp. ¶ 170).

There are no "exceptions to the general rule" and therefore Plaintiff's concession is fatal to his complaint.[27]  Rule 9(b), by its own terms, applies to "all averments of fraud or mistake." Plaintiff cannot escape that burden by casting his amorphous and baseless allegations against many defendants.  Because Plaintiff fails to allege "who" is relevant to every allegation in the Amended Complaint, "what" constituted the allegedly fraudulent conduct, and "where, when, and how" it took place, the Amended Complaint must be dismissed.

### C.  Plaintiff Relies Extensively on Impermissible Group Pleading, And Does Not Allege Which Defendant Took What Relevant Action and Which Facts, If Any, Relate to Him.

Plaintiff does not identify the "who" in any of his allegations.  The vast majority of allegations are directed only at "DEFENDANTS" as a whole.  (*See*, *e.g.*, Amended Comp. ¶¶ 69, 75, 92, 101, 246-287).  Under Rule 9(b), "[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient."  *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).  Even under the more liberal pleading standards of Rule 8(a), a plaintiff fails to state a cause of action against multiple defendants when it "lump[s] them together . . . into an undifferentiated mass" and alleges that they all have engaged in wrongdoing. *In re Providian Financial Corp. ERISA Litigation*, No. C-01-05027 CRB, 2002 WL 31785044,

---

[27]  The Court cannot excuse Plaintiff from the requirements of Rule 9(b) because Plaintiff complains that it would be "overwhelming" to plead every action against every class member by each of the 24 Defendants he has dragged into this suit.  *(See* Amended Comp. ¶ 171).  Plaintiff need not allege every act of misconduct by every Defendant against every class member in order to state a claim; what he must do is allege with particularity that each Defendant directed some intentional misrepresentation or action against him.  Similarly, Plaintiff's inability to plead any such misrepresentations by the Defendants directed to him has nothing to do with his alleged inability to access evidence or documents.  *(See* Amended Comp. ¶ 172).  Plaintiff knows whether or not any Defendant made an intentional misrepresentation to him or refused to honor his bonds.  The only possible explanation for Plaintiff's failure to identify any such conduct—even after re-pleading his claims—is that it never happened.

at *1 (N.D. Cal. Nov. 14, 2002).   Because Plaintiff directs nearly his entire claim at the "undifferentiated mass" of "the DEFENDANTS," the Amended Complaint must be dismissed.

Not only does Plaintiff impermissibly fail to allege which individual employee or agent of a Defendant was involved in any particular allegation, he fails to allege whether he was even personally involved.   Instead, he obscures nearly every fact by alleging that an unknown defendant took the action against "PLAINTIFF or CLASS MEMBERS."   (*See, e.g.*, Amended Comp. ¶¶ 26, 100, 105, 117, 120, 163).[28]

Finally, Plaintiff fails to allege what each Defendant allegedly did.   Although Plaintiff generally alleges that Defendants are liable to him because they either refused to redeem unidentified bonds or were part of a "scheme" or "conspiracy" to defraud him, he never alleges that a single specific bond was presented for payment to any specific Defendant.   Indeed, Plaintiff relies almost entirely on conclusory, compound, alternative allegations that lack any detail, alleging, among other things, that:

> DEFENDANTS, HAVE including but not limited to, among other things ...[e]ngaged in commission of fraud and/or conspiracy to commit fraud ..." (*id*. ¶ 26(h)); and

> DEFENDANTS knowingly made, or continue to make false and/or misleading statements, and/or continue to make fraudulent misrepresentations, or make omissions of objective facts, in connection with the bonds, as to the lack of value or validity of the bonds (false or misleading statements such as, among others, the bonds or claims are "worthless" or "cannot be paid")" (*id*. ¶ 112).

---

[28]   To state a claim against each Defendant, Plaintiff must allege that he "personally [has] been injured, not that injury has been suffered by other, unidentified members of the class."   *Warth v. Seldin*, 422 U.S. 490, 502 (1975).   Plaintiff's failure to allege that he, rather than the putative class members, were injured means he does not have standing to bring these claims. *See, e.g., Ramos v. Patrician Equities Corp.* 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.").   For the same reason, the declaration of non-party Elfriede Korber is irrelevant to Plaintiff's attempt to state a cause of action.

Similarly, Plaintiff's assertions that he had an interest in bonds that the Defendants wrongfully refused to redeem are supported only by conclusions:

> DEFENDANTS, by their express or implied agreements, and stated or implied intentions, are liable to pay for the bonds; (*id.* ¶ 69);

> PLAINTIFF or CLASS MEMBERS, have equitable, legal, and/or beneficial rights, control and interests in the German Gold Bearer Bonds, including but not limited to, YOUNG, DAWES, & RHEINELBE UNION bonds, and other legitimate German Gold Bearer Bonds, such as FREE STATE OF BAVARIA, or UNITED STEEL WORKS CORPORATION (*id.* ¶ 100); and

> DEFENDANTS have never paid for the full value of their obligation, to Plaintiff and Class Members and bondholders, for their German Gold Bonds ( *id.* ¶ 93).

Because it is not enough under Rule 9(b) for Plaintiff to give "the gist of" what happened, all of these allegations are inadequate. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Consistent with these vague allegations, the scope and nature of the "scheme" that Plaintiff relies on to state his causes of action is completely undefined. Plaintiff gives no factual detail regarding how the alleged scheme operated, which Defendants were involved, or what role each Defendant played. Instead of providing that detail, Plaintiff attempts to plead his cause of action through the vaguest of conclusions:

> "Defendants, were engaged in a conspiracy and Scheme to Defraud, Plaintiff, Class Members, and/or bondholders in general, and acted negligently and/or fraudulently, in connection with the bonds, and acted with bad faith and/or breached their fiduciary duties, and/or failed, or without justification, refused to redeem or pay the bonds ...."

(Amended Comp. ¶ 43; *see also*, *e.g.*, *id.* ¶¶ 26(g), 108).

Plaintiff's bare allegations of a "conspiracy" or "scheme" fail to meet the particularity requirement of Rule 9(b) or even the liberal notice pleading standards of Rule 8(a). The Seventh Circuit upheld the dismissal of a complaint that "tells us nothing about the nature of the purported agreement to defraud the plaintiffs," such as when it was made and who was involved.

*Borsellino*, 477 F.3d at 507.  Similarly, in *Ryan v. Mary Immaculate Queen Center*, 188 F. 3d 857, 860 (7th Cir. 1999), the Seventh Circuit stated that "a conspiracy is an agreement," and rejected a pleading that contained "no indication of when an agreement ... was formed, what its terms were ... or what [each defendants'] role was" and thus where the "form and scope of the conspiracy are thus almost entirely unknown." *Id*. at 860.  Finding that such "a bare allegation of conspiracy" did not satisfy Rule 8(a), the court upheld the dismissal of the complaint. *Id*. Because Plaintiff has not alleged sufficient facts to support his conclusory allegations of a scheme to defraud under Rule 8(a), much less Rule 9(b), he cannot rely on that scheme to support the myriad causes of action alleged in the Amended Complaint.

### D. Plaintiff's Attempt to State a Single Claim Against Deutsche Bundesbank and Commerzbank with Particularity Fails.

The only portion of a claim that Plaintiff purports to plead with particularly – his claim for fraud against Deutsche Bundesbank and Commerzbank also fails to satisfy Rule 9(b). Plaintiff alleges that "on or about February/March 2006," "Plaintiffs, by themselves, or through their representatives," contacted Deutsche Bundesbank about redeeming German gold bonds "such as Dawes, Young, or Reheinelbe Union, or other legitimate bonds." (Amended Comp. 147).  The Amended Complaint alleges that in response, "Dr. Schmidt and/or Mr. Gierenstein" represented "verbally and/or in writing by post letter, fax or email" that the Bonds were worthless and stated that Commerzbank AG was "the entity that dealt with claims in connection with the bonds...." (Amended Comp. ¶¶ 148, 150).  As to Commerzbank, Plaintiff alleges that "on or about March 2006," "Herman Stahl and/or Julius Kimmle " similarly told "Plaintiff and Class members" that the Bonds were not valid "verbally and/or in writing by post letter, fax or email." (*Id.* ¶ 160-161.)

These allegations also fail to satisfy the standards of Rule 9(b) for multiple reasons. First, Plaintiff does not allege that any of the allegations relate to him rather than other members of the class ("Plaintiffs" and "Plaintiff or class members").  It is Plaintiff and Plaintiff alone who must establish a claim against Deutsche Bundesbank and Commerzbank.  Second, Plaintiff does not allege which of "the bonds" he or a member of the class sought to redeem.  Third, Plaintiff fails to allege who made the alleged misrepresentations ("Dr. Schmidt and/or Mr. Gierenstein" or "Herman Stahl and/or Julius Kimmle") or how it was communicated ("verbally and/or in writing by post letter, fax or email").

Finally, Plaintiff's own pleading makes it clear that these alleged statements asserting that the Bonds are not valid were not false.  Plaintiff has affirmatively alleged that he and the putative class members refused to have their Bonds validated as required by the Validation Law. (Amended Comp. ¶¶ 42(a), 73).  As described above, before a bondholder is entitled to redeem any Dawes, Young or Rheinelbe bonds, he or she must first have them validated.  (*See supra* Section I.)  Because Plaintiff did not have his bonds validated, any statements that those Bonds were worthless or invalid are true.  By admitting that the Bonds at issue were not validated, Plaintiff has pled himself out of court.  *See Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006) ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits").

    **E.**    **Although Rule 9(b) Applies to the Entire Amended Complaint, the Amended Complaint Also Fails to Meet the Requirements of Rule 8(a).**

Whether or not Rule 9(b) applies to the Amended Complaint, the Amended Complaint fails to provide adequate notice of the claims against the Defendants under even the more relaxed standard of Rule 8(a).  Although Rule 8(a) permits notice pleading, a court may dismiss an action pursuant to Rule 12(b)(6), if a complaint does not plead "enough facts to state a claim to relief

that is plausible on its face."  A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965, 1974,(2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. Ill. 2008). "The pleader must show through his allegations that it is plausible, rather than merely speculative, that he is entitled to relief."  *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 667-668 (7th Cir. 2008) (quotation omitted).  Rule 8(a) "still requires a showing, rather than a blanket assertion, of entitlement to relief."  *Agrawal v. Pallmeyer*, No 1:07-cv-4283, 2008 WL 450818, *1 (N.D. Ill Feb 15, 008).  The complaint in a complex case, such as this case, must demonstrate enough merit on it face to warrant protracted litigation and avert dismissal.  *Stark Trading* at 574.  As set forth above, the Amended Complaint fails to meet this standard as well.

Because Plaintiff has failed to provide any fairly factual detail notifying Defendants of the broad outline of the scheme to defraud or how it worked, the Amended Complaint must be dismissed for this reason alone.

## IV.   PLAINTIFF'S CLAIMS ARE NON-JUDICIABLE UNDER THE POLITICAL QUESTION DOCTRINE.

To the extent Plaintiff alleges that the validation scheme established by the 1953 Treaty is "unconstitutional," "invalid" or that there otherwise is "no necessity or obligation" for him to follow those validation requirements (Amended Comp. pp. 5, 6-7; *see also*, *e.g.*, *id.* ¶¶ 65-68), his claims should be dismissed under the political question doctrine, *see generally Baker v. Carr*, 369 U.S. 186, 192 (1962), because they would require the court to resolve a question committed to the political branches.  *See*, *e.g.*, *Kashani v. Nelson*, 793 F.2d 818, 827-28 (7th Cir. 1986) (affirming dismissal of complaint based on political question doctrine, among other grounds);

*African Am. Slave Descendants Litig.*, 304 F. Supp. 2d at 1053 (relying on political question doctrine as "independent basis for dismissal").

The judiciary is not the appropriate forum for resolving issues involving foreign policy. *See Flynn v. Shultz*, 748 F.2d 1186, 1190 (7th Cir. 1984) ("It is well settled that 'the conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative — 'the political' — departments of the government and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decisions.'") (*quoting Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 386 (2000) ("the foreign policy of the United States [is] much more the province of the Executive Branch and Congress than of [the] Court") (citations omitted).[29] Courts routinely have dismissed cases that involve second-guessing foreign policy determinations. *See, e.g., In re African Am. Slave Descendants Litig.*, 304 F. Supp. 2d 1027 (N.D. Ill. 2004); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424 (D.N.J. 1999); *In re Austrian & German Holocaust Litig.*, 250 F.3d 156 (2d Cir. 2001); *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum*, 577 F.2d 1196 (5th Cir. 1978); *Kelberine v. Societe Internationale*, 363 F.2d 989 (D.C. Cir. 1966).[30] Here, Plaintiff is attempting to do exactly that; his attack on the terms of the 1953 Treaty is an attempt to second-guess foreign policy decisions made by the political branches.

---

[29] *See, also, Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111, 68 S.Ct. 431, 436 (1948) (foreign relations involves "decisions of a kind for which the judiciary has neither the aptitude, facilities nor responsibility and ha[s] long been held to belong in the domain of political power not subject to judicial intrusion or inquiry") (citations omitted); *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp. 2d 1068, 1077 (C.D. Cal. 2007) ("The Constitution allocates 'the foreign relations power' to the federal government and vests the authority to decide what the nation's foreign policy should be in the executive branch.") *(citing Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413-14, 123 S.Ct. 2374, 2386 (2003).

[30] As shown by each of the cases cited here, the political question doctrine is not restricted to claims against states or other public entities and has been applied frequently to claims against private defendants, such as the Defendants.

The political branches — in exercising the foreign policy responsibilities assigned to them — have already addressed the issue of when the Bonds are enforceable.  Specifically, as shown above, the United States long ago entered into a treaty and accompanying agreements that state that "[n]o bond … shall be enforceable unless and until it shall be validated either by the Board of Validation of German Bonds in the United States established by the Agreement on Validation Procedures, or by the authorities competent for that purpose in the Federal Republic." 4 U.S.T. 885, at Art. II.

The goal of the 1953 Treaty is "the settlement of Germany's external [debt] obligations," *id.*, at Preamble, and it is axiomatic that such "settlement of foreign debts falls squarely within the ambit of the President's and Congress's constitutional authority." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) (*citing* U.S. Const., Art. I, § 8, Art. II, § 2, and *Barclays Bank v. Franchise Tax Bd. of Calif.*, 512 U.S. 298, 325-29 (1994)); *see also 767 Third Ave. Assocs. v. Consulate General of Socialist Fed. of Yugoslavia*, 218 F.3d 152, 160 (2d Cir. 2000) (judicial determination of foreign debt issue "would directly interfere with executive foreign policy prerogative") (citation and internal quotation marks omitted); *Lloyd-El v. U.S.*, No. 2:05-CV-705, 2002 WL 33096220, at *4 (W.D. Pa. Dec. 19, 2002) ("The federal courts do not have the authority or the means to determine the equitable distribution of the public debt of a foreign state.").  This action thus presents an issue that is beyond the power of the courts (and instead is assigned to "a coordinate [*i.e.*, political] branch of the government"), and presents a "political decision already made" by that branch of the government, *see Baker*, 369 U.S. at 217, 82 S.Ct. at 710 (factors 4 and 5 of the 6 separate factors for finding that the judiciary should not determine a given question).

Although Plaintiff may disagree with the U.S. foreign policy decision made in the 1950s, he cannot now — more than half a century later — through litigation second-guess that policy, or turn back the clock and seek the adjudication of claims that the political branches resolved many decades ago as part of foreign relations.  Plaintiff cannot through litigation "use an iron fist where the President … consistently chose[] kid gloves."  *Garamendi*, 539 U.S. at 399, 123 S.Ct. at 2378.  Directly on point is again *African Am. Slave Descendants Litig.*, 304 F. Supp. 2d at 1053-1063, where the court dismissed as non-justiciable claims for reparations for forced labor brought by the descendants of former slaves.  Reasoning that the reparations question was "commit[ted] to the Representative Branches," the court found the plaintiffs' claims to be precluded by the political question doctrine, even where those branches decided after the Civil War not to provide reparations to former slaves.  *Id.* at 1061.

## V.      DISMISSAL OF CERTAIN SPECIFIC COUNTS.

### A.      Counts X , XI, and XXI Are Not Independent Causes of Action.

Count XI ("Constructive Trust") is not an independent cause of action; rather, it is an equitable remedy.  *Scholes v. Ames*, 850 F. Supp. at 713; *A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 477 N.E.2d 1326, 1331-32 (Ill. App. 1985).  The same can be said for Count X ("Equitable Disgorgement") and Count XXI ("Restitution"), which are equitable remedies as well, and not independent causes of action.  Hence, Counts X, XI, and XXI must be dismissed for failure to state a claim on which relief can be granted.

### B.      Plaintiff Has Failed to State a Valid Claim for Spoliation of Evidence.

Count XIV ("Spoliation of Evidence") seeks damages for documents allegedly destroyed or concealed by all Defendants. Plaintiff alleges that Defendants "**desire** to destroy, conceal and/or withhold" documents, that Defendants "**wish** to keep secret their liability," and that Defendants also "**wish** to frustrate" Plaintiff's ability to pursue them in U.S. Court.  (Amended

Comp. ¶¶ 226 & 227 (emphasis added)).  Although Plaintiff fails to make clear whether he is pleading intentional or negligent spoliation of evidence, based on the words "desire" and "wish," this Count should be construed as attempting to state a claim for intentional spoliation.

Because this case is a diversity action, the Court must determine which forum's spoliation law should apply.  New York law may apply because of the choice of law provision in the Rheinelbe Bonds, while Illinois law may apply because spoliation of evidence is a tort not directly related to the Bonds.  *See Forsythe v. Black Hills Corp.*, 2007 U.S. Dist. LEXIS 17814, at *27 (N.D. Ill. Mar. 12, 2007) (Illinois spoliation law applied despite parties' agreement that Delaware law applied to merger agreement).[31]  If viewed as a separate tort, the Illinois courts would apply a "most significant contacts" test, *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970), and would apply Illinois law because Plaintiff alleges that he resides in Illinois, the alleged injury occurred in Illinois, and Illinois has an interest in regulating the conduct of litigants using Illinois courts.  *See Johnson v. Ford Motor Co.*, 2004 U.S. Dist. LEXIS 1199, at *8-9 (N.D. Ill. Jan. 29, 2004).

Whether Illinois or New York applies, Plaintiff's spoliation claim must be dismissed. New York law does not recognize a cause of action for spoliation of evidence.  *See, e.g.*, *Ortega v. City of New York*, 876 N.E.2d 1189, 1197 (N.Y. 2007); *Drake v. Laboratory Corp. of America Holdings*, 290 F. Supp. 2d 352, 375 n.18 (E.D.N.Y. 2003); *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 71-72 (E.D.N.Y. 2002).  Illinois law does not recognize a cause of action for intentional

---

[31]  Defendants' discussion of choice of law is limited to Plaintiff's spoliation of evidence claim.  Defendants do not waive the choice-of-law provision in the Rheinelbe Bond and the potential applicability of New York law to any of Plaintiff's other claims.

spoliation. *See Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70 (Ill. 1995).[32]   Accordingly,

Count XIV should be dismissed.

### C.     The Federal Rules of Civil Procedure Have Rendered the "Equitable Bill of Discovery" Obsolete

The Court should dismiss Counts XV ("Preservation/Production of Documents") and

XVI ("Damages From Refusal, Delay and/or Interference With Production of Documents"),

which, together, read like a discovery request for the production of documents and a premature

motion to compel.  Plaintiff sets forth in Count XV certain categories of documents he hopes will

expose potential causes of action against one or more defendants.  (Amended Comp. ¶¶ 93-94).[33]

This method of obtaining documents, historically referred to as an "equitable bill of discovery,"

is no longer viable since the adoption of the modern Federal Rules of Civil Procedure.  Before

discovery practice was codified in the Federal Rules, the equitable bill of discovery was the

primary means for obtaining discovery both at law and in equity.  *See Wimes v. Eaton Corp.*, 537

F. Supp. 331, 335 (E.D. Wisc. 1983).  It was used to extend the limited discovery available in

federal practice prior to the adoption of the Federal Rules in 1938.  *See id.*  Today, the discovery

provisions of the Federal Rules, which provide plaintiffs the means to obtain documents from

---

[32]   Even if Count XIV is construed as attempting to state a claim for negligent spoliation of evidence, it is insufficient under Illinois law.  In Illinois, negligent spoliation of evidence is not a separate tort, but rather a type of negligence.  *See Boyd* at 269-270.  Plaintiff must allege i) a duty to protect documents or things; ii) breach; iii) causation; and iv) damages.  *See Richardet v. Murdale True Value, Inc.*, S.D. Ill. Case No. 07-CV-0368-MJR, 2008 U.S. Dist. LEXIS 84908 (2008).  Here, Plaintiff has failed to allege i) a duty or iv) damages.  A duty to preserve evidence can only arise through an agreement, contract, statute, special circumstance, or voluntarily by affirmative conduct of defendant.  *See Boyd* at 270-271; *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004).  Plaintiff does not allege that Defendants had a statutory or contractual duty, nor has he alleged that Defendants voluntarily assumed such a duty.  Further, if a litigant cannot prevail on the merits of the lawsuit even with the allegedly destroyed evidence, then he has no damages.  *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007).  Here, Plaintiff does not plead sufficient facts to show what evidence has allegedly been destroyed and that he would prevail on his other claims if the evidence were produced.  Accordingly, Plaintiff has failed to state a claim under Illinois law even for negligent spoliation.

[33]   Count XVI appears to be no more than a prayer for relief.  (Amended Comp. ¶¶ 243-45).

both parties and non-parties after (and if) they are able to plead a sustainable cause of action, have rendered the equitable bill of discovery obsolete. *Id.*

Indeed, this Court has explicitly stated that the equitable bill of discovery "was superseded decades ago by the adoption of the Federal Rules of Civil Procedure." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.* 609 F. Supp. 554, 556 (N.D. Ill. 1985) (dismissing complaint without prejudice but prohibiting amended complaint from including a count seeking an equitable bill of discovery). Other districts have reached the same conclusion. *See, e.g.*, *Franklin v. Turner*, No. 92-891-FR, 1992 WL 252121, at *1 (D. Or. Sept. 25, 1992) (dismissing action for equitable bill of discovery because amendments to Rules 34 and 45 allowed for production of documents in possession of third parties rendering bill of discovery unnecessary); *Banks v. Fritsch*, No. 90-0277, 1990 WL 73035, at *1 (E.D. Pa. May 30, 1990) (dismissing as frivolous plaintiff's action for equitable bill of discovery because "plaintiff has other means to obtain the relief that he is seeking"); *Home Ins. Co. v. First Nat'l Bank*, 89 F.R.D. 485, 488 (N.D. Ga. 1980) (dismissing independent action for discovery because discovery rules clearly afforded plaintiff an adequate means to seek discovery). *See also Guertin v. Guertin*, 561 N.E.2d 1339, 1342 (Ill. App. 1990) (the equitable bill of discovery, utilized in a time when courts were without power to compel discovery, has been rendered obsolete by our current system of pleading and practice").

Similarly, in *Humble Oil Refining Co. v. Harang*, 262 F. Supp. 39 (E.D. La. 1966), a district court denied the plaintiff's motion for preliminary injunction to prevent destruction of evidence concluding that there was an inadequate legal basis for the issuance of the injunction because the discovery procedures available under Fed. R. Civ. P. Rules 34 and 45 and the

enforcement provisions available under Rule 37 provided an adequate remedy to the plaintiff. *See id.* 262 F. Supp. at 42-44.

Accordingly, if he were to assert and sustain a viable complaint (which is not the case here), Plaintiff could then obtain the discovery he seeks from Defendants pursuant to all the discovery tools available under the Federal Rules, including interrogatories, requests for production, requests for admissions and depositions.  The Court therefore should dismiss Counts XV and XVI because, where appropriate, the Federal Rules afford Plaintiff with both an adequate means to obtain discovery and adequate remedies for any discovery violations.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully submit that the Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated:  March 27, 2009

Respectfully submitted,

Commerzbank AG, Commerzbank "Chicago Branch," Commerzbank "New York Branch," Commerzbank "Los Angeles Branch," Commerzbank "Atlanta Branch," Commerzbank Capital Markets Corp., a/k/a "CCMC" a Division of Commerzbank AG, and Commerzbank Securities, a Division/Subsidiary of Commerzbank AG,

By:  */s/ Alexander D. Kerr, Jr.*
        One of Their Counsel

Bruce L. Wald (2919095)
Alexander D. Kerr, Jr. (1450484)
TISHLER & WALD, LTD.
200 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 876-3800 (phone)
(312) 876-3816 (fax)
e-mail: bwald@tishlerandwald.com
          akerr@tishlerandwald.com

Jeffrey Harris
Max Riederer von Paar
RUBIN, WINSTON, DIERCKS,
    HARRIS & COOKE, LLP
Sixth Floor
1155 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 861-0870 (phone)
(202) 429-0657 (fax)
e-mail: mriederer@rwdhc.com
          jharris@rwdhc.com

THE BANK OF NEW YORK MELLON,
CITIBANK, N.A, and UBS AG


By:  */s/ Brian J. Poronsky*
     One of Their Counsel

Christian T. Kemnitz
Brian J. Poronsky
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Phone:  (312) 902-5200
Fax:  (312) 902-1061
e-mail:  christian.kemnitz@kattenlaw.com
       brian.poronsky@kattenlaw.com


JPMORGAN CHASE BANK, N.A.


By: */s/ Kenneth F. Berg*
     One of Its Counsel

Kenneth F. Berg
Peter R. Sonderby
ULMER &  BERNE LLP
One North Franklin, Suite 1825
Chicago, IL 60606
Phone:  (312) 324-8000
Fax: (312) 324-8001
e-mail:  kberg@ulmer.com
       psonderby@ulmer.com


CREDIT SUISSE GROUP AG, DEUTSCHE BANK
AG and DEUTSCHE BANK/BANKERS TRUST
CO.,


By:  */s/ Sander Bak*
     One of Their Counsel

Sander Bak
Felix Weinacht
MILBANK, TWEED, HADLEY &
MCCLOY, LLP
1 Chase Manhattan Plaza
New York, NY 10005
Phone:  (212) 530-5000
Fax:  (212) 530-5219
e-mail:  sbak@milbank.com
         fweinacht@milbank.com

Adam B. Deutsch
EIMER STAHL KLEVORN &
 SOLGBERG LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60657
Phone:  312-660-7600
Fax:  312-692-1718
e-mail:  adeutsch@eimerstahl.com


SCHRODERS PLC,


By: */s/ Jeffrey P. Palmer*
      One of Its Counsel

Randall W. Bodner
Jeffrey P. Palmer
ROPES & GRAY
One International Place
Boston, MA 02110
Phone: (617) 951-7000
Fax: (617) 951-7050
e-mail:  randall.bodner@ropesgray.com
         jeff.palmer@ropesgray.com

40

### CERTIFICATE OF SERVICE

The undersigned, an attorney, does hereby certify that on this 27th day of March, 2009, I caused a copy of the foregoing the attached **MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS ON BEHALF OF DEFENDANTS COMMERZBANK, AG, COMMERZBANK "CHICAGO BRANCH," COMMERZBANK "NEW YORK BRANCH," COMMERZBANK "LOS ANGELES BRANCH," COMMERZBANK "ATLANTA BRANCH," COMMERZBANK CAPITAL MARKETS CORP., A/K/A "CCMC" A DIVISION OF COMMERZBANK AG, COMMERZBANK SECURITES, A DIVISION/SUBSIDIARY OF COMMERZBANK AG, DEUTSCHE BANK AG AND DEUTSCHE BANK/BANKERS TRUST CO., CITIBANK, N.A., J.P. MORGAN CHASE, N.A., SCHRODERS PLC, UBS AG, THE BANK OF NEW YORK MELLON, CREDIT SUISSE GROUP AG, AND OR ITS AFFILIATES, AND SKANDINAVISKA ENSKILDA BANKEN AB** to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. The undersigned also certifies that he caused a copy of the same to be served upon the following counsel of record via U.S. Mail:

Santo P. Terenzio
Attorney at Law
19 Don Carlos Drive
Hanover Park, IL 60133

Asheesh Goel
Ropes & Gray LLP
111 South Wacker Drive
46th Floor
Chicago, IL 60606

Maximilian K Riederer von Paar
Rubin Winston Diercks Harris & Cooke LLP
1155 Connecticut Avenue, NW
Suite 600
Washington, DC 20036

_____/s Brian J. Poronsky_____
Brian J. Poronsky

41