## 8UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD BLEIER,                    )
ELFRIEDE KORBER, and               )
CHRISTOPHER MARK, Individually     )
and on Behalf of All Others Similarly )
Situated,                          )
                                   )     Case No. 08 C 06254
    Plaintiffs,             )
                                   )     Judge Edmond E. Chang
      v.                )
                                   )
BUNDESREPUBLIK DEUTSCHLAND,        )
et al.                             )
                                   )
    Defendants.             )

### MEMORANDUM OPINION AND ORDER

Plaintiffs Elfriede Korber and Christopher Mark[1] bring this putative class action on behalf of themselves and all others similarly situated against twenty-six named Defendants: Bundesrepublik Deutschland (Federal Republic of Germany), Bundesministerium Der Finanzen (German Ministry of Finance), Deutsche Bundesbank (German National Bank), BADV - Prufstelle Fur Auslandsbonds Landesamt Fur Finanzen, Commerzbank AG, Commerzbank (Chicago, New York, Los Angeles, and Atlanta branches), Commerzbank Capital Markets Corp., Commerzbank Securities, Commerzbank Corporates & Markets, Eurohypo AG, Deutsche Bank AG, Deutsche Bank/Bankers Trust Co., Citibank N.A., JP Morgan Chase Bank, N.A., Warburg Dillon Read, Schroders plc, Bank for International Settlements, UBS AG, Dresdner Bank AG, Mizuho Corporate Bank Ltd., The Bank of New York Mellon,

---

[1]Plaintiff Richard Bleier passed away in April 2011. R. 285.

Credit Suisse Group AG, Skandinaviska Ensilkda Banken AB. Plaintiffs seek redemption and payment for German gold bearer bonds that they own and/or possess. R. 82 (Second Am. Compl.) at ¶ 119. Plaintiffs' complaint is over two-hundred pages and alleges some 24 causes of action. Defendants jointly move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] R. 103. In addition, several Defendants also filed individual motions to dismiss on various grounds. R. 90, 92, 96, 99, 101, 107, 108, 109, 117, 209, 254.

This opinion addresses a subset of those motions, in particular, primarily those motions dealing with threshold issues: the motion to reconsider the previously-assigned judge's subject matter jurisdiction ruling (which is denied); the insufficient service of process motion of Germany, the German Ministry of Finance, and the German National Bank (which is granted); and various motions filed by Plaintiffs (which are denied). In a forthcoming opinion, the Court will address the remaining motions,

---

[2]Defendants that jointly filed the motion (R. 103) include: Commerzbank AG; Commerzbank (Chicago, New York, Los Angeles, Atlanta branches); Commerzbank Capital Markets Corp.; Commerzbank Securities; Dresdner Bank AG; Deutsche Bank AG; Deutsche Bank/Bankers Trust Co.; Citibank, N.A.; J.P. Morgan Chase, N.A.; Schroders plc; UBS AG; Mizuho Corporate Bank; The Bank of New York Mellon; Credit Suisse Group AG. Skandinaviska Enskilda Banken AB (R. 117) and the Bank for International Settlements (R. 209) also adopted Defendants' joint motion to dismiss. The Federal Republic of Germany and the German Ministry of Finance contest service of process and entered appearances for the limited purpose of opposing Plaintiffs' motion for default judgment. R. 184. The German National Bank contests service of process and entered an appearance for the limited purpose of opposing Plaintiffs' motion for leave to serve process by an alternate method. R. 239. Four named Defendants have not yet been served or appeared in the case: BADV - Prufstelle Fur Auslandsbonds Landesamt Fur Finanzen; Commerzbank Corporates & Markets; Eurohypo AG; and Warburg Dillon Read.

including the motion to dismiss on statute of limitations grounds and for failure to state a claim.

## I.

Plaintiffs allege that they are the owners or holders of certain bonds issued decades ago by Germany, political subdivisions of Germany, and German corporations.[3] R. 82 ¶¶ 3, 119, 128. The complaint alleges that Defendants are guarantors, successors, trustees, co-obligors, and/or redemption or paying agents on Plaintiffs' bonds and, thus, are liable for payment of the bonds. *Id.* ¶¶ 32, 67-86. The bonds are alleged to have been marketed and sold to, among others, United States citizens in the years between the end of World War I and through 1930. *Id.* ¶¶ 1, 124. Plaintiffs allege that when Hitler came to power in 1933, Germany ceased payments on the bonds.[4] *Id.* ¶ 4. In

---

[3]The complaint identifies the bonds Plaintiffs allegedly own and/or possess as (1) the Rheinelbe Union 7% Twenty-Year Sinking Mortgage Gold Bonds; (2) the German External Loan 1924 7% Gold Bonds (the Dawes Bonds); (3) the German Government International 5½% Loan 1930 (the Young Bonds); (4) the United Steel Works Corporation 20-Year 6½% Sinking Fund Debenture; and (5) the Free State of Bavaria External Twenty Year Six and One-Half Per Cent Sinking Fund. R. 82 ¶¶ 142-203.

[4]As described by other cases involving the series of bonds, at the conclusion of World War II, "Russian occupation forces seized and returned to circulation many such bonds with an estimated total face value of $350,000,0000, while bona fide purchasers possessed approximately $250,000,000 in valid bearer bonds." *Mortimer Off Shore Servs. v. Fed. Republic of Germany*, 615 F.3d 97, 101 (2d Cir. 2010) (citing *Abrey v. Reusch*, 153 F. Supp. 337, 339 (S.D.N.Y. 1957)) (detailing the history of the validation laws and treaties relating to the bearer bonds). Plaintiffs deny that any bonds were confiscated by Russian soldiers around 1945. R. 82 at ¶¶ 35, 44. Plaintiffs claim that this "looting" theory is part of Germany's scheme to engage in a fraudulent validation process and deprive bondholders from redeeming payment of the bonds. *Id.* Plaintiffs claim that the historical facts recited in *Abrey v. Reusch*, 153 F. Supp. 337 (S.D.N.Y. 1957) "are false, speculative, highly contested, and/or clearly erroneous." R. 129 at 12. But the 1953 Treaty between the United States and Germany is premised on the possibility that many of the bonds in circulation were in fact invalid: the countries "agreed that it is in their common interest to provide for the determination of the validity of the German dollar bonds in view of the possibility that a large number of such bonds may have been

1952, Germany passed the Law for the Validation of German Foreign Currency Bonds (hereinafter, the Validation Law).[5] It established the criteria of validity of such German bonds and the procedure for obtaining validation.

Specifically, the Validation Law requires that "bonds held on January 1, 1945, outside West German borders as they existed in 1937, be registered, submitted along with relevant evidence, and validated after an administrative hearing by a Board for the Validation of German Bonds in the United States ('Validation Board') in Germany or the country of offering." *Mortimer Off Shore Servs.*, 615 F.3d at 102 (citing Validation Law, Art. 3 at 306; Art. 8 at 307; Art. 23 at 310-11). In order to register the bonds so that they can be validated, the holder must submit them to the Examining Agency and include the information required by Article 39. *See* Validation Law, Art. 39 at 314; Art. 40 at 314-15. Following registration, the registrant bears the burden of proving the validation requirements have been met. *See id.*, Art. 41 at 315. Failing to register the bonds before the registration period ended would result in the bonds' invalidation. *See id.*, Art. 50 at 317; Art. 21 at 310; Art. 37 at 314. Where a person fails to register and have his or her bonds validated in accordance with the Validation Law, the bonds may not be enforced. *See Mortimer Off Shore Servs.*, 615 F.3d at 115-17.

---

unlawfully acquired during hostilities in Germany or soon thereafter." R. 105-3 (1953 Treaty) at 4.

[5]The Rheinelbe Union, Dawes, Young, United Steel Works Corporation, and Free State of Bavaria bonds – the categories of bonds at issue in this case – are included in the schedule of foreign currency bonds covered by the Validation Law and therefore subject to the Validation Law's procedures. R. 82 ¶¶ 142, 153, 167, 181, 192; *see* Validation Law, at 323-29.

In situations where a bond is *not* validated, the Validation Law allows for the possibility of "subsequent" registration and validation. Validation Law, Art. 51 at 317. Under the Law, when a bond is not timely registered and the failure is not the fault of the person "entitled to register," subsequent registration and validation may occur. *Id.* This may be done in one of two ways. First, under Article 51, bonds may be registered with the Examining Agency and submitted to the Chamber for Settlements. *See id.*, Art. 51(2) at 317. Under this method, bonds will only be validated "if the denial of validation would effect extraordinary hardship upon the bondholder . . . ." *Id.* Second, under Article 52, the bondholder may "claim compensation from the issuer and any third party liable directly as a debtor for the bonded obligation . . . ." *Id.*, Art. 52 at 317. This method requires that: (1) the bond would have been validated if timely registered, and (2) the failure to register was not due to the person's own "gross negligence." *Id.* A holder may only proceed under Article 52 after "it has been finally adjudicated that the conditions on which [the right to compensation] depends exist." *Id.* "Exclusive jurisdiction to make such adjudication shall rest with the Chamber for the Settlement of Securities of the district in which the issuer has its seat." *Id.*

In 1953, the United States Senate advised ratification of the Agreement Between the United States of America and the Federal Republic of Germany Regarding Certain Matters Arising from the Validation of German Dollar Bonds (1953 Treaty). 4 U.S.T. 885, at pmbl. The President ratified the Treaty on August 4, 1953, the Treaty entered into force on September 16, 1953, and the President proclaimed the Treaty on October

5

19, 1953.[6] *See id*. Pursuant to the 1953 Treaty, "No bond . . . shall be enforceable unless and until it shall be validated either by the Board for the Validation of German Bonds in the United States established by the Agreement on Validation Procedures, or by the authorities competent for that purpose in the Federal Republic [of Germany]." 4 U.S.T. 885, at Art. II. Thus, for validation, the 1953 Treaty incorporated by reference Germany's 1952 Validation Law.

In addition, Germany, the United States, and several other nations contemporaneously negotiated the Agreement on German External Debts, or the London Debt Agreement. *See* London Debt Agreement, 4 U.S.T. 443. Signed in 1953, the London Agreement aimed "to remove obstacles to normal economic relations" with other nations and to "facilitat[e] a resumption of payments on [its] external debts." 4 U.S.T. at 446. The London Agreement's preamble described the purposes and objectives of the London Agreement as an "overall" settlement of German pre-war external debts. 4 U.S.T., pmbl.; R. 82 ¶ 41 (London Agreement entered into "to reduce Germany's debts"). To be covered by a debt, it must have originated and been due before May 8, 1945. *Id*. at Art. 4. Bondholders had five years within which to accept the terms of the London Agreement. *See* London Agreement, Annex I(C)(8)(b).

The Validation Law remains in effect today and is still listed in Germany's statutory code. *See Mortimer Off Shore Servs.*, 615 F.3d at 114-15. Likewise, even after the unification of Germany, the 1953 Treaty remains in force. *Id*.; *see also* United

---

[6]A treaty does not become "the law of the land" until the President proclaims it. *Haver v. Yaker*, 76 U.S. (9 Wall.) 32, 35 (1869).

States Department of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2010, at 102 (2010), *available at* www.state.gov/documents/organization/123747.pdf (last visited September 14, 2011). There has been no agreement between the United States and Germany to "nullify" the Validation Law. *Mortimer Off Shore Servs.*, 615 F.3d at 115.

## II.

## A.

The district judge previously assigned to this case denied Defendants' motion to dismiss for lack of subject matter jurisdiction. R. 238. Defendants ask the Court to reconsider this ruling in light of *Mortimer Off Shore Services v. Federal Republic of Germany*, 615 F.3d 97 (2d Cir. 2010), and a few other federal district court decisions holding that bondholders must comply with the validation procedures before seeking relief in the federal courts. R. 241, 293 (citing *Kupfer v. Fed. Republic of Germany*, 2011 WL 1672741 (S.D.N.Y. May 2, 2011) and *World Holdings, LLC v. Fed. Republic of Germany*, – F. Supp.2d –, 2011 WL 2217495 (S.D. Fla. June 5, 2011)). Defendants argue that the 1953 Treaty, which incorporates the Validation Law, grants exclusive jurisdiction to German courts. R. 256 at 3-5.

As discussed above, Article 52 of the Validation Law states that bonds that were not validated within the specified time period may be redeemed only after it has been finally adjudicated by the Chamber for the Settlement of Securities that the bond would have been valid if timely registered. R. 105-2 (Validation Law) at 317

("Exclusive jurisdiction to make such adjudication shall rest with the Chamber for the Settlement of Securities of the district in which the issuer has its seat."). In turn, the 1953 Treaty provides that "[n]o bond . . . shall be enforceable unless and until it shall be validated either by the Board for the Validation of German Bonds in the United States established by the Agreement on Validation Procedures, or by the authorities competent for that purpose in the Federal Republic." 4 U.S.T. 885, Art. II. Thus, Defendants argue that this Court lacks subject matter jurisdiction to hear this case and it should be dismissed pursuant to Rule 12(b)(1). R. 256 at 5. Defendants contend that all claims must be dismissed because Plaintiffs' failure to comply with the procedures for validation set forth in Article 52 of the Validation Law – and explicitly referenced in the 1953 Treaty – operate as a jurisdictional bar to all claims contained in the complaint. As the previous judge noted, it is undisputed that Plaintiffs' bonds have not been validated. R. 238 at 5. However, the judge concluded that the 1953 Treaty does not preclude subject matter jurisdiction over Plaintiffs' claims. R. 238 at 10. The Court agrees.

"[S]ubject-matter jurisdiction is a synonym for adjudicatory competence." *Morrison v. YTB Int'l*, 649 F.3d 533, 2011 WL 3132398, at *2 (7th Cir. July 27, 2011) (citing *Morrison v. Nat'l Australia Bank*, – U.S. –, 130 S.Ct. 2869, 2876-77 (2010)). Here, Defendants' arguments regarding validation (or lack thereof) actually address procedural requirements and the merits (or lack thereof) of the claims, rather than adjudicatory competence. To be sure, Article 52(2) of the Validation Law does state that the Chamber for the Settlement of Securities has "exclusive jurisdiction" to

determine whether a bondholder is entitled to compensation for the bond. R. 256 at 6. In other words, the Chamber has the sole authority to determine whether a bond may be registered and validated. Article 67 similarly states that "[t]he competencies (jurisdictions) established by the Law are exclusive ones." That provision again confirms that the Examining Agency and the Chamber for the Settlement of Securities are vested with exclusive jurisdiction to determine a bond's validity under the Validation Law.

So if Plaintiffs were asking that this Court to register and validate the bonds pursuant to the Validation Law, then Defendants would be correct: adjudicatory competence over such a claim resides exclusively with the Examining Agency and the Chamber. That is not what Plaintiffs ask. Admittedly, it is not always crystal clear what Plaintiffs allege in the Second Amended Complaint. The complaint is prolix, and at times rambling, spanning 240 pages and 1,151 paragraphs. Across 24 labeled counts, Plaintiffs invoke the United States Constitution, federal racketeering and securities laws (among other federal statutes), international law (including the European Convention on Human Rights, R. 82 ¶ 1008), and Illinois state law. But among all this, it does appear that Plaintiffs claim that the validation process itself is a fraud and they are wrongfully precluded from seeking validation because they do not have access to a Validation Board in the United States and that the Examining Agency is constituted in a way that violates the Validation Law and 1953 Treaty. *E.g.*, R. 82 ¶¶ 31, 34, 46, 50, 234, 306; R. 243 ¶¶ 4, 10. Thus, Plaintiffs' central challenge is to the Validation Law and 1953 Treaty themselves, and is not a claim seeking that this Court

– under the Validation Law – register and validate the bonds. The latter claim would not be within the Court's subject matter jurisdiction (that is, its adjudicatory competence); the former purports to raise claims under federal law, for which federal question jurisdiction is secure under 28 U.S.C. § 1331.[7] Whether the claims were filed within the applicable statute of limitations periods, whether the allegations adequately and plausibly state a claim, and other questions do not touch upon subject matter jurisdiction (and, as noted above, the Court will address those questions in a forthcoming opinion).

## B.

Three of the defendants make a jurisdictional argument that is specific to them. The Federal Republic of Germany, the German Ministry of Finance, and the German National Bank (together, the "Sovereign Defendants") argue that there is no jurisdiction over them pursuant to the Foreign Sovereign Immunities Act (FSIA). The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). The FSIA defines "foreign state" to include a "political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Under the FSIA, foreign states are immune from

---

[7]Plaintiffs also invoke diversity jurisdiction, but there are numerous open questions as to sufficiency of the allegations describing citizenship. *E.g.*, R. 82 ¶ 76 (alleging Deutsch Bank USA is a United States bank (presumably, a national banking association) but not naming where the articles of association locate its main office, *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 & n.1 (2006)).

federal-court jurisdiction unless one of the statutory exemptions applies. *Samantar v. Yousuf*, 130 S.Ct. 2278, 2285-86 (2010). "The Act, if it applies, is the 'sole basis for obtaining jurisdiction over a foreign state in federal court.'" *Id.* at 2286 (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)). The Sovereign Defendants are "foreign states" under the FSIA.[8]

Here, Plaintiffs assert that the commercial-activity exemption to jurisdictional immunity applies to the Sovereign Defendants. R. 82 ¶ 260. This exemption provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; . . . or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]" 28 U.S.C. § 1605(a)(2). A "commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* § 1603(d). The alleged marketing and sale of bonds in the United States fits readily within the definition of "commercial activity." The Sovereign Defendants' alleged

---

[8]The Federal Republic of Germany is a foreign state. The German Finance Ministry is a political subdivision of the Federal Republic of Germany. R. 255 at 2. The German National Bank is an instrumentality of the Federal Republic of Germany. It is the central bank of Germany and roughly equivalent to the Federal Reserve Bank. R. 227 at 1 n.1.

activities brings them within the commercial-activity exception to the FSIA's grant of immunity from jurisdiction.[9]

## III.

The Federal Republic of Germany and the German Ministry of Finance filed a separate motion to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608, and Rule 12(b)(2) for lack of personal jurisdiction. R. 254. Defendants' motion also argues that dismissal is proper under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted.[10] *Id.* The subject matter jurisdiction argument was addressed in § II of this opinion; the arguments that the complaint fails to state a claim will be addressed in the forthcoming opinion. This portion of the opinion addresses the insufficient-service argument.

Germany and the Ministry argue that they have not been properly served. R. 255 at 1-6. In May 2010, Plaintiffs attempted to serve the Ministry of Finance under

[9]The Sovereign Defendants also argue that the Validation Law's grant of exclusive jurisdiction to German courts expressly conflicts with the FSIA's jurisdiction provisions, so as to deprive this Court of jurisdiction over Plaintiffs' claims. However, for the reasons discussed earlier, the Validation Law's "exclusive jurisdiction" provisions do not strip the Court of subject matter jurisdiction in this case.

[10]The Federal Republic of Germany and the German Ministry of Finance assert these arguments as supplementary to those made in Defendants' joint motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and supporting memoranda. *See* R. 103-05. The 12(b)(6) arguments will be addressed in the forthcoming opinion.

12

the Hague Convention[11] by delivering the summons and complaint to the designated Central Authority in Berlin, Germany. R. 262 at 2; R. 183 ¶¶ 3-4. When the Central Authority refused service pursuant to Article 13 of the Hague Convention, Plaintiffs filed a motion for leave to serve process upon Germany and the Ministry of Finance by an alternate method. *See* R. 194. The previously-assigned judge granted Plaintiffs' motion, thereby authorizing Plaintiffs to serve Germany and the Ministry of Finance by emailing the summons and complaint (along with German translations of both documents) to their counsel of record. *See* R. 220; R. 255-1, Def.'s Exh. 1.

In the instant motion to dismiss, Germany and the Ministry of Finance argue that the previous judge's decision to permit alternative service should be reconsidered because it does not comply with the FSIA's rules for service of process. R. 255 at 4; R. 262. The FSIA states that foreign states and their political subdivisions *shall* be served in only one of four ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring

---

[11]See the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, referenced in Federal Rule of Civil Procedure 4(f)(1).

a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned; or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services – and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a). Here, Plaintiffs initially attempted to serve the Ministry of Finance under subsection (2), but were unsuccessful. Instead of proceeding to the third method of service, Plaintiffs were granted leave to serve Germany and the Ministry of Finance by emailing copies of the summons and complaint to Defendants' counsel of record. Because service by email is not provided for under § 1608(a), leave to serve the complaint in that manner should not have been granted. Germany and the Ministry of Finance have not been properly served with process in this case. Accordingly, their motion to dismiss for insufficient service of process under Rule 12(b)(5) is granted. Relatedly, by statute, the Court may not exercise "[p]ersonal jurisdiction" over a foreign state unless the defendant has been properly served with process under § 1608 of the FSIA. 28 U.S.C. § 1330(b). As discussed, Plaintiffs have not served Germany or the Ministry of Finance pursuant to one of the methods required by § 1608(a). Therefore, this Court does not have personal jurisdiction over these Defendants and dismissal is appropriate under Rule 12(b)(2) as well.

14

With respect to the German National Bank – the third "sovereign defendant" in this case – the record shows that it, too, has not been properly served with process under § 1608 of the FSIA. Although documents submitted by Plaintiffs indicate that the summons and complaint may have been forwarded to GNB by the Central Authority, *see* R. 217 (Pls.' Exhs. 1-5), there is nothing in the record to prove that service was effectuated, *see* R. 227 (Def.'s Exh. A). Thus, Plaintiffs have filed a motion for leave to serve process upon GNB by an alternate method. R. 232. This motion is similar to the motion filed by Plaintiffs regarding service of the Federal Republic of Germany and the German Ministry of Finance. R. 194. However, as discussed, the service method proposed by Plaintiffs is not provided for under the FSIA's service requirements. Moreover, GNB indicates that it has filed a motion to quash service in Germany, and the motion is currently pending in German court. R. 239 at 3. For these reasons, the Court denies Plaintiffs' motion [R. 232] without prejudice pending the resolution of Defendants' motion to quash. If the German court has ruled by now on the motion to quash, and has quashed service, Plaintiffs may re-file the motion to serve by an alternate method, § 1608(b)(3)(C), but Plaintiffs must explain specifically how the proposed alternative is "consistent with the law of the place where service is to be made," *id.* If the German court has not quashed service, then Plaintiffs may move to deem service effectuated if GNB still disputes the effectiveness of service.

15

## IV.

Before the Court addresses various of the Plaintiffs' numerous pending motions and one miscellaneous Defendants motion, in summary, Defendants' motion to reconsider subject matter jurisdiction [241] is denied; the Sovereign Defendants' motion to dismiss [254] is granted in part as to insufficient service of process; and Plaintiffs' motion to use alternate service [232] is denied. With regard to the miscellaneous motions:

1.      Plaintiffs' motion to certify a class [69] is denied without prejudice. In light of the pending dispositive motions, no class-certification discovery has taken place, and the motion to certify the class is plainly premature.

2.      Plaintiffs' motion for default judgment against German National Bank [217] is denied in light of the ruling that German National Bank was not properly served.

3.      Plaintiffs' motion for sanctions [225] is denied, as it is essentially premised on arguments that Defendants are frivolously wrong on the merits because, for example, they have perpetrated the fiction that the bonds were returned to circulation. It is clear that Defendants have a sound basis in law and fact to advance the arguments they have made on the merits.

4.      Plaintiffs' motion to declare that validation is not binding on Plaintiffs [244], motion to compel direct negotiations under the London Agreement [257], and motion to declare the Validation Law and other treaties as beyond the treaty power [267] are denied for the same reasons as stated in the order of August 24, 2011, R. 313,

16

namely, that they are simply motions that repeat the Plaintiffs' merits arguments – the merits questions will be addressed in the context of the motions to dismiss.

5.     A motion [265] filed by certain Defendants to strike Plaintiffs' response brief is denied. Although the response brief is indeed prolix and at parts difficult to understand, there are some responsive arguments contained in the brief. If the Court believes it is necessary, the Court will provide the specific Defendants an opportunity to file a reply brief.

ENTERED:

Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2011

17