# In the
# United States Court of Appeals
# For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 12-3269

ELFRIEDE KORBER and CHRISTOPHER MARK,
          *Plaintiffs-Appellants*,

*v.*

BUNDESREPUBLIK DEUTSCHLAND, *et al.*,
          *Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 6254 — **Edmond E. Chang**, *Judge*.

ARGUED JANUARY 6, 2014 — DECIDED JANUARY 9, 2014

Before EASTERBROOK, WILLIAMS, and TINDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge.* After Germany surrendered in May 1945, holders of bonds issued by public and private entities in that nation demanded repayment. Germany had suspended payment on many foreign-held bonds during the 1930s, but some pre-war bonds were not due until the 1950s or 1960s. A multinational agreement among 21 creditor nations and the Federal Republic of Germany—which at the

time meant the Länder that had been occupied by the United States, United Kingdom, and France—specified that Germany would pay valid debts outstanding on May 8, 1945. This pact, called the London Debt Agreement, gives priority to creditors who accept diminished payoffs. The Soviet Union and the German Democratic Republic (the Länder constituting East Germany) did not participate.

Contemporaneously with negotiation of the London Debt Agreement, West Germany enacted a Validation Law requiring holders of foreign debt instruments to submit them to panels that would determine whether the claims were genuine. Some bonds had been bought back in the markets but stolen toward the end of the war; West Germany sought to ensure that these retired debt instruments were not paid a second time and that no counterfeit instruments would be paid.

In April 1953 the United States and West Germany agreed by treaty that foreign debts contracted before the end of World War II would be paid only if found by a validation panel to be legitimate. 4 U.S.T. 885 (1953). The parties agree that this treaty applies to Germany as reconstituted by the merger of East and West Germany in 1990. Holders had five years to submit their documents for validation by a panel in New York City. Any later claim for validation goes to an Examining Agency in Germany. The claimant must show a good reason for the delay and establish the instruments' provenance. Decisions adverse to claimants are subject to judicial review in German courts. Article II of the Treaty adds that no instrument within the scope of the Treaty and Validation Law may be enforced unless it has first been validated by a panel in New York or Germany.

Plaintiffs filed this suit in 2008 under the international diversity jurisdiction, 28 U.S.C. §1332(a)(2), seeking to recover on bearer bonds that Germany had issued or guaranteed before World War II began. One holder has never submitted the bonds to a validation panel. The other submitted them to a panel in Germany, which found them ineligible, and did not seek judicial review of that decision.

In response to defendants' request for the suit's dismissal, both plaintiffs contend that the Treaty is invalid because it takes their property without just compensation. The district court held that the Treaty is binding and that the suit, which seeks to collect on un-validated instruments, must be dismissed. The court added that the suit is barred by the statute of limitations, which the judge deemed to be a ten-year period drawn from Illinois law. (Illinois is the state in which the district court sits.) The court's opinions cover some other issues, such as whether payment of the bonds is a commercial activity for the purpose of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–11, and whether particular defendants were served with process, but those questions have dropped out. Appellees' brief does not contend that the defendants are immune under the FSIA or that service on any defendant was improper.

Despite the passage of time since the 1953 Treaty specified how bonds could be enforced, recent years have seen an uptick in claims seeking to recover in federal courts. Some holders have argued that their claims did not accrue until 2010, when Germany made the final payments on bonds processed under the Agreement. These suits have been uniformly unsuccessful. See *Fulwood v. Germany*, 734 F.3d 72 (1st Cir. 2013); *World Holdings, LLC v. Germany*, 701 F.3d 641 (11th

Cir. 2012); *Mortimer Off Shore Services, Ltd. v. Germany*, 615 F.3d 97 (2d Cir. 2010). The first, second, and eleventh circuits have held that bondholders lose either because of the Treaty's language or because the claims are time-barred. Our plaintiffs have raised constitutional arguments in an effort to circumvent the obstacles created by the Treaty and the other circuits' decisions. The attempt to get around this sixty-year-old treaty is unavailing.

The Constitution's fifth amendment does not forbid the taking of private property. Instead it requires just compensation for taken property. The Tucker Act, 28 U.S.C. §1491(a)(1), authorizes the Court of Federal Claims to award whatever compensation the Constitution requires. It follows that the 1953 Treaty cannot be unconstitutional as a prohibited taking. A person who thinks that the 1953 Treaty takes private property should use the Tucker Act remedy. See, e.g., *Preseault v. ICC*, 494 U.S. 1, 12–16 (1990); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017–19 (1984); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126–36 (1974).

It is tempting to end the opinion here, but in *Dames & Moore v. Regan*, 453 U.S. 654 (1981), the Supreme Court, while observing that claimants could resort to the Tucker Act, *id*. at 688–90, also stated that there is no constitutional obstacle to an international property settlement. The agreement contested in *Dames & Moore*, among the United States, Iran, and Algeria, resolved the dispute that began when diplomats and their families were taken hostage at the United States Embassy in Tehran. The agreement established the Iran–United States Claims Tribunal in The Hague. All claims (including contract claims that predated Iran's 1979 revolution) must be submitted to the Tribunal, whose dispositions

Case: 1:08-cv-06254 Document #: 404 Filed: 01/31/14 Page 5 of 7 PageID #:5504
Case: 12-3269     Document: 00712162525     Filed: 01/31/2014     Pages: 7

5                                                                No. 12-3269

are final. Litigation of claims outside the Tribunal is forbidden. The Court observed that settlements of private claims are a traditional, and valid, part of peacemaking, see 453 U.S. at 679–80, and added that the United States' power to strike such bargains with other nations may be exercised by executive agreement as well as by treaty.

Iran's refusal to pay claims made by foreign nationals was not a taking *by the United States*; this nation does not guarantee other nations' sovereign debt. Likewise Germany's refusal to pay claims based on bonds it issued or guaranteed before the end of World War II cannot be thought a taking by the United States of America. That the United States and Germany agreed in 1953 to a process that will lead to payment of some but not all claims is an ordinary part of peacemaking and not an affront to the Constitution.

Diplomacy requires compromise. Many governments are reluctant to pay debts incurred by predecessors that have been overthrown in revolution (e.g., Iran) or lost a war (e.g., the Nazi regime in Germany). Indeed, the United States itself did not ensure payment of debts incurred within its own borders by the states that attempted to secede in 1861. The history summarized in *Dames & Moore* shows that diplomatic dispositions of private financial claims against other sovereigns, designed to facilitate the establishment of peaceful relations among nations, have occurred throughout American history. We cannot see any basis for a constitutional distinction between the diplomatic resolution of private claims against Iran and those against Germany.

Plaintiffs maintain that Germany has not carried out all its obligations under the 1953 Treaty. That contention should be made to the Department of State rather than to a district

No. 12-3269                                                                6

judge. The 1953 Treaty is not self-executing; the United States and West Germany made promises to each other, not directly to private citizens. Decisions such as *Medellín v. Texas*, 552 U.S. 491 (2008), show that private parties can be the intended beneficiaries of treaties without having a right to enforce them in court. Plaintiffs do not point to any language in the 1953 Treaty conferring enforcement rights on private parties; to the contrary, the Treaty *forbids* private suits based on non-validated claims. It is far from clear to us that Germany has fallen short of its commitments; Examining Agencies still exist in Germany, and judicial review of adverse decisions is available. But because this treaty is not self-executing, diplomatic rather than judicial channels are the appropriate ones for consideration of plaintiffs' grievances.

According to plaintiffs, a judicial order requiring Germany to improve its validation process may issue under the Alien Tort Statute, 28 U.S.C. §1350, even if not directly under the 1953 Treaty. That contention did not survive *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), which holds that §1350 cannot be used to contest the acts of foreign nations taken within their own borders. How Germany administers the validation process is for diplomats or German courts to consider.

Because plaintiffs lack validated claims, their suits must be dismissed. Lest silence invite suits on claims validated in coming years, we add that we agree with *World Holdings*, 701 F.3d at 653–54, and the district court that the statute of limitations independently bars a judicial role in collection. Holders could have submitted their bonds for validation decades ago, whether or not they accepted the speed-for-amount tradeoff under the London Debt Agreement; those who de-

Case: 1:08-cv-06254 Document #: 404 Filed: 01/31/14 Page 7 of 7 PageID #:5506
Case: 12-3269     Document: 00712162525     Filed: 01/31/2014     Pages: 7

7                                                                  No. 12-3269

layed have only themselves to blame. Plaintiffs tell us that international law lacks a statute of limitations for the enforcement of sovereign debt—which is true but irrelevant. These bonds were issued under German law, and perhaps under U.S. law or other nations' law too (they were designed for sale to non-German investors, and some of the instruments covered by the 1953 Treaty were traded on U.S. exchanges). The applicable periods of limitations are those provided by Germany, by jurisdictions in which the bonds were sold, and by agreement of the parties reflected in the instruments themselves. Litigation in the 2010s is far too late under any of those sources of law.

AFFIRMED